# AMENDED & RESTATED

# AGREEMENT OF LIMITED PARTNERSHIP

## FOR

## DOTCOM VENTURES, L.P.

## (FORMERLY ASCII VENTURES, L.P.)

### A CALIFORNIA LIMITED PARTNERSHIP

78258 v1/SH
1_D%01I.DOC

EXHIBIT A

## TABLE OF CONTENTS

PAGE

1.    DEFINITIONS.................................................................................................1
    1.1    Accounting Period. ....................................................................1
    1.2    The Act.......................................................................................1
    1.3    Affiliate.......................................................................................1
    1.4    Book Value. ................................................................................1
    1.5    Capital Account. .........................................................................2
    1.6    Capital Commitment. ..................................................................3
    1.7    Capital Transaction Gain or Loss...............................................3
    1.8    Code............................................................................................4
    1.9    Contingent Loss. .........................................................................4
    1.10   Earmarked Assets. ......................................................................4
    1.11   Fiscal Quarter.............................................................................4
    1.12   Fiscal Year. .................................................................................4
    1.13   Leverage......................................................................................4
    1.14   Management Company. ...............................................................4
    1.15   Management Services Agreement................................................4
    1.16   Money Market Investments.........................................................4
    1.17   Outstanding Leverage. ................................................................4
    1.18   Participating Security. .................................................................4
    1.19   Partner.........................................................................................4
    1.20   Partnership Percentage. ..............................................................4
    1.21   Portfolio Securities.....................................................................5
    1.22   Preferred Limited Partner. ..........................................................5
    1.23   Preferred Limited Partnership Interest........................................5
    1.24   Prioritized Payments and Adjustments. ......................................5
    1.25   Profit Participation.....................................................................5
    1.26   SBA..............................................................................................5
    1.27   Securities.....................................................................................5
    1.28   Treasury Regulations. .................................................................5

78258 v1/SH
1_D%011.DOC

i.

TABLE OF CONTENTS
(CONTINUED)

| | | PAGE |
|---|---|---|
| 2. | NAME; PRINCIPAL PLACE OF BUSINESS; SBIC ACT. | 5 |
| | 2.1 Name; Principal Place of Business. | 5 |
| | 2.2 Conflict with SBIC Act. | 6 |
| | 2.3 SBA as Third Party Beneficiary. | 6 |
| | 2.4 Provisions Required by the SBIC Act for Issuers of Participating Securities. | 6 |
| | 2.5 Incorporation by Reference. | 6 |
| 3. | TERM OF PARTNERSHIP: | 6 |
| 4. | PURPOSE OF THE PARTNERSHIP AND INVESTMENT RESTRICTIONS. | 6 |
| | 4.1 Purpose. | 7 |
| | 4.2 General Restrictions on the Partnership. | 7 |
| 5. | NAME AND ADMISSION OF PARTNERS; CAPITAL CONTRIBUTIONS; FAILURE TO CONTRIBUTE CAPITAL. | 7 |
| | 5.1 Name And Address. | 7 |
| | 5.2 Admission of Additional Partners. | 7 |
| | 5.3 Admission of Preferred Limited Partners and Increased Commitments. | 8 |
| | 5.4 Capital Accounts. | 8 |
| | 5.5 Capital Contributions Of The Limited Partners. | 8 |
| | 5.6 Capital Contributions Of The General Partner. | 8 |
| | 5.7 Failure to Contribute Capital. | 9 |
| 6. | MANAGEMENT. | 9 |
| | 6.1 The General Partner. | 13 |
| | 6.2 The Management Company; Management Fee. | 13 |
| | 6.3 Activities of General Partner. | 13 |
| | 6.4 Restrictions on General Partner Activities. | 13 |
| | 6.5 Regulatory Authority of the SBA. | 14 |
| | 6.6 Investment of Idle Funds. | 15 |
| | 6.7 SBIC Act Investment Restrictions. | 15 |
| | 6.8 No Obligation to Obtain Position in Certain Investments. | 15 |
| | 6.9 Expenses. | 15 |

TABLE OF CONTENTS
(CONTINUED)

|  |  |  | PAGE |
|---|---|---|---|
| | 6.10 | Liability of Limited Partners. | 16 |
| 7. | | CAPITAL ACCOUNTS AND ALLOCATIONS. | 16 |
| | 7.1 | Capital Accounts. | 16 |
| | 7.2 | Allocation of Capital Transaction Gain. | 16 |
| | 7.3 | Allocation of Capital Transaction Loss. | 17 |
| | 7.4 | Allocation of Net Income or Loss. | 17 |
| | 7.5 | Reallocation of Contingent Loss. | 17 |
| | 7.6 | Special Allocation Among Late Entering Limited Partners of Organization and Operating Expenses. | 17 |
| | 7.7 | Income Tax Allocations. | 17 |
| | 7.8 | Reduction of Carried Interest. | 17 |
| 8. | | WITHDRAWALS BY AND DISTRIBUTIONS TO THE PARTNERS. | 18 |
| | 8.1 | Interest. | 18 |
| | 8.2 | Mandatory Cash Tax Distributions. | 18 |
| | 8.3 | Discretionary Distributions. | 18 |
| | 8.4 | Pro Rata Distributions. | 19 |
| | 8.5 | Limited Partner Distributions. | 19 |
| | 8.6 | General Partner Distribution. | 19 |
| | 8.7 | Class of Securities Distributed. | 19 |
| | 8.8 | General Partner's Cost Basis Contribution. | 19 |
| | 8.9 | Deemed Realized Gain. | 20 |
| | 8.10 | Distributions of Securities Generally. | 20 |
| | 8.11 | Partners' Obligation to Repay or Restore. | 20 |
| | 8.12 | Withholding. | 20 |
| 9. | | INVESTMENT REPRESENTATION. | 20 |
| | 9.1 | Investment Representation of the Limited Partners. | 21 |
| | 9.2 | Qualifications of the Limited Partners. | 21 |

TABLE OF CONTENTS
(CONTINUED)

PAGE

10.   TRANSFER OF PARTNERSHIP INTEREST; SPECIAL WITHDRAWAL RIGHT. ..............................21

10.1   Transfer by General Partner. ....................................................................................21

10.2   Transfer by Limited Partner. ....................................................................................21

    10.3   Requirements for Transfer. .................................................................................22

    10.4   Substitution as a Limited Partner. .....................................................................23

    10.5   Special Withdrawal Right. ..................................................................................23

11.   TERMINATION OF PARTNERSHIP; FINAL DISTRIBUTION OF ASSETS. ...................................24

    11.1   Termination. .........................................................................................................24

    11.2   Distribution of Assets. .........................................................................................24

    11.3   Lookback Liability of General Partner to Return Excess Distributions. ............25

    11.4   Removal of the General Partner. .........................................................................26

12.   MISCELLANEOUS. ..............................................................................................................27

    12.1   Binding Effect. .....................................................................................................27

    12.2   Counterparts. ........................................................................................................27

    12.3   Headings. ..............................................................................................................27

    12.4   Severability. .........................................................................................................28

    12.5   Valuation. .............................................................................................................28

    12.6   Books and Records. .............................................................................................28

    12.7   Reports and Meetings. .........................................................................................28

    12.8   Tax Returns and Tax Information. .......................................................................28

    12.9   Redemption and Withdrawal of Preferred Limited Partner. ...............................29

13.   EXCULPATION AND INDEMNIFICATION. ..............................................................................30

14.   AMENDMENT. .....................................................................................................................30

15.   NOTICES. ............................................................................................................................30

16.   TAX STATUS. ......................................................................................................................30

    16.1   Avoidance of Trade or Business Status. .............................................................30

    16.2   Foreign Partners. .................................................................................................31

17.   TAX MATTERS PARTNER. ...................................................................................................31

18.   POWER OF ATTORNEY. .......................................................................................................32

## TABLE OF CONTENTS
### (CONTINUED)

PAGE

19.    ARBITRATION............................................................................................................32
20.    RATIFICATION AND APPROVAL. ........................................................................32

INDEX OF DEFINITIONS

| Term | Paragraph | Page |
|------|-----------|------|
| AAA Agreement | 5.2(a) | 8 |
| Accounting Period | 1.1 | 1 |
| Act | 1.2 | 1 |
| Affiliate | 1.3 | 1 |
| Book Value | 1.4 | 1 |
| Capital Account | 1.5 | 1 |
| Capital Commitment | 1.6 | 2 |
| Capital Transaction Gain or Loss | 1.7 | 3 |
| Certificate | 3 | 3 |
| Code | 1.8 | 6 |
| Contingent Loss | 1.9 | 4 |
| Defaulting Partner | 5.7(b) | 4 |
| Earmarked Assets | 1.10 | 10 |
| Excess Distribution Amount | 11.3(c) | 4 |
| Fiscal Quarter | 1.11 | 25 |
| Fiscal Year | 1.12 | 4 |
| General Partner | -- | 4 |
| General Partner Distributions | 11.3(d) | 1 |
| Leverage | 1.13 | 25 |
| Limited Partners | -- | 4 |
| Lookback Liability | 11.3(g) | 1 |
| Management Company | 1.14 | 25 |
| Management Fee | 6.2 | 4 |
| Management Services Agreement | 1.15 | 13 |
| Minimum Withdrawal Amount | 10.5(d) | 4 |
| Money Market Investments | 1.16 | 23 |
| Optionees | 5.7(b)(ii) | 4 |
| Outstanding Leverage | 1.17 | 10 |
| Participating Security | 1.18 | 4 |
| Partner | 1.19 | 4 |
| Partnership | -- | 4 |
| Partnership Percentage | 1.20 | 1 |
| Portfolio Securities | 1.21 | 5 |
| Preferred Limited Partner | 1.22 | 5 |
| Preferred Limited Partnership Interest | 1.23 | 5 |
| Prioritized Payments and Adjustments | 1.24 | 5 |
| Profit Participation | 1.25 | 5 |
| Remaining Portion | 5.7(b)(ii)(2) | 5 |
| SBA | 1.26 | 10 |
| SBIC Act | 2.2 | 5 |
|  |  | 6 |

| | | |
|---|---|---|
| Securities | 1.27 | 5 |
| TMP | 17 | 29 |
| Treasury Regulations | 1.28 | 5 |
| Unpurchased Remaining Portion | 5.7(b)(ii)(4) | 11 |

# DOTCOM VENTURES, L.P.
## (FORMERLY ASCII VENTURES, L.P.)
## AMENDED & RESTATED
## AGREEMENT OF LIMITED PARTNERSHIP

This Amended and Restated Limited Partnership Agreement of **DOTCOM VENTURES, L.P.** (formerly **ASCII VENTURES, L.P.**) (the "Partnership"), is entered into as of the 10th day of September, 1999, by **DOTCOM INVESTMENTS, LLC,** (formerly AV Management, LLC) a California limited liability company (the "General Partner") on behalf of itself and each of the persons listed as limited partners (the "Limited Partners") on Exhibit A to the Partnership's Amended and Restated Limited Partnership Agreement dated as of April 1, 1999 (the "Prior Agreement). The undersigned General Partner is executing this Amendment pursuant to power of attorney set forth in paragraph 18 of the Agreement with respect to all changes to the Prior Agreement, other than the changes to paragraph 10.5 which have been duly authorized by action by the General Partner and the requisite Limited Partners acting pursuant to paragraph 14 of the Agreement. Accordingly, the Prior Agreement is hereby amended and restated in its entirely as follows:

1.    **DEFINITIONS.**

Unless the context requires otherwise, the following terms have the meanings specified in this paragraph:

     **1.1    Accounting Period.** An Accounting Period shall be (i) a calendar year if there are no changes in the Partners' respective interests in the profits or losses of the Partnership during such calendar year except on the first day thereof, or (ii) any other period beginning on the first day of a calendar year, or any other day during a calendar year upon which occurs a change in such respective interests, and ending on the last day of a calendar year, or on the day preceding an earlier day upon which any change in such respective interest shall occur.

     **1.2    The Act.** The California Revised Limited Partnership Act, as amended from time to time.

     **1.3    Affiliate.** An affiliate of, or a party affiliated with, a specified party, including a party that directly, or indirectly through one or more intermediaries, controls, or is controlled by or is under common control with, the party specified.

     **1.4    Book Value.** The Book Value with respect to any asset shall be the asset's adjusted basis for federal income tax purposes, except as provided below:

          (a)    The initial Book Value of any asset contributed by a Partner to the Partnership shall be the fair market value of such asset at the time of contribution, as determined by the General Partner.

          (b)    In the discretion of the General Partner, the Book Values of all Partnership assets may be adjusted to equal their respective fair market values, as determined by the General

Partner, and the resulting unrecognized gain or loss allocated to the Capital Accounts of the Partners as Capital Transaction Gain or Loss pursuant to paragraph 7 as of the following times: (A) the acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a de minimis capital contribution; and (B) the distribution by the Partnership to a Partner of more than a de minimis amount of Partnership assets, unless all Partners receive simultaneous distributions of either undivided interest in the distributed property or identical Partnership assets in proportion to their interests in the Partnership.

(c)    The Book Values of all Partnership assets shall be adjusted to equal their respective fair market values, as determined by the General Partner, and the resulting unrecognized gain or loss allocated to the Capital Accounts of the Partners as Capital Transaction Gain or Loss pursuant to paragraph 7, as of the following times:  (A) the date the Partnership is liquidated within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(g); and (B) the termination of the Partnership pursuant to the provisions of this Agreement.

(d)    The Book Values of Partnership assets shall be increased or decreased to the extent required under Treasury Regulation Section 1.704-1(b)(2)(iv)(m) in the event that the adjusted tax basis of Partnership assets are adjusted pursuant to Code Sections 732, 734, or 743.

(e)    The Book Value of a Partnership asset shall be adjusted by the depreciation, amortization, or other cost recovery deductions, if any, taken into account by the Partnership with respect to such asset in computing Net Income or Loss or Capital Transaction Gain or Loss as specified by Treasury Regulation Section 1.704-1(b)(2)(iv)(g).

1.5    **Capital Account.**  The Capital Account of each Partner shall consist of its original capital contribution, (i) increased by any additional capital contributions, its share of income or gain that is allocated to it pursuant to this Agreement, and the amount of any Partnership liabilities that are assumed by it or that are secured by any Partnership property distributed to it, and (ii) decreased by the amount of any distributions to or withdrawals by it, its share of expense or loss that is allocated to it pursuant to this Agreement, and the amount of any of its liabilities that are assumed by the Partnership or that are secured by any property contributed by it to the Partnership.  The foregoing provision and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulation paragraph 1.704-1(b)(2)(iv), and shall be interpreted and applied in a manner consistent with such Regulations.  In the event the General Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed in order to comply with such Regulations, the General Partner may, in its sole discretion, make such modification, *provided* that it is not likely to have more than an insignificant effect on the total amounts distributable to any Partner pursuant to Section 7 and Section 11.

One Capital Account shall be maintained for the General Partner in its capacity as general partner of the Partnership, and another wholly separate Capital Account shall be maintained for any capital contributed to the Partnership by the General Partner or its affiliates in the capacity as a Limited Partner of the Partnership. Any reference in this Agreement to the "General Partner's Capital Account," the "Capital Account of the General Partner" or the like shall refer to the

Capital Account maintained for the General Partner in its capacity as General Partner of the Partnership. In addition, for purposes of this Agreement, allocations and distributions made to the General Partner or an Affiliate of the General Partner in its capacity as a Limited Partner shall be treated as having been made to a Limited Partner and, accordingly, shall not be treated as having been made to or received by the General Partner.

1.6    **Capital Commitment.** A Partner's Capital Commitment shall mean the amount that such Partner has agreed to contribute to the capital of the Partnership as set forth opposite such Partner's name on Exhibit A hereto. The Partnership's Committed Capital shall equal the sum of the aggregate Capital Commitments of all Partners.

1.7    **Capital Transaction Gain or Loss.** Capital Transaction Gain or Loss shall be an amount computed for each Accounting Period as of the last day thereof that is equal to the Partnership's taxable income or loss for such Accounting Period, determined in accordance with paragraph 703(a) of the Code (for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code paragraph 703(a)(1) shall be considered taxable income or loss), with the following adjustments:

(a)    Any income of the Partnership that is exempt from federal income tax and not otherwise taken into account in computing Capital Transaction Gain or Loss pursuant to this paragraph shall be added to such taxable income or loss;

(b)    Any expenditures of the Partnership described in Code paragraph 705(a)(2)(B) or treated as Code paragraph 705(a)(2)(B) expenditures pursuant to Treasury Regulation paragraph 1.704-1(b)(2)(iv)(i) and not otherwise taken into account in computing Profit or Loss pursuant to this paragraph shall be subtracted from such taxable income or loss;

(c)    Gain or loss resulting from any disposition of a Partnership asset with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the asset disposed of rather than its adjusted tax basis;

(d)    The difference between the gross fair market value of all Partnership assets and their respective Book Values shall be added to such taxable income or loss in the circumstances described in paragraph 1.4;

(e)    Items which are specially allocated pursuant to paragraphs 7.4 and 7.6 hereof shall not be taken into account in computing Capital Transaction Gain or Loss;

(f)    The amount of any Deemed Gain or Deemed Loss on any securities distributed in kind shall be added to or subtracted from (as the case may be) such taxable income or loss; and

(g)    To the extent not otherwise taken into account in the computation of the Partnership's taxable income or loss for such Accounting Period, Capital Transaction Gain shall be reduced (or Capital Transaction Loss increased, as the case may be) by the amount of Prioritized Payments and Profit Participation paid or allocated to the SBA during such period.

1.8    **Code.**  The Internal Revenue Code of 1986, as amended from time to time.

1.9    **Contingent Loss.**  That part of the General Partner's share of Partnership Capital Transaction Loss or Net Loss that is allocated to the Limited Partners' Capital Accounts pursuant to paragraph 7.5.

1.10    **Earmarked Assets.**  Earmarked Assets shall have the meaning set forth in the SBIC Act.

1.11    **Fiscal Quarter.**  The Fiscal Quarters of the Partnership shall begin on January 1, April 1, July 1, and October 1, and end on March 31, June 30, September 30, and December 31, respectively.

1.12    **Fiscal Year.**  The Partnership's first Fiscal Year shall begin on the date hereof and end on December 31, 1997.  Thereafter, the Partnership's Fiscal Year shall commence on January 1 of each year and end on December 31 of such year or, if earlier, the date the Partnership terminated during such year.

1.13    **Leverage.**  Leverage shall have the meaning set forth in the SBIC Act.

1.14    **Management Company.**  DOTCOM Management, Inc., a California limited liability company.

1.15    **Management Services Agreement.**  The Management Services Agreement of even date herewith in the form of Exhibit F.

1.16    **Money Market Investments.**  (1) Direct obligations of, or obligations guaranteed as to principal and interest by, the United States, which mature within 15 months from the date of the investment; or (2) repurchase agreements with federally insured institutions, with a maturity of seven days or less; provided, that the securities underlying the repurchase agreements must be direct obligations of, or obligations guaranteed as to principal and interest by, the United States and the securities must be maintained in a custodial account at a federally insured institution; or (3) certificates of deposit with a maturity of one year or less, issued by a federally insured institution; or (4) a deposit account in a federally insured institution, subject to a withdrawal restriction of one year or less; or (5) a checking account in a federally insured institution.

1.17    **Outstanding Leverage.**  Outstanding Leverage shall mean the total amount of outstanding securities (including, but not limited to Participating Securities), issued by the Partnership which qualify as Leverage and which have not been redeemed by or repaid for purposes of the SBIC Act.

1.18    **Participating Security.**  Participating Security shall have the meaning set forth in the SBIC Act.

1.19    **Partner.**  Partner shall refer to the General Partner and the Limited Partners and shall not include any Preferred Limited Partner except as otherwise expressly provided herein.

78258 v1/SH
I_D%011.DOC                    4.

**1.20    Partnership Percentage.** The Partnership Percentage for each Partner shall be determined by dividing the sum of (i) the amount of each Partner's capital contribution plus (ii) the unpaid portion of such Partner's capital commitment by the sum of (y) the capital contribution of all of the Partners plus (z) the sum of the unpaid amount of all Partners' capital commitments. The sum of the Partners' Partnership Percentages shall be one hundred percent (100%). For purposes of computing any Partner's Partnership Percentage, any capital contribution or capital commitment made by a Defaulting Partner whose Partnership Percentage has been reduced to zero percent (0%) shall be disregarded.

**1.21    Portfolio Securities.** All Securities then held by the Partnership excluding Money Market Investments.

**1.22    Preferred Limited Partner.** Preferred Limited Partner shall mean the SBA, in its capacity as a Preferred Limited Partner, or any person holding a Participating Security issued by the Partnership.

**1.23    Preferred Limited Partnership Interest.** Preferred Limited Partnership Interest shall mean a interest which qualifies as a Participating Security.

**1.24    Prioritized Payments and Adjustments.** Payments and Adjustments shall have the meaning set forth in the SBIC Act.

**1.25    Profit Participation.** Profit Participation shall have the meaning set forth in the SBIC Act.

**1.26    SBA.** SBA shall mean the United States Small Business Administration.

**1.27    Securities.** Securities of every kind and nature and rights and options with respect thereto, including stocks, notes, bonds, debentures, evidences of indebtedness, and other business interests of every type, including interests in partnerships, joint ventures, proprietorships, and other business entities.

**1.28    Treasury Regulations.** Treasury Regulations shall be the Income Tax Regulations promulgated under the Code, as such Regulations may be amended from time to time.

**2.    NAME; PRINCIPAL PLACE OF BUSINESS; SBIC ACT.**

**2.1    Name; Principal Place of Business.** Prior to the date of this Agreement, the name of the Partnership was ASCII VENTURES, L.P. Effective as of the date of this Agreement, the name of the Partnership shall be DOTCOM VENTURES, L.P. and the General Partner is hereby authorized to take all necessary action to reflect such name on the records of the Secretary of State of the State of California. The principal place of business of the Partnership shall be at such place as determined from time to time by the General Partner. The registered office of the Partnership in California shall be located at 3945 Freedom Circle, Suite 740, Santa Clara, California 95054.

**2.2    Conflict with SBIC Act.** The provisions of this Agreement shall be interpreted to the fullest extent possible in a manner consistent with the Small Business Investment Act of 1958, as amended, and the rules and regulations promulgated hereunder by the SBA, as in effect from time to time (the "SBIC Act"). In the event of any conflict between any provision of the Agreement and the provisions of the SBIC Act (including, without limitation, any conflict with respect to the rights of the SBA or the Partners hereunder), the provisions of the SBIC Act shall control.

**2.3    SBA as Third Party Beneficiary.** In the event that the SBA is not a party to the Agreement, the SBA shall be deemed an express third party beneficiary of the provisions of the Agreement to the extent of the rights of the Preferred Limited Partners and the SBA hereunder and under the Act, and the SBA shall be entitled to enforce such provisions (including, without limitation, the obligations of each Partner to make capital contributions to the Partnership) for the benefit of the Preferred Limited Partners and for its benefit, as if the SBA were a party hereto.

**2.4    Provisions Required by the SBIC Act for Issuers of Participating Securities.**

    **(a)**    The provisions of 13 C.F.R. § 107.1140 are hereby incorporated by reference in this Agreement as if fully set forth herein.

    **(b)**    The Partnership and the Partners hereby consent to the exercise by the SBA of all of the rights of the SBA under 13 C.F.R. § 107.1140, and agree to take all actions which the SBA may require in accordance with 13 C.F.R. § 107.1140.

    **(c)**    This paragraph 2.4 shall be in effect at any time that the Partnership has outstanding Participating Securities or owns Earmarked Assets, and shall not be in effect at any time that the Partnership neither has outstanding Participating Securities nor owns Earmarked Assets.

    **(d)**    Nothing in this paragraph 2.4 shall be construed to limit the ability or authority of the SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

**2.5    Incorporation by Reference.** The provisions of SBA Annex PS, in the form attached to this Agreement as Exhibit PS, are incorporated in this Agreement with the same force and effect as if fully set forth herein. The provisions of this Agreement shall be interpreted to the fullest extent possible in a manner consistent with the provisions of SBA Annex PS. In the event of any conflict between any provision of SBA Annex PS and any other provision of this Agreement, the provisions of SBA Annex PS shall prevail

**3.    TERM OF PARTNERSHIP:** The term of the Partnership commenced on September 3, 1997 and shall continue until the later of (i) the date ten (10) years thereafter or (ii) the date two (2) years after the repayment of all Leverage obtained from the SBA, unless sooner dissolved as provided in paragraph 11.1 below or extended as set forth in the next sentence. The term may be extended at the sole discretion of the General Partner for up to three one-year periods.

4.  **PURPOSE OF THE PARTNERSHIP AND INVESTMENT RESTRICTIONS.**

    **4.1   Purpose.** The Partnership is being organized solely for the purpose of operating as a small business investment company under the SBIC Act, and shall have the power, responsibilities, and be subject to the limitations provided in the SBIC Act.

    **4.2   General Restrictions on the Partnership.**

        (a)     The Partnership may not invest in any portfolio company in an amount in excess of twenty percent (20%) of the Partnership's Committed Capital without the approval of Two-Thirds in Interest of the Limited Partners.

        (b)     The Partnership will not borrow money, issue promissory notes and other negotiable or non-negotiable instruments (other than limited partnership interests), purchase securities on margin, sell securities short, engage in risk arbitrage transactions or invest in commodities, interests in oil, gas or mineral rights or real property.

        (c)     Subject to the SBIC Act and SBA Annex PS, the Partnership may reinvest any proceeds realized on the sale of Securities in the Partnership's venture capital portfolio in (i) Money Market Investments and (ii) Securities other than Money Market Investments, provided that the Partnership's cumulative investment in Securities other than Money Market Investments over the term of the Partnership shall not exceed one hundred percent (100%) of the aggregate amount of the Partnership's Committed Capital.

5.  **NAME AND ADMISSION OF PARTNERS; CAPITAL CONTRIBUTIONS; FAILURE TO CONTRIBUTE CAPITAL.**

    **5.1   Name And Address.** The name and address of the General Partner and each Limited Partner, the amount of such Partner's Capital Commitment to the Partnership, and such Partner's Partnership Percentage are set forth on Exhibit A hereto. The General Partner shall cause Exhibit A to be amended from time to time to reflect the admission of any new Partner, the withdrawal or substitution of any Partner, the transfer of interests among Partners, receipt by the Partnership of notice of any change of address of a Partner, or the change in any Partner's Capital Commitment or Partnership Percentage. An amended Exhibit A shall supersede any prior Exhibit A and become a part of this Agreement. A copy of the most recent amended Exhibit A shall be kept on file at the principal office of the Partnership. The General Partner shall deliver a copy of any such amended Exhibit A to each Limited Partner as soon as reasonably practicable.

5.2    **Admission of Additional Partners.**

(a)    Except pursuant to the terms of that certain Assignment, Assumption and Amendment Agreement dated April 1, 1999 by and between the Partnership, the General Partner, ASCII of America, Inc., CSK Venture Capital Co. Ltd. and various other parties (the "AAA Agreement") or as provided in paragraphs 5.7(b)(iv) and 10.4, an additional person may be admitted as a Partner only with the consent of the General Partner and Two-Thirds in Interest of the Limited Partners.

(b)    Each additional person admitted as a Partner shall (i) execute and deliver to the Partnership a counterpart of this Agreement or otherwise become bound by the terms of this Agreement and (ii) contribute that portion of its Capital Commitment which is equal to the portion of their respective Capital Commitments contributed to date by the Partnership's previously admitted Limited Partners.

5.3    **Admission of Preferred Limited Partners and Increased Commitments.**  The Partnership may, from time to time after the date hereof, admit one or more Preferred Limited Partners with the consent of only the General Partner under the following terms and conditions.

(a)    Each Preferred Limited Partner shall execute and deliver to the Partnership an instrument in the form attached hereto as Exhibit A-1, or other form satisfactory to the General Partner and the Preferred Limited Partner, evidencing such Preferred Limited Partner's agreement to be bound by and comply with the terms and provisions of the Agreement as if such Preferred Limited Partner were an original signatory to the Agreement, and setting forth such Preferred Limited Partner's name, address and Capital Commitment.

(b)    Each Preferred Limited Partner shall be admitted to the Partnership as of the date that such instrument is executed by such Preferred Limited Partner and the General Partner. Each Preferred Limited Partner shall pay on the date of its admission to the Partnership, a capital contribution equal to 100% of the amount of its Capital Commitment.

(c)    At the time that any Preferred Limited Partner makes an additional capital contribution to the Partnership it shall execute an instrument as provided in paragraph 3.3.(a) setting forth the amount of such additional capital contribution, and its Capital Commitment shall be increased by the amount of such capital contribution.

5.4    **Capital Accounts.**  An individual Capital Account shall be maintained for each Partner.

5.5    **Capital Contributions Of The Limited Partners.**

(a)    Each Limited Partner's Capital Commitment shall be contributed in cash installments as specified by the General Partner upon fifteen (15) days' prior written notice. No Limited Partner shall be required to make capital contributions in excess of such Limited Partner's Capital Commitment.

(b)    Notwithstanding paragraph 5.5(a), in no event shall any Limited Partner be required to contribute capital in respect of such Limited Partner's Capital Commitment in amounts in excess of the following:

| Period | Maximum Percentage of Capital Commitment Which May Be Called |
|---|---|
| Prior to April 1, 1999 | 25% |
| Prior to April 1, 2000 | 50% |
| Prior to April 1, 2001 | 75% |

The restrictions of this paragraph 5.5(b) shall be subject to the SBIC Act and shall in no way limit SBA's authority to require Partners to contribute capital in respect of their Capital Commitment.

(c)    Notwithstanding the Partnership's authority to enforce obligations of each Limited Partner to make capital contributions as set forth in paragraph 5.5, if the Partnership has Outstanding Leverage or owns Earmarked Assets, then the Partnership shall not enter into any agreement (whether oral or written), release or settlement with any Partner or take any action under any provision of this Agreement, which defers, reduces or terminates the obligations of any such Partner to make contributions to the capital of the Partnership, or commence any legal proceedings or arbitration, which seeks any such deferral, reduction or termination of such obligation, and no such agreement, release, settlement or action taken under any provision of this Agreement shall be effective with respect to the Partnership or any such Partner, without the prior written consent of the SBA. If the General Partner has given the SBA thirty (30) days prior written notice of any proposed action under the provisions of the Agreement with respect to any default by a Limited Partner and the General Partner shall not have received written notice from the SBA that it objects to such proposed action within such thirty (30) day period, then SBA shall be deemed to have consented to such proposed action.

5.6    **Capital Contributions Of The General Partner.**  The General Partner shall contribute capital to the Partnership in an amount equal to one-ninety-ninth (1/99) of the amount contributed by the Limited Partners on each date on which any Limited Partner makes a contribution. The General Partner may elect, in its discretion, to make its capital contribution by delivery of a promissory note in the form attached hereto as Exhibit B.

5.7    **Failure to Contribute Capital.**

(a)    The Partnership shall be entitled to enforce the obligations of each Partner (or a permitted assignee of a Limited Partner pursuant to paragraph 10) to make the contributions to capital and the Partnership shall have all remedies available at law or equity in the event any such contribution is not so made. If any legal proceedings relating to the failure of a Limited Partner to make such a contribution are commenced, such Limited Partner shall pay all costs and

expenses incurred by the Partnership, including attorneys' fees, in connection with such proceedings.

(b)     In addition, but in each instance subject to SBA Annex PS to the extent applicable, if any Limited Partner (the "Defaulting Partner") fails to make any installment of Capital Contribution when due, such Partner shall be in default, and the General Partner may, in its sole discretion, elect to enforce the provisions of subparagraphs 5.7(b)(i) and (ii) below.

(i)     Should the General Partner, in its sole discretion, elect to exercise the provisions of this paragraph 5.7(b)(i), such Defaulting Partner shall pay the interest on the amount of the contribution to the Partnership then due at an interest rate equal to the floating commercial rate of interest publicly announced by Bank of America (or its successors), San Francisco, California as its prime rate plus four percent (4%) per annum, such interest to accrue from the date the contribution to the Partnership was required to be made pursuant to paragraph 5.5 hereof until the date the contribution is made by such defaulting Limited Partner. The accrued interest shall be paid by such defaulting Limited Partner to the Partnership upon payment of such contribution. The accrued interest so paid shall not be treated as an additional contribution to the capital of the Partnership, but shall be deemed to be income to the Partnership. Until such time as the unpaid contribution and accrued interest thereon shall have been paid by such defaulting Limited Partner, the General Partner may elect to withhold any or all distributions to be made to such defaulting Limited Partner pursuant to Section 8 hereof.

(ii)     Should the General Partner, in its sole discretion, elect to exercise the provisions of this paragraph 5.7(b)(ii), the other Limited Partners and the General Partner (the "Optionees") shall have the right and option to acquire the Partnership interest of any Defaulting Partner, as follows:

(1)     If any Defaulting Partner defaults in making such contribution, the General Partner shall immediately notify such Defaulting Partner of such default. If the default continues for ten (10) or more days after notice of the default, the General Partner shall notify the Optionees of the default within twenty (20) days after the expiration of the aforesaid ten (10) day notice period. Such notice shall advise each Optionee of the portion and the price of the Defaulting Partner's interest available to it. The portion available to each Optionee shall be that portion of the Defaulting Partner's interest that bears the same ratio to the Defaulting Partner's entire interest as each Optionee's Partnership Percentage bears to the aggregate Partnership Percentages of all the Limited Partners other than the Defaulting Partner. The aggregate price for the Defaulting Partner's interest shall be the lesser of (A) an amount equal to (1) the balance that would have been in the Defaulting Partner's Capital Account as of the due date of the additional contribution if the Partnership had terminated on such date and all allocations necessary to determine the closing Capital Accounts of the Partners under paragraph 11.2 had been effected less (2) any distributions to the Defaulting Partner under this Agreement which are effected from and after such due date to the date of purchase of Defaulting Partner's interest hereunder, or (B) the aggregate amount of the Defaulting Partner's capital contributions less any distributions made to the Defaulting Partner (with such distributions being valued at fair market value as of the date of the distribution) through the date of purchase of Defaulting Partner's interest hereunder. The price for each Optionee shall be prorated according to the

portion of the Defaulting Partner's interest purchased by each such Optionee. The option granted hereunder shall be exercisable at any time within forty-five (45) days after the date of the notice from the General Partner.

(2)    If any Optionee does not exercise its option within said forty-five (45) day period provided in paragraph 5.7(b)(ii)(1) above, the General Partner shall immediately notify the other Optionees, who shall have the right and option ratably among them to acquire the portion of the Defaulting Partner's interest not so acquired (the "Remaining Portion") within forty-five (45) days after the date of the notice specified in this paragraph on the same terms as provided in paragraph 5.7(b)(ii)(1).

(3)    The amount of the Remaining Portion not acquired by the Optionees pursuant to paragraph 5.7(b)(ii)(2) above, may be acquired by the General Partner within forty-five (45) days of the expiration of the forty-five (45) day period specified in paragraph 5.7(b)(ii)(2) above, on the same terms as set forth in paragraph 5.7(b)(ii)(1) above.

(4)    The amount of the Remaining Portion not acquired by the Optionees and the General Partner may, if the General Partner deems it in the best interests of the Partnership, be sold to any other corporations, trusts, partnerships or individuals on terms not more favorable to such parties than those applicable to the Optionees' option. In lieu of the foregoing, the General Partner may, if the General Partner deems it in the best interests of the Partnership, cause the Partnership to (x) repurchase on the same terms applicable to the Optionee's option some or all of the Remaining Portion not acquired by the Optionees and the General Partner (the "Unpurchased Remaining Portion") and (y) issue to any other individual or entity (on terms not more favorable to such parties than those applicable to the Optionee option) a Limited Partnership interest in the Partnership substantially identical in all respects to the Unpurchased Remaining Portion purchased pursuant to clause (x) hereof; provided, however that the Capital Account balance of such newly admitted Limited Partner shall be determined without reference to the Capital Account of the Defaulting Partner. Such newly admitted Limited Partner shall be deemed, solely for purposes of computing such Limited Partner's Partnership Percentage, to have contributed to the capital of the Partnership the sum of the amount the Defaulting Partner had previously contributed to the Partnership with respect to the Unpurchased Remaining Portion that such Limited Partner's interest replaced plus any amounts actually contributed to the Partnership by such newly admitted Limited Partner. If not all of the Remaining Portion is sold as provided herein, then (A) the Defaulting Partner shall be entitled only to receive an amount equal to the portion of its Capital Account balance representing the unsold Remaining Portion (determined at the time of such first failure to make one of the capital contributions) such amount to be payable upon the termination of the Partnership, without interest, (B) notwithstanding the provisions of paragraph 7, items of Net Income and Loss and Capital Transaction Gain and Loss shall be allocated to the Capital Account of the Defaulting Partner so as to cause its positive Capital Account balance to equal at all times the amount it is entitled to receive pursuant to clause (A) hereof and (C) the Defaulting Partner's Partnership Percentage shall be reduced to zero percent (0%).

(5)    The price due from each of the General Partner and the Optionees shall, at the separate elections of the General Partner and each Optionee, be payable to

the Defaulting Partner either in cash or by a non-interest bearing, nonrecourse note in the form of Exhibit C, due six (6) months after the date of termination of the Partnership. Each such note shall be secured by the portion of the Defaulting Partner's Partnership interest purchased by its maker pursuant to a security agreement in the form of Exhibit D and shall be enforceable by the Defaulting Partner only against the security.

(6)    Upon the exercise of any option or any other purchase hereunder, each Optionee or other purchaser shall be obligated (A) to contribute to the Partnership that portion of the additional capital then due from the Defaulting Partner equal to the percentage of the Defaulting Partner's interest purchased by such Optionee or other purchaser and (B) to pay the same percentage of any further contributions otherwise due from such Defaulting Partner. Such Optionee's or other purchaser's Capital Commitment shall be appropriately adjusted to reflect such obligation plus any capital previously contributed with respect to the purchased interest.

(7)    Notwithstanding any other provision of this paragraph 5.7(b), no option described in this paragraph 5.7(b) shall be exercised without the prior written approval of the SBA (or the passage of thirty (30) days from the date of notice to the SBA of an Optionee's intention to exercise any such other option, which passage of time will be deemed consent by the SBA). If the General Partner has given the SBA thirty (30) days prior written notice of any proposed action under the provisions of the Agreement with respect to any default by a Limited Partner and the General Partner shall not have received written notice from the SBA that it objects to such proposed action within such thirty (30) day period, then the SBA shall be deemed to have consented to such proposed action.

(8)    Notwithstanding any provision in the Agreement to the contrary, the General Partner and the Limited Partners shall be obligated to contribute any amount of their respective current Capital Commitments, not previously contributed to the Partnership, upon the earlier of (i) the completion of the liquidation of the Partnership or (ii) one year from the commencement of such liquidation, if and to the extent that the other assets of the Partnership have not been sufficient to permit as of such time the redemption of all Outstanding Leverage, the payment of all amounts due with respect to the Outstanding Leverage as provided in the SBIC Act, and the payment of all other amounts owed by the Partnership to the SBA.

(c)    Notwithstanding any provision in the Agreement to the contrary (except as expressly provided in this paragraph 5.7(c)), in the event that the Partnership is subject to restricted operations (as such terms is used in the SBIC Act) and prior to the liquidation of the Partnership the SBA requires the General Partner and the Limited Partners to contribute any amount of their respective Capital Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in this Agreement other than limitations on the amount of capital which a Partner is obligated to contribute within any specified time period. No Limited Partner or General Partner shall have any right to delay, reduce or offset any capital contribution obligation to the Partnership called under this paragraph 5.7 by reason of any counterclaim or right of offset by such Partner or the Partnership against the SBA or any Preferred Limited Partner.

6.    MANAGEMENT.

6.1    **The General Partner.** The General Partner shall have the sole and exclusive control of the management of the Partnership and the conduct of the business of the Partnership, and the Limited Partners shall not participate in management. The General Partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a general partner in a limited partnership formed under the laws of the State of California, and shall have authority to take any action or make any decision, on behalf of the Partnership, hereunder to carry out all of the objects and purposes of the Partnership as set forth in paragraph 4.1 hereof, and to perform all acts and enter into and perform all contracts and other undertakings which it may deem reasonably necessary or advisable or incidental thereto. The General Partner shall, so long as it remains the General Partner of the Partnership, comply with the requirements of the SBIC Act, as in effect from time to time. So long as the Partnership is licensed as a small business investment company under the SBIC Act, the sole purpose of the General Partner shall be operating as General Partner of the Partnership, except if the General Partner ceases to be the General Partner as provided in this Agreement or the SBIC Act.

6.2    **The Management Company; Management Fee.** The Partnership shall engage the Management Company to provide certain management services to the Partnership pursuant to the terms of the Management Services Agreement attached as Exhibit F in exchange for payment of amounts set forth therein (the "Management Fee"). Subject to the SBIC Act, the Management Company shall be delegated certain rights and powers for the purpose of carrying out the goals and purposes, and managing the business of the Partnership. However, the General Partner will retain overall management responsibility for all activities of the Partnership and will have the exclusive right and power to manage and operate the business of the Partnership, to review and approve investment decisions, and to determine its business policies. Notwithstanding anything to the contrary in this Agreement, no management fee shall be paid to the Management Company except as permitted by the SBA under the SBIC Act.

6.3    Activities of General Partner.

(a)    The General Partner and the managing members of the General Partner, for so long as each shall remain a manager of the General Partner, shall devote so much of their time to the affairs of the Partnership as in good faith the conduct of the Partnership's business shall reasonably require; provided, however, that during the term of the Partnership, the General Partner shall only engage in the management and operation of the Partnership and any other entity licensed as a small business investment company by the SBA.

(b)    From and after the date of this Agreement, but subject to paragraph 6.3(a), the General Partner may be involved in the formation or management of any new venture capital oriented partnership or entity with substantially the same investment objectives as the Partnership upon the earlier of (i) written consent of Two-Thirds in Interest of the Limited Partners, (ii) the date on which funds equal to at least seventy percent (70%) of the Partnership's Committed Capital have been invested, committed for investment, reserved for investment in the existing portfolio of companies of the Partnership, or reserved to fund future Partnership expenses, including the Management Fee, or (iii) the date four (4) years from the commencement of the

Partnership. Notwithstanding the foregoing, KLM Capital and its Affiliates shall not be limited in any way by the provisions of this paragraph 6.3(b).

(c)    The Partners expressly agree and understand that the General Partner, or its members, employees, agents or Affiliates may have investment responsibilities for, engage in business with, perform advisory, managerial, or other services for, or act as a director, trustee, partner or other administrative official of other individuals or entities, whether or not Portfolio Companies. The General Partner (subject to paragraph 6.3(a)) or its members, employees, agents, or Affiliates may receive compensation for such services or participate in profits derived in such entities, and the Partnership will not share in any such compensation or profits.

(d)    The General Partner (subject to paragraph 6.3(a)) or its members, employees, agents or Affiliates may buy, sell, invest in, or otherwise deal with any Securities or other investments, whether or not in Portfolio Companies, for its or their own accounts, or for accounts of individuals or other entities or venture capital oriented entities with which they may be associated as to which it or they exercise investment responsibility or render investment advice, without liability or accountability in damages or otherwise to the Partnership, or any of its Partners.

6.4    **Restrictions on General Partner Activities.**

(a)    The Management Company, the General Partner and their members or employees who are involved in the Partnership will not buy securities from or sell securities to the Partnership without the consent of (i) Two-Thirds in Interest of the Limited Partners and (ii) the SBA. Each member or employee of the General Partner or Management Company must disclose to all Partners any material ownership or profit interest directly held in any entity with which the Partnership proposes to make an initial investment.

(b)    **Voting Rights of the Limited Partners.** Neither the Partnership nor the General Partner will:

(i)    make any investments in new portfolio companies (other than follow-on investments in existing portfolio companies) after the ninth anniversary of the Initial Closing Date, without the approval of a majority in interest of the Limited Partners;

(ii)    reinvest the proceeds of its portfolio company investments into new portfolio companies without the unanimous approval of the Partners; provided, however, the Partnership may invest such proceeds in short term investments pending distribution.

(iii)    transfer its General Partnership interest without the written consent of a majority in interest of Limited Partners and unless the tax treatment of the Partnership will be maintained; and,

(iv)    voluntarily withdraw from the Partnership as General Partner, without the consent of Two-Thirds in Interest of Limited Partners, unless at the time there is at least one additional general partner and unless the tax treatment of the Partnership will be maintained.

78258 v1/SH
1_D%011.DOC                                    14.

**6.5    Regulatory Authority of the SBA.** The Partners acknowledge that, in addition to the rights of the SBA under this Agreement in the SBA's capacity as a Preferred Limited Partner, the SBA also has regulatory authority over the Partnership as a licensed small business investment company under the provisions of the SBIC Act. The Partners further acknowledge that the SBA exercises its regulatory authority over the Partnership under the SBIC Act independent of and separate from its rights and actions in its capacity as a Preferred Limited Partner. Actions taken by the SBA pursuant to such regulatory authority shall not be deemed to be actions taken in the SBA's capacity as a Preferred Limited Partner of the Partnership.

**6.6    Investment of Idle Funds.** The Partnership shall invest all idle funds as required under Section 107.530 and other applicable portions of the SBIC Act.

**6.7    SBIC Act Investment Restrictions.** Notwithstanding any other provision of this Agreement, all investments by the Partnership shall comply with the SBIC Act.

**6.8    No Obligation to Obtain Position in Certain Investments.** While the General Partner is restricted by the SBIC Act and paragraph 6.3(a) to the management of one or more small business investment companies and hence, may not conduct direct investing activities, the General Partner or its members, employees, agents or Affiliates shall not have any obligation to acquire for or offer to the Partnership a position in any investment which any such person or entity may acquire. The Partnership and its Partners shall have no first refusal, co-investment, or other rights in respect of any such investment, in any fees, profits or other income earned or derived therefrom; provided, however, in no event shall the General Partner or its members, employees, agents or Affiliates contemporaneously take a position in any investment which the Partnership is then acquiring on terms more favorable than terms secured by the Partnership.

**6.9    Expenses.**

(a)    From the Management Fee, the Management Company shall bear all normal operating expenses incurred in connection with the management of the Partnership, except for those expenses borne directly by the Partnership as set forth in the immediately following subparagraphs and elsewhere herein. Such normal operating expenses to be borne by the Management Company shall include, without limitation, expenditures on account of salaries, wages, travel, entertainment, and other expenses of the employees of the Partnership, the General Partner or the Management Company, rentals payable for space used by the General Partner, the Partnership or the Management Company, bookkeeping services and equipment, and expenses incurred in investigating and evaluating investment opportunities and in managing investments of the Partnership.

(b)    The Partnership shall bear all costs and expenses incurred in the holding, purchase, sale or exchange of Securities (whether or not ultimately consummated), including, but not by way of limitation, private placement fees, finder's fees, interest on borrowed money, real property or personal property taxes on investments, brokerage fees, legal fees, audit and accounting fees, extraordinary consulting fees relating to investments or proposed investments, taxes applicable to the Partnership on account of its operations, fees incurred in connection with the maintenance of bank or custodian accounts, and all expenses incurred in connection with the

registration of the Partnership's Securities under applicable securities laws or regulations. The Partnership shall also bear expenses incurred by the General Partner in serving as the tax matters partner, the cost of liability and other insurance premiums, all out-of-pocket expenses of preparing and distributing reports to Partners, out-of-pocket costs associated with Partnership meetings, all legal and accounting fees relating to the Partnership and its activities, all costs and expenses arising out of the Partnership's indemnification obligation pursuant to this Agreement, and all expenses that are not normal operating expenses.

(c)    The General Partner shall cause to be paid out of Partnership funds the organizational expenses incurred in connection with the formation of the General Partner and the Partnership (in an amount not to exceed an aggregate of $125,000), those other costs and expenses described in the preceding paragraph and in the Management Services Agreement as being the responsibility of the Partnership, and all liquidation costs and expenses incurred by the General Partner or the Management Company in connection with the liquidation of the Partnership's assets pursuant to paragraph 11 hereof.

6.10    **Liability of Limited Partners.** No Limited Partner shall be liable for any debts or obligations of the Partnership, including obligations in respect of indemnification provided in paragraph 13.2, in excess of its unpaid Capital Commitment. Limited Partners have no right to participate in the management of the Partnership, or to act or vote with respect to matters relating to the Partnership, except as specifically provided under California law or in this Agreement.

7.    CAPITAL ACCOUNTS AND ALLOCATIONS.

7.1    **Capital Accounts.** A Capital Account shall be maintained on the Partnership's books for each Partner. In the event any interest in the Partnership is transferred or assigned in accordance with the terms of this Agreement, the transferee or assignee shall succeed to the Capital Account of the transferor or assignor to the extent it relates to the transferred or assigned interest.

7.2    **Allocation of Capital Transaction Gain.** Except as hereinafter provided in this Article 7 and subject to SBA Annex PS and the SBIC Act, Capital Transaction Gain of the Partnership for each Accounting Period shall, after effecting the allocations provided in paragraph 7.4 for such Accounting Period, be allocated as follows:

(a)    Twenty percent (20%) of the Partnership's Capital Transaction Gain shall be allocated to the Capital Account of the General Partner; provided, however, that if the Capital Accounts of one or more of the Limited Partners contain a Contingent Loss, an amount of such Capital Transaction Gain that would otherwise be allocated entirely to the Capital Account of the General Partner pursuant to this subparagraph shall instead be allocated one percent (1%) to the Capital Account of the General Partner and ninety-nine percent (99%) to the Capital Accounts of the Limited Partners (in proportion to the amount of Contingent Loss in their respective Capital Accounts) until the Limited Partners receive up to an aggregate amount equal to the previously allocated Contingent Loss that has not been restored by prior allocations pursuant to this proviso and then any remaining such Capital Transaction Gain shall be allocated to the Capital Account of the General Partner.

(b)     The remaining eighty percent (80%) of the Partnership's Capital Transaction Gain shall be allocated to the Capital Accounts of all of the Partners (General and Limited) pro rata in proportion to their respective Partnership Percentages.

7.3     **Allocation of Capital Transaction Loss.** Except as hereinafter provided in this Article 7 and subject to SBA Annex PS and the SBIC Act, Capital Transaction Loss of the Partnership for each Accounting Period shall be allocated as follows:

(a)     Twenty percent (20%) of the Partnership's Capital Transaction Loss shall be allocated to the Capital Account of the General Partner.

(b)     The remaining eighty percent (80%) of such Capital Transaction Loss shall be allocated to the Capital Accounts of all of the Partners (General and Limited) pro rata in proportion to their respective Partnership Percentages.

7.4     **Allocation of Net Income or Loss.** Except as hereinafter provided in this Article 7 and subject to SBA Annex PS and the SBIC Act, Net Income or Loss of the Partnership for an Accounting Period shall be allocated to the Capital Accounts of all Partners (General and Limited) pro rata in proportion to their respective Partnership Percentages.

7.5     **Reallocation of Contingent Loss.**  If for any Accounting Period after the Partnership's Capital Transaction Gain or Loss and Net Income or Loss has been allocated pursuant to paragraphs 7.2, 7.3 and 7.4, the Capital Account Balance of the General Partner has been reduced below one percent (1%) of the total Capital Account balances of all the Partners of the Partnership, then an amount of Capital Transaction Loss and, to the extent necessary, Net Loss (collectively, the "Contingent Loss") shall be reallocated from the General Partner's Capital Account to the Capital Accounts of all the Limited Partners pro rata in proportion to their respective Partnership Percentages so that the General Partner's Capital Account Balance is not reduced below one percent (1%) of the total Capital Account balances of all the Partners.  For purposes of this paragraph, the balance in the Capital Account of the General Partner shall be computed without regard to any amounts attributable to any interest as a Limited Partner held by the General Partner.

7.6     **Special Allocation Among Late Entering Limited Partners of Organization and Operating Expenses.** If additional persons are admitted to the Partnership as Limited Partners subsequent to the date of its formation, then organizational costs, fees (including the management fee), and expenses of the Partnership that are allocated to the Partners on or after the effective date of such admission shall be allocated first to such new Partners to the extent necessary to cause such persons to be treated with respect to such items as if they had been Partners from the commencement of the Partnership's term.

7.7     **Income Tax Allocations.**

(a)     Except as otherwise provided in this paragraph or as otherwise required by the Code and the rules and Treasury Regulations promulgated thereunder, a Partner's distributive

share of Partnership income, gain, loss, deduction, or credit for income tax purposes shall be the same as is entered in the Partner's Capital Account pursuant to this Agreement.

(b)    In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss, and deduction with respect to any asset contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial Book Value.

(c)    In the event the Book Value of any Partnership asset is adjusted pursuant to the terms of this Agreement, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code Section 704(c) and the Treasury Regulations thereunder.

7.8    **Reduction of Carried Interest.**  To the greatest extent practicable, commencing with the first Accounting Period after the date on which the General Partner ceases to allocate income or loss to its "Class C Members" pursuant to the terms of its Amended and Restated Operating Agreement (the "Class C Date"), the allocations of Capital Transaction Gain or Loss otherwise required to be made twenty percent (20%) to the General Partner and eighty percent (80%) to all Partners pursuant to this Article 7 shall instead be made seventeen percent (17%) to the General Partner and eighty-three percent (83%) to all Partners. However, to facilitate an equitable transition from a twenty percent (20%) carried interest to a seventeen percent (17%) carried interest on net aggregate profits enjoyed by the Partnership after the Class C Date, Capital Transaction Losses allocated after the Class C Date shall continue to be allocated twenty percent (20%) to the General Partner to the extent that any previous allocations of Capital Transaction Gain made twenty percent (20%) to the General Partner have not been previously offset by an equal amount of Capital Transaction Losses.  Similarly, if Contingent Losses have previously been allocated in connection with an allocation of Capital Transaction Loss which would, but for the application of paragraph 7.5, been allocated twenty percent (20%) to the General Partner, the restoration of such Contingent Losses shall be carried out by pursuant to paragraph 7.2(a) by reference to twenty percent (20%) allocations.  To the greatest extent practicable, distributions pursuant to Article 8 shall similarly be adjusted.

8.    WITHDRAWALS BY AND DISTRIBUTIONS TO THE PARTNERS.  Subject to the SBA Annex PS and the SBIC Act, all distributions and withdrawals, other than distributions in connection with liquidation of the Partnership, shall be made in accordance with this Article 8.

8.1    **Interest.**  No interest shall be paid to any Partner on account of its interest in the capital of, or on account of its investment in, the Partnership.

8.2    **Mandatory Cash Tax Distributions.**  Each Partner shall be paid in cash within ninety (90) days after the end of each fiscal year during the original term of the Partnership an amount equal to the excess, if any of (a) the aggregate state and federal income tax liability such Partner would have incurred as a result of such Partner's ownership of an interest in the Partnership for all prior fiscal years, calculated as if (i) such Partner were a natural person

resident in the state of California and taxable at the maximum rates provided for under applicable federal and California state income tax laws, and (ii) allocations from the Partnership were the sole source of income and loss for such Partner, over (b) all prior cash distributions made pursuant to this paragraph 8.2 or paragraph 8.3; provided that (x) the General Partner shall not be required to make any such distribution if the total amount to be distributed to all Partners is less than $200,000 and (y) in no event may the distribution made pursuant to this paragraph 8.2 exceed such Partner's allocable share of the Partnership's Net Capital Transaction Gain (reduced by the Partnership's Net Loss).

8.3 **Discretionary Distributions.** The General Partner may in its sole discretion make additional distributions of cash or distribute in kind marketable securities, with such distributions being made twenty percent (20%) to the General Partner and eighty percent (80%) to all Partners (General and Limited) pro rata in proportion to their respective Partnership Percentages; provided, however, that after giving effect to the proposed distribution, (A) the aggregate fair market value of the Partnership's Portfolio Securities (valued as provided in paragraph 12.5) would not be less than one hundred and twenty percent (120%) of the aggregate cost basis of the Portfolio Securities then held by the Partnership, (B) the Capital Account of the General Partner will not be less than one percent (1%) of the total Capital Accounts of all the Partners of the Partnership determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed recognized by the Partnership pursuant to paragraph 8.9, and (C) all Contingent Losses allocated to the Capital Accounts of the Limited Partners pursuant to paragraph 7.5 have been restored by subsequent allocations of gain.

8.4 **Pro Rata Distributions.** At any time, the General Partner may in its sole discretion distribute cash or Securities to all Partners pro rata in proportion to their Partnership Percentages, provided that, immediately after the proposed distribution, the Capital Account balance of the General Partner will not be less than one percent (1%) of the Capital Account balances of all the Partners of the Partnership.

8.5 **Limited Partner Distributions.** At any time, the General Partner may in its sole discretion, distribute cash or Securities to all Limited Partners (other than any Preferred Limited Partner) pro rata in proportion to their Partnership Percentages.

8.6 **General Partner Distribution.** At any time, the General Partner may, in its sole discretion, distribute cash or Securities to the General Partner provided that, immediately after the proposed distribution the Capital Account balance of the General Partner (as computed without regard to any such balance created as a result of any interest as a Limited Partner held by such General Partner and as determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed realized by the Partnership pursuant to paragraph 8.9 as a result thereof) will not be less than twenty and eight-tenths percent (20.8%) of the aggregate Capital Account balances of all the Partners.

8.7 **Class of Securities Distributed.** Whenever more than one type of Securities is being distributed in kind in a single distribution or whenever more than one class of Securities of a portfolio company (or a portion of a class of such Securities having a tax basis per share or unit different from other portions of such class) are distributed in kind by the Partnership, each

Partner shall receive its ratable portion of each type, class or portion of such class of Securities distributed in kind.

**8.8    General Partner's Cost Basis Contribution.** In order to maintain the Partners' proportionate share of Partnership capital concurrent with any distribution in kind of Securities pursuant to paragraph 8.3, the General Partner, at its election, shall either (i) execute and deliver to the Partnership concurrently with such distribution a promissory note and security agreement in the form of Exhibits E and E-1 attached hereto, the principal amount of such promissory note to be equal to twenty percent (20%) of the Partnership's cost basis in the Securities distributed to all Partners; or (ii) pay over to the Partnership in cash the amount described in the preceding clause (i).

**8.9    Deemed Realized Gain.** Immediately prior to any distribution in kind of Securities or other asset pursuant to any provision of this Agreement, the difference between the fair market value and the Book Value of any such Securities or other assets distributed shall be allocated to the Capital Account of the Partners as a Capital Transaction Gain or Loss.

**8.10    Distributions of Securities Generally.** Notwithstanding anything contained in this Agreement, if any party would be distributed Securities in excess of the percentage of such issue which it may lawfully own or control, the General Partner shall vary the method of distribution in an equitable manner so as to avoid such excessive ownership or control.

**8.11    Partners' Obligation to Repay or Restore.** Except as provided in paragraph 11.3 or as required by law, no Partner shall be obligated at any time to repay or restore to the Partnership all or any part of any distribution made to it from the Partnership.

**8.12    Withholding.** The Partnership shall at all times be entitled to make payments with respect to any Limited Partner in amounts required to discharge any obligation of the Partnership to withhold or make payments to any governmental authority with respect to any federal, state, local or other jurisdictional tax liability of such Limited Partner arising as a result of such Limited Partner's interest. To the extent each such payment satisfies an obligation of the Partnership to withhold with respect to any distribution to a Limited Partner on which the Partnership did not withhold or with respect to any Limited Partner's allocable share of the income of the Partnership, each such payment shall be deemed to be a loan by the Partnership to such Limited Partner (which loan shall be deemed to be immediately due and payable) and shall not be deemed a distribution to such Limited Partner. The amount of such payments made with respect to such Limited Partner, plus interest, on each such amount from the date of each such payment until such amount is repaid to the Partnership at an interest rate per annum equal to the prime rate, from time to time in effect of Bank of America (or its successors), San Francisco, California, shall be repaid to the Partnership by (i) deduction from any distributions made to such Limited Partner pursuant to this Agreement or (ii) earlier payment by such Limited Partner to the Partnership, in each case as determined by the General Partner in its discretion. The General Partner may, in its discretion, defer making distributions to any Limited Partner owing amounts to the Partnership pursuant to this paragraph 8.11 until such amounts are paid to the Partnership and shall in addition exercise any other rights of a creditor with respect to such amounts.

9.    INVESTMENT REPRESENTATION.

9.1    **Investment Representation of the Limited Partners.** This Agreement is made with each of the Limited Partners in reliance upon each Limited Partner's representation to the Partnership, which by executing this Agreement each Limited Partner hereby confirms, that its interest in the Partnership is to be acquired for investment, and not with a view to the sale or distribution of any part thereof, and that it has no present intention of selling, granting participation in, or otherwise distributing the same, and each Limited Partner understands that its interest in the Partnership has not been registered under the Securities Act and that any transfer or other disposition of the interest may not be made without registration under the Securities Act or pursuant to an applicable exemption therefrom. Each Limited Partner further represents that it does not have any contract, undertaking, agreement, or arrangement with any person to sell, transfer, or grant participations to such person, or to any third person, with respect to its interest in the Partnership.

9.2    **Qualifications of the Limited Partners.** Each Limited Partner represents that it is an "accredited investor" within the meaning of that term as defined in Regulation D promulgated under the Securities Act.

10.    TRANSFER OF PARTNERSHIP INTEREST; SPECIAL WITHDRAWAL RIGHT.

10.1    **Transfer by General Partner.** The General Partner shall not sell, assign, mortgage, pledge or otherwise dispose of its interest in the Partnership or in its capital assets or property without the prior written consent of (i) a Majority In Interest of the Limited Partners, and (ii) SBA.

10.2    **Transfer by Limited Partner.**

(a)    No Limited Partner shall sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership without the prior written consent of the General Partner. Notwithstanding the foregoing, after compliance with the transfer requirements of paragraph 10.3, a Limited Partner may sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership without such consent (a) to any entity directly or indirectly holding eighty percent (80%) or more of the interests of the Limited Partner or any entity of which eighty percent (80%) or more of the beneficial ownership are held directly or indirectly by such entity, including any entity of which the Limited Partner holds, directly or indirectly, eighty percent (80%) or more of the beneficial ownership; (b) pursuant to a merger, plan of reorganization, sale or pledge of, or other general encumbrance on all or substantially all of the Limited Partner's assets; (c) as may be required by any law or regulation; (d) to another Limited Partner; (e) by testamentary disposition or intestate succession, or (f) to a trust, profit sharing plan or other entity controlled by, or for the benefit of, such Limited Partner or one or more family members. A change in any trustee or fiduciary of a Limited Partner shall not be considered to be a transfer, sale, assignment, mortgage, pledge or other disposition under this paragraph 10.2.

(b)     Notwithstanding any other provision of this Agreement, no transfer of an interest in the Partnership may be made without the prior written approval of the SBA to the extent such approval is required by the SBIC Act.

(c)     Notwithstanding any other provision of this Agreement, a Preferred Limited Partner (including the SBA in its capacity as a Preferred Limited Partner) may assign to a designee (including any trust, or trustee, for a trust, established pursuant to the SBIC Act) all or part of its right to receive any distribution or payment from the Partnership with respect to its Preferred Limited Partnership Interest. Upon receipt of written notice from the Preferred Limited Partner, the Partnership shall pay any such assigned distribution or payment directly to such designee. Any assignment made by a Preferred Limited Partner pursuant to this paragraph 10.2(c) shall not be deemed an assignment of a partnership interest or the substitution of such designee as a Partner, and shall not be deemed to give such designee any rights or interest in the Partnership as a Partner in the Partnership.

10.3     **Requirements for Transfer.**  No transfer or other disposition of the interest of a Limited Partner shall be permitted until the General Partner shall have received an opinion of counsel satisfactory to it (or waived such requirement) that the effect of such transfer or disposition would not:

(a)     result in the Partnership's assets being considered, in the opinion of counsel for the Partnership, as "plan assets" within the meaning of ERISA or any regulations proposed or promulgated thereunder;

(b)     result in the termination of the Partnership's tax year under Section 708(b)(1)(B) of the Code;

(c)     result in violation of the Securities Act or any comparable state law;

(d)     require the Partnership to register as an investment company under the Investment Company Act of 1940, as amended;

(e)     require the Partnership, the General Partner, or any member of the General Partner to register as an investment adviser under the Investment Advisers Act of 1940, as amended;

(f)     result in a termination of the Partnership's status as a partnership for tax purposes;

(g)     result in a violation of any law, rule, or regulation by the Limited Partner, the Partnership, the General Partner, or any partner of the General Partner;

(h)     cause the Partnership to be deemed to be a "publicly traded partnership" as such term is defined in Section 7704(b) of the Code;

(i)     result in violation of the SBIC Act or restrict the amount of leverage available to the Partnership under the SBIC Act.

Such legal opinion shall be provided to the General Partner by the transferring Limited Partner or the proposed transferee.   Any costs associated with such opinion shall be borne by the transferring Limited Partner or the proposed transferee. Upon request the General Partner will use its good faith diligent efforts to provide any information possessed by the Partners and reasonably requested by a transferring Limited Partner to enable it to render the foregoing opinion.

........**10.4    Substitution as a Limited Partner.** Subject to the SBIC Act to the extent applicable, a transferee of a Limited Partner's interest pursuant to this Section 10 shall become a substituted Limited Partner only with the consent of the General Partner and only if such transferee (a) elects to become a substituted Limited Partner and (b) executes, acknowledges and delivers to the Partnership such other instruments as the General Partner may deem necessary or advisable to effect the admission of such transferee as a substituted Limited Partner, including, without limitation, the written acceptance and adoption by such transferee of the provisions of this Agreement. No assignment by a Limited Partner of its interest in the Partnership shall release the assignor from its liability to the Partnership pursuant to paragraph 5.4 hereof; provided that if the assignee becomes a Limited Partner as provided in this paragraph 10.4, the assignor shall thereupon so be released (in the case of a partial assignment, to the extent of such assignment).

## 10.5   Special Withdrawal Right.

(a)     Except as provided in this paragraph 10.5, no Limited Partner shall have the right to withdraw from the Partnership.

(b)     Notwithstanding any provision of this Agreement to the contrary, each Limited Partner admitted to the Partnership pursuant to the terms of the AAA Agreement may elect to withdraw from the Partnership, at the time and in the manner hereinafter provided, if the Partnership has not been licensed by SBA as a "small business investment company" on or before December 31, 1999.

(c)     Subject to paragraph 10.5(f) below, a Limited Partner's election to withdraw pursuant to Paragraph 10.5(b) must be received by the General Partner on or before March 31, 2000.

(d)     Each withdrawing Limited Partner shall be entitled to receive within one hundred twenty (120) days after the date of such withdrawal an amount equal to the lesser of (i) two (2) times the amount of capital actually contributed by such Limited Partner to the Partnership (excluding any interest assumed by such Limited Partner pursuant to the AAA Agreement), but in no event less than the Minimum Withdrawal Amount, or (ii) such Limited Partner's capital account balance (including any capital account balance related to any interest assumed by such Limited Partner pursuant to the AAA Agreement). The "Minimum Withdrawal Amount" shall be the product obtained by multiplying $250,000 by a fraction, the numerator of which is such withdrawing Limited Partner's Capital Commitment and the denominator of which is the sum of the Capital Commitment's of all Limited Partners admitted pursuant to the terms of the AAA Agreement.

(e)     Any distribution or payment to a withdrawing Limited Partner pursuant to this paragraph 10.5 may, in the sole discretion of the General Partner, be made in cash, in Securities (valued in accordance with paragraph 12.5), in the form of a promissory note, or any combination thereof; provided, however, that in the event that the payment due under this paragraph 10.5 is the Minimum Withdrawal Amount, then such payment shall be in cash. The terms of any such promissory note shall include interest at the prime rate quoted by Citibank (or its successor) plus two percent (2%) and a term of at least three (3) years; provided, that the Partnership shall be required to repay a portion of the principal of such note on the occasion of each cash distribution made to the Partners in an amount generally proportionate to the ratio the principal balance bears to the aggregate capital account balances of all Partners on such date. The General Partner shall use its best efforts to maximize the amount paid to such withdrawing Limited Partner in cash and Securities, subject to the reasonable liquidity needs of the Partnership and the illiquid nature of the Partnership's portfolio securities.

(f)     Notwithstanding any provision of this paragraph 10.5 to the contrary, the right of withdrawal set forth in this paragraph 10.5 shall expire immediately upon receipt by the Partnership of notice that it has been licensed by SBA as a "small business investment company."

11.     TERMINATION OF PARTNERSHIP; FINAL DISTRIBUTION OF ASSETS.

11.1    Termination.

(a)     The Partnership shall terminate on the earlier of (i) the expiration of the term set forth in Article 3, or (ii) ninety (90) days after the bankruptcy, liquidation, or withdrawal of the General Partner, unless a Majority in Interest of the Limited Partners consent to continue the Partnership and to elect a replacement for the General Partner within such ninety (90) day period; provided, however, that termination pursuant to clause (ii) shall be subject to SBA consent to the extent required under the SBIC Act.

(b)     Upon the termination date of the Partnership as provided in this paragraph 11.1, the affairs of the Partnership shall be wound up and the Partnership liquidated in accordance with Section 15683 et seq. of the Act.

11.2    Distribution of Assets.

(a)     The closing Capital Accounts of all the Partners shall be computed as of the date of final dissolution as if the date of final dissolution were the last day of an Accounting Period, and then adjusted in the following manner:

(i)     All assets and liabilities of the Partnership shall be valued as of the date of final dissolution.

(ii)     The Partnership's assets as of the date of final dissolution shall be deemed to have been sold at their fair market values and the resulting profit or loss shall be allocated to the Partners' Capital Accounts in accordance with the provisions of Article 7.

78258 v1/SH
1_D%01I.DOC                                    24.

(b)    Distributions in liquidation may be made in cash or in kind or partly in cash and partly in kind. The General Partner shall use its best judgment as to the most advantageous time for the Partnership to sell investments or to make distributions in kind. All cash and each Security distributed in kind after the date of final dissolution of the Partnership shall be distributed ratably in accordance and in proportion to the Partners' positive Capital Account balance. Each Security so distributed shall be subject to reasonable conditions and restrictions necessary or advisable in order to preserve the value of such security or for legal reasons. Notwithstanding the foregoing, in the event of the liquidation of the Partnership pursuant to the SBIC Act, the Preferred Limited Partnership Interests shall be senior in priority for all purposes to all other partnership interests (or other equity interests) in the Partnership to the extent of the amount determined, with respect to each Preferred Limited Partnership Interest, as provided in the SBIC Act.

### 11.3    Lookback Liability of General Partner to Return Excess Distributions.

(a)    If after effecting the distributions provided for in this Article 11, the Excess Distribution Amount (as that term is defined below) is greater than zero, then the General Partner shall contribute to the capital of the Partnership cash equal to the Excess Distribution Amount.

(b)    For purposes of this paragraph 11.3:

(i)    The General Partner Target Amount shall be calculated as follows:

(1)    First, the Partnership's aggregate Capital Transaction Gain for all accounting periods shall be netted against the Partnership's aggregate Capital Transaction Loss for all accounting periods and the result shall be multiplied by twenty and eight-tenths percent (20.8%). The resulting product shall be considered a positive number if such aggregate Capital Transaction Gain exceeded aggregate Capital Transaction Loss and a negative number if such aggregate Capital Transaction Loss exceeded aggregate Capital Transaction Gain.

(2)    Second, the Partnership's aggregate Net Income for all accounting periods shall be netted against the Partnership's aggregate Net Loss for all accounting periods and the result shall be multiplied by one percent (1%). The result shall be considered a positive number if such aggregate Net Income exceeded such aggregate Net Loss and a negative number if such aggregate Net Loss exceeded such aggregate Net Income;

(3)    Third, the amount computed in clause (1) shall be added to the amount computed in clause (2);

(4)    The amount of aggregate General Partner Target Amount shall be appropriately adjusted to reflect any special allocations of items of Net Income or Loss or Capital Transaction Gain or Loss made to the General Partner pursuant to Article 7.

(c)    The "Excess Distribution Amount" shall equal the lesser of (A) the amount by which the General Partner Distributions (as defined below) exceed the sum of the

General Partner Target Amount plus the aggregate contributions made to the Partnership (excluding for this purpose the amount of notes delivered and executed for the benefit of the Partnership by the General Partner pursuant to paragraph 8.8) by the General Partner or (B) the amount of General Partner Distributions;

(d)     "General Partner Distributions" shall equal the sum of all cash and in-kind distributions received by the General Partner net of the amount of any notes contributed to the Partnership by the General Partner pursuant to paragraph 8.8;

(e)     All in-kind distributions shall be valued as provided in paragraph 12.5 as of the date of the date of the distribution; and

(f)     Only distributions made to the General Partner in its capacity as general partner of the Partnership shall be considered for purposes of the foregoing computations and determinations (such distributions shall, however, in no way be construed so as to include amounts paid or otherwise received by the General Partner or its Affiliate pursuant to paragraph 6 and under the Management Service Agreement).

(g)     If the assets of the General Partner are insufficient to satisfy the contribution obligation of the General Partner required by such paragraph 11.3(a) (hereinafter the "Lookback Liability"), no members or former members of the General Partner will in any event be obligated either to recontribute to the Partnership (on behalf of the General Partner or as a result of being a member of the General Partner) pursuant to this paragraph 11.3 or contribute to the General Partner (to provide amounts to fund the General Partner's obligation pursuant to this paragraph 11.3) an amount in excess of such member's pro rata share of Lookback Liability. For purposes of the preceding sentence, a member's pro rata share of such obligation shall be determined based on the aggregate amount of distributions (cash and in-kind) received by such member from the General Partner (other than any distribution or payment of management fees received by the General Partner or its Affiliates) and shall be calculated such that the sum of the pro rata shares of all members and former members of the General Partner equals the amount of the Lookback Liability.  The General Partner shall keep such records as are necessary to determine each individual member's pro rata share of the Lookback Liability.

(h)     Any amounts contributed to the Partnership pursuant to this paragraph 11.3 shall be redistributed in accordance with the provisions of paragraph 11.2.

11.4    **Removal of the General Partner.**

(a)     Subject to SBA approval, if necessary, the General Partner may be removed as general partner for cause, upon a vote of at least a Two-Thirds in Interest of the Limited Partners. For purposes of this paragraph 11.4, cause for removal of the General Partner shall mean any action or failure to act by the General Partner which has been determined by final judicial determination of a court of competent jurisdiction to constitute a circumstance which would, had any Partner filed the requisite petition, be grounds for dissolution of the Partnership pursuant to Section 15682(b) of the Act.

(b)    In the event of a removal of the General Partner pursuant to paragraph 11.4(a), a Majority of the Limited Partners shall within 120 days of such removal elect a new general partner, or the Partnership shall be dissolved in accordance with Article 11.  The admission of such new general partner to the Partnership shall be subject to approval by the SBA, if necessary.

(c)    In the event of a removal of the General Partner pursuant to paragraph 11.4(a), the former General Partner shall not have any rights or powers of a general partner, but shall be treated for purposes of this Agreement as a Limited Partner with a Capital Account balance equal to the former General Partner's Capital Account on the date of removal and a Partnership Percentage determined in accordance with the following formula: (i) five percent (5%), *plus* (ii) one percent (1%) for each year or portion thereof from the commencement of the Partnership until the date of the removal of the former General Partner.  In no event shall the former General Partner's Partnership Percentage exceed twenty percent (20%).  The Partnership Percentages of the other Limited Partners shall be adjusted on a pro rata basis to reflect the foregoing. Except to the extent of its original one percent (1%) Capital Commitment, the former General Partner shall have no interest in investments made by the Partnership after the date such partner is removed and shall have no obligation to contribute any additional capital to the Partnership.  The successor General Partner shall cause Exhibit A to be amended to reflect all necessary changes resulting from this paragraph 11.4(c).

(d)    Removal of the General Partner, except pursuant to the terms of this Agreement, shall entitle the General Partner to receive, in cash compensation, damages for all direct and indirect economic consequences of such removal, including, but not limited to, damages for all lost profits.

(e)    The parties agree to take all reasonably necessary or appropriate actions to give effect to the provisions of this paragraph 11.4, including without limitation, execution of an amendment to this Agreement consistent with this paragraph 11.4.

12.    MISCELLANEOUS.

12.1    **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective permitted successors and assigns.

12.2    **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

12.3    **Headings.** The article or paragraph titles or captions contained in this Agreement are for convenience only and shall not be deemed a part of this Agreement.

12.4    **Severability.** Whenever possible, the provisions of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be unenforceable or invalid under said applicable law, such provision

shall be ineffective only to the extent of such unenforceability or invalidity, and the remaining provisions of this Agreement shall continue to be binding and in full force and effect.

**12.5   Valuation.** Subject to the specific standards set forth below, the valuation of Securities and other assets and liabilities under this Agreement shall be at fair market value. The Partnership hereby adopts the Valuation Guidelines described in paragraph III of Appendix III to Part 107 of those regulations promulgated by the SBA and published in the Federal Register on April 8, 1994. Assets held by the Partnership shall be valued not less often than annually (or more often, as the SBA may require), and shall be valued not less often than semi-annually (or more often, as the SBA may require) at any time that the Partnership has Outstanding Leverage. Subject to the SBIC Act, the General Partner has sole responsibility for determining the value of the Securities held by the Partnership. Except as may be required under applicable Treasury Regulations, no value shall be placed on the goodwill or the name of the Partnership in determining the value of the interest of any Partner or in any accounting among the Partners.

**12.6   Books and Records.** Full and complete books and records of the Partnership shall be kept and maintained at all times for the Partnership at its offices or at such other place or places as the General Partner from time to time may determine. Except as otherwise provided in this Agreement, the Partnership books and records shall be maintained in accordance with generally accepted accounting principles consistently applied. All Partners and their representatives shall at all reasonable times have access to the books and records of the Partnership for the purpose of inspecting or copying the same.

**12.7   Reports and Meetings.** The General Partner will provide Limited Partners with (i) quarterly reports consisting of unaudited financial statements, and a list, status report and valuation of each of the Partnership's investments, promptly following the end of each of the first three fiscal quarters, and (ii) annual financial statements audited by PricewaterhouseCoopers or another firm of similar standing, including an income statement, balance sheet and statement of changes in Partners' Capital Accounts, and a list, status report and valuation of each of the Partnership's investments, within 90 days after the end of each fiscal year. In addition, the General Partner will hold an annual meeting with the Limited Partners to review the operations of the Partnership and its portfolio companies. In preparing the reports required under this paragraph, the General Partner will value the Partnership's assets quarterly, and, in the case of dissolution of the Partnership, as of the date of dissolution of the Partnership.

**12.8   Tax Returns and Tax Information.** The General Partner shall cause the Partnership's federal, state and local tax return and other tax returns and reports, as may be required by the activities of the Partnership, to be prepared and timely filed, including IRS Form 1065, Schedule K-1. In addition, the Partnership shall provide the Partners with their IRS Form 1065, Schedule K-1 (and the state equivalent) in a timely manner (but in no event later than ninety (90) days after the close of each of the Partnership's Fiscal Year) and shall furnish a copy of the tax returns to any Partner who requests such returns.

**12.9   Redemption and Withdrawal of Preferred Limited Partner.**

(a)    The redemption of the Preferred Limited Partnership Interest of a Preferred Limited Partner for purposes of the SBIC Act shall not cause the withdrawal of such Preferred Limited Partner from the Partnership, and any Preferred Limited Partner whose Preferred Limited Partnership Interest is redeemed for purposes of the SBIC Act shall remain a Preferred Limited Partner of the Partnership notwithstanding such redemption, until such time as such Preferred Limited Partner is deemed to have withdrawn pursuant to paragraph 12.9(d).

(b)    In the event that any Preferred Limited Partner has not received on a cumulative basis an amount equal to 100% of the original issue price of such Preferred Limited Partner's Preferred Limited Partnership Interest in the Partnership, plus the amount of any Prioritized Payments and Adjustments that are due under the SBIC Act but unpaid with respect to such Preferred Limited Partner's Preferred Limited Partnership Interest, prior to the redemption date of such Preferred Limited Partner's Preferred Limited Partnership Interest for purposes of the SBIC Act, then on such redemption date, following allocation of Profit and Loss in accordance with Article 7, the Partnership shall distribute such amount to such Preferred Limited Partner as shall be required so that as of such date such Preferred Limited Partner shall have received on a cumulative basis an amount equal to the original issue price plus all Prioritized Payments and Adjustments which are due under the SBIC Act but unpaid with respect to its Preferred Limited Partnership Interest, or such lesser amount equal to the positive Capital Account balance, if any of such Preferred Limited Partner.

(c)    If, at the time any Preferred Limited Partner's Preferred Limited Partnership Interest has been redeemed for purposes of the SBIC Act, the Partnership (i) has not paid all Prioritized Payments and Adjustments in full and (ii) has not sold or otherwise disposed of all assets which are Earmarked Assets, then the Partnership's obligation to pay Prioritized Payments and Adjustments shall continue and payment shall be made as provided in this Agreement and the SBIC Act. The Partnership's obligation to pay Profit Participation with respect to Earmarked Assets shall continue until such time as all Earmarked Assets are disposed of. If on disposition of all Earmarked Assets there remain any Accumulated Prioritized Payments, the obligation to make such payments shall be extinguished.

(d)    A Preferred Limited Partner shall be deemed to have withdrawn from the Partnership at such time as the Preferred Limited Partnership Interest of such Preferred Limited Partner has been redeemed, the Partnership no longer owns any assets which are Earmarked Assets, and all amounts due from the Partnership to such Preferred Limited Partner with respect to its Preferred Limited Partnership Interest (including, without limitation, all allocated Profit Participation) have been paid to such Preferred Limited Partner or the obligation to pay such amounts has been extinguished as provided in paragraph 12.9(c).

13.    EXCULPATION AND INDEMNIFICATION. The indemnification provisions of Article 4 of SBA Annex OP are hereby incorporated by reference and attached hereto as Exhibit OP.

14.    AMENDMENT.

14.1    This Agreement may be amended only with the consent of the General Partner and the holders of a Majority in Interest of the Limited Partners; provided, however, that additional

General Partners shall not be admitted, nor shall Articles 4, 5, 7, 8, 11 or this proviso be amended so as to adversely affect any Limited Partner or Limited Partners in a manner different from all Limited Partners without the consent of a Majority in Interest of the Limited Partners so affected.

      **14.2**   Notwithstanding the foregoing, any amendment of the Agreement which would (i) affect the rights, obligations or liabilities of any Preferred Limited Partner or the SBA or (ii) reduce the Commitment of any Partner (other than as a result of (A) the operation of any provision of this Agreement, (B) an agreement, settlement, release or other action under a provision of the Agreement taken as provided in paragraph 5.5(b) or (C) the assignment of such Partner's interest in the Partnership as permitted under this Agreement) shall require the prior written consent of the SBA.

**15.**    NOTICES.  Any notice, demand or other communications required or proper hereunder shall be in writing, sent by federal express, facsimile, registered or certified mail, postage prepaid, as follows:

      **15.1**   To the Partnership or General Partner at 3945 Freedom Circle, Suite 740, Santa Clara, California 95054.

      **15.2**   To any Limited Partner as its address or facsimile number shall then appear on official records of the Partnership as kept and maintained by the General Partner.

Any party hereto may change the place to which notice may be given by notice as herein provided. All notices shall be deemed effectively given (i) upon personal delivery, (ii) three (3) days after deposit in any United States mail box, by registered or certified mail, postage prepaid, (iii) upon confirmed transmission by facsimile, or (iv) upon confirmed delivery by overnight commercial courier service.

**16.**    TAX STATUS.  The General Partner shall, and shall cause its partners, employees, and agents to, use best efforts to cause the Partnership to be classified and treated as a partnership, and not as an association taxable as a corporation, for federal income tax purposes, provided, however, that nothing contained in this paragraph 16 shall require the General Partner or any of its partners, employees, or agents, as the case may be, to apply for any rulings from the Internal Revenue Service, to litigate any claim that the Partnership is not a partnership for federal income tax purposes, to increase its Capital Contribution, or to seek an amendment to this Agreement.

      **16.1**   **Avoidance of Trade or Business Status.**  Except to the extent inconsistent with its obligations under this Agreement, the General Partner will use its best efforts to conduct the affairs of the Partnership so to avoid having the Partnership treated as engaged in a trade or business within the United States for purposes of Section 875, 882, 884, and 1446 of the Code. The General Partner shall not cause the Partnership to invest in any other partnership (or limited liability company or other entity taxed as a partnership) unless such entity agrees to use its best efforts to conduct its activities in a manner such that those activities will not cause the Partnership to be engaged in a trade or business within the United States. In no event shall the General Partner be liable for monetary damages resulting from or arising out of its breach of this paragraph 16.1. In no event shall this paragraph or any other provision in this Agreement be

interpreted as preventing (or limiting in any respect) the General Partner or the members of the General Partner from taking an active role in or receiving compensation for founding or serving of the boards of directors of companies.

16.2    **Foreign Partners.**

(a)    A Foreign Limited Partner is (i) any Limited Partner who is, or which is, not a "United States person" as defined in Code Section 7701(a)(30) or (ii) any person or entity which is not a United States person as defined in Code Section 7701(a)(30) and which owns more than fifty percent (50%) of the partnership capital of a domestic partnership, as defined in Code Sections 7701(a)(2) and 7701(a)(4), that is a Limited Partner.

(b)    If any Foreign Limited Partner shall obtain a materially unqualified opinion of counsel to the effect that there is either a present or future likelihood of (i) tax liability under Section 882 or 884 of the Code to the Foreign Limited Partner with respect to its share of Partnership Net Income or Capital Transaction Gains or (ii) required tax withholding by the Partnership under Section 1446 of the Code on distributions to the Foreign Limited Partner, the General Partner agrees to negotiate in good faith with the Foreign Limited Partner as to how the Foreign Limited Partner's interest in the Partnership may be restructured to minimize the adverse tax impact to the Foreign Limited Partner; provided, however, that any such restructuring shall be subject to SBA approval to the extent required under the SBIC Act.

(c)    Except to the extent inconsistent with its obligations under this Agreement, the General Partner will use its best efforts to conduct the affairs of the Partnership so that income generated by the investment of surplus cash of the Partnership will not be subject to withholding tax under Section 1441 of the Code.

17.    **TAX MATTERS PARTNER.** Except as otherwise required by law, the General Partner shall be the Tax Matters Partner ("TMP") under Section 6231(a)(7) of the Code, shall provide all information necessary under Section 6223(a) of the Code to have each Limited Partner classified as a notice partner under Section 6231(a)(8) of the Code, and shall promptly notify the Limited Partners if any tax return or report of the Partnership is audited or if any adjustments are proposed by an governmental body. In addition, the TMP shall promptly furnish to the Limited Partners all notices concerning administrative or judicial proceedings relating to federal income tax matters as required under the Code. During the pendency of any such administrative or judicial proceedings, the TMP shall furnish to the Limited Partners periodic reports, not less often than quarterly, concerning the status of any such proceedings. The TMP shall employ experienced tax counsel and advisors to represent the Partnership in connection with any audit or investigation of the Partnership by the taxing authorities and in connection with all subsequent administrative and judicial proceedings arising out of such audit. The fees and expenses of such, and all expenses incurred by the TMP in serving as the TMP, shall be Partnership expenses pursuant to paragraph 6.6(b) and shall be paid by the Partnership. The relationship of the TMP to the Limited Partners is that of a fiduciary who has an obligation to perform its duties in such a manner as will serve the best interest of the Partnership and its Limited Partners. To the fullest extent permitted by law, the Partnership agrees to indemnify the TMP and its agents and save and hold them harmless, from and in respect to all reasonable fees, costs, and expenses in connection

with or resulting from any claim, action, or demand against the TMP, the General Partner or the Partnership that arise out of or in any way relate to the TMP's status as TMP for the Partnership. The TMP shall have the right to resign by giving thirty (30) days' written notice to the Limited Partners. Upon the resignation, dissolution or bankruptcy of the TMP, a successor TMP shall be elected by Two-Thirds in Interest of the Limited Partners.

18. POWER OF ATTORNEY. Each of the Limited Partners does hereby constitute and appoint the General Partner its true and lawful agent and attorney in fact with full power and authority to execute, verify, acknowledge, file, record, publish and deliver any document or documents deemed necessary or desirable by the General Partner in connection with the filing or recording or publication of any certificate, applications, statements or other documents under the Act or the limited partnership law of any other state or under any similar statute or law or any state necessitated by the creation of this Partnership and any amendment or other change in this Agreement. Further, the General Partner shall have the power under this Article 18 to institute such changes to this Agreement as may be required by the SBA in connection with its consideration of the Partnership's application for licensing by the SBA as a small business investment company.

19. ARBITRATION. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in Palo Alto, California, in accordance with the rules of the American Arbitration Association as such rules may be modified therein. An award rendered in connection with an arbitration pursuant to this paragraph may be entered in any court having jurisdiction thereof. The arbitrator or arbitrators shall be bound by the Federal Rules of Evidence and the procedural rules, including discovery provisions, of the Federal Rules of Civil Procedure. Notwithstanding the foregoing, the SBA shall not be bound by this paragraph 19 and any dispute under this Agreement involving the SBA shall be adjudicated in any court having competent jurisdiction thereover.

20. RATIFICATION AND APPROVAL. The undersigned Limited Partners hereby ratify and approve all actions taken by the Partnership and the General Partner in connection with the negotiation and execution of the AAA Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP for DOTCOM Ventures, L.P., a California limited partnership, in several counterparts, each of which shall be deemed an original, as of the day and year first above written.

GENERAL PARTNER:                           LIMITED PARTNERS:

DOTCOM INVESTMENTS, LLC

                                          _____
                                                    Print Name

By: _____               By: _____
    Sada Chidambaram, Manager

                                           Title: _____
By: _____
    Stephen Hyndman, Manager


DOTCOM VENTURES, L.P.
AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP
SIGNATURE PAGE

IN WITNESS WHEREOF the undersigned have hereunto executed this instrument as of
_____.

PARTNERSHIP:                              PREFERRED LIMITED PARTNER:

DOTCOM Ventures, L.P.

By: DOTCOM Investments, LLC,               _____
its General Partner
                                          By:_____
By: _____
        Signature of Manager              Title:_____

## INDEX OF EXHIBITS

Exhibit A                          Schedule of Partners
Exhibit A-1                  SBA Instrument of Admission or Increase in Commitment of a
                                      Preferred Limited Partner
Exhibit B                          Promissory Note – General Partner Capital Contribution
Exhibit C                          Promissory Note – Defaulting Partner
Exhibit D                          Security Agreement – Defaulting Partner
Exhibit E                          Promissory Note – Distribution to General Partner
Exhibit E-1                  Security Agreement – Distribution to General Partner
Exhibit F                          Management Services Agreement (Amended and Restated)
Exhibit OP                 SBA Annex OP
Exhibit PS                  SBA Annex PS

EXHIBIT A

## CAPITAL COMMITMENTS

|  | Capital Commitment | Partnership Percentage |
|---|---|---|
| DOTCOM Investments, LLC<br>3945 Freedom Circle, Suite 740<br>Santa Clara, CA 95054 |  | 1.00% |
| Goel Family Partnership<br>98 Ridgeview Drive<br>Atherton, CA 94027<br>Attn: Prabhakar Goel | $500,000 | 3.3% |
| Saiyed Atiq Raza<br>One AMD Place, MS 360<br>Sunnyvale, CA 94088 | $312,376.24 | 2.06% |
| Marshall G. Cox Trust<br>15720 Glen Una Drive<br>Los Gatos, CA 95030<br>Attn: Marshall Cox | $250,000 | 1.65% |
| Silicon Valley Bancshares<br>3003 Tasman Drive, NC 821<br>Santa Clara, CA 95054<br>Attn: David Jaques | $150,000 | .99% |
| Rainbow Enterprises, L.P.<br>21690 Rainbow Court<br>Cupertino, CA 95014<br>Attn: Prakash Bhalerao | $2,247,524.75 | 14.83% |
| Donald W. Brooks<br>c/o KLM Capital Management, Inc.<br>10 Almaden Boulevard, Suite 988<br>San Jose, CA 95113 | $1,247,524.75 | 8.23% |
| Krishnan Shah Family Limited Partners<br>c/o Lata Krishnan<br>1135 Saguare Court<br>Fremont, CA 94539 | $561,881.19 | 3.71% |

| | | |
|---|---|---|
| Chay Kwong Soon<br>48 Coronation Road West, #03-04<br>Astrid Meadows<br>Singapore 269263 | $623,762.38 | 4.12% |
| RELL Family Partners, Ltd.<br>c/o KLM Capital Management, Inc.<br>10 Almaden Boulevard, Suite 988<br>San Jose, CA 95113 | $187,128.71 | 1.24% |
| Joel D. and Joy G. Kellman<br>Trust UTA June 9, 1981<br>386 Greenoaks Drive<br>Atherton, CA 94027 | $187,128.81 | 1.24% |
| Peter T. and Celeste T. Mok<br>1827 Napa Court<br>Fremont, CA 94539 | $374,257.43 | 2.47% |
| Gary Tseng<br>108, 486 Lane<br>Ming Hu Road<br>Hsinchu, TAIWAN 300 | $1,122,772.28 | 7.41% |
| High Growth Management. Ltd.<br>15th Floor, Bank of East Asia Bldg.<br>10, Des Voeux Road<br>Central Hong Kong<br>Attn: Amy Lo | $124,752.48 | .82% |
| Jerald P. Shaevitz<br>24175 Dawnridge Drive<br>Los Altos Hills, CA 94024 | $74,851.49 | .49% |
| Gary Cheng, et al.<br>c/o Venglobal Capital<br>5201 Great America Parkway<br>Suite 320<br>Santa Clara, CA 95054 | $187,128.71 | 1.24% |
| Jorge Del Calvo<br>c/o Pillsbury Madison & Sutro<br>2550 Hanover Street<br>Palo Alto, CA 94304 | $93,564.36 | .62% |

| | | |
|---|---|---|
| Jonathan Krass<br>28120 Story Hill Lane<br>Los Altos Hills, CA 94020 | $187,128.71 | 1.24% |
| Kaling Lim<br>P.O. Box 633<br>Tangling Post Office<br>Singapore 912422 | $249,504.95 | 1.65% |
| DruTan Investments, Ltd.<br>Attn: Mitch Brooks<br>4516 Seton Center Parkway, #170<br>Austin, TX 78759 | $74,851.49 | .49% |
| Brooks + Brooks Investments, Ltd.<br>Attn: Cindy Brooks<br>35 Hacienda Drive<br>Tiburon, CA 94920 | $74,851.49 | .49% |
| Phil Mak<br>c/o Venglobal Capital<br>5201 Great America Parkway<br>Suite 320<br>Santa Clara, CA 95054 | $187,128.71 | 1.24% |
| Luzon Investments, Ltd.<br>Attn: Samuel Fang<br>9 Ka Fu Close<br>Sheung Shui, N.T.<br>Hong Kong | $623,762.38 | 4.12% |
| Godfrey & Peggy Wang, Trustees<br>  FBO The Godfrey & Peggy Fong Trust<br>  U/A Dated 8/8/84<br>12291 Barley Hills Road<br>Los Altos Hills, CA 94024 | $218,316.83 | 1.44% |
| Chi-Shin Wang, Trustee<br>  FBO Orlena Fong U/A Dated 12/23/83<br>12291 Barley Hills Road<br>Los Altos Hills, CA 94024 | $31,188.12 | .21% |

| | | |
|---|---|---|
| Chi-Shin Wang, Trustee<br>    FBO Jeffrey Fong U/A Dated 10/14/87<br>12291 Barley Hills Road<br>Los Altos, CA 94024 | $31,188.12 | .21% |
| Chi-Shin Wang, Trustee<br>    FBO Angela Wong U/A Dated 12/23/83<br>12291 Barley Hills Road<br>Los Altos Hills, CA 94024 | $31,188.12 | .21% |
| Fullpath Nominees Ltd.<br>Attn: Mr. Alfred R.K.L. Li<br>15th Floor, Century Square<br>1-13 D'Aguilar Street<br>Central Hong Kong | $187,128.71 | 1.24% |
| Bun Bun & Company Ltd.<br>c/o Amy Lo (Prominent Services Ltd.)<br>15/F Bank of East Asia Bldg.<br>10 Des Voeux Rd.<br>Central Hong Kong | $24,950.50 | .16% |
| John M. Sloane<br>10 Island Road<br>Stuart, FL 34996 | $1,322,376.24 | 8.73% |
| Jane C. Sloane<br>10 Island Road<br>Stuart, FL 34996 | $137,227.72 | .91% |
| Margaret E. Sloane<br>8 Parklands<br>Wotton-Under-Edge<br>GLOS GL127LT<br>United Kingdom | $49,900.99 | .33% |
| Janet M. Mills<br>89 Court Orchard<br>Wotton-Under-Edge<br>GLOS GL127EJ<br>United Kingdom | $49,900.99 | .33% |

| | | |
|---|---|---|
| Donald Emery<br>c/o ILT, Inc.<br>150 Main Street<br>West Dennis, MA 02670 | $1,871,287.13 | 12.35% |
| John Murphy<br>P.O. Box 751 Main Street<br>Harwich, MA 02645 | $935,643.56 | 6.18% |
| Sada Chidambaram<br>771 Talisman Court<br>Palo Alto, CA 94303 | $71,732.67 | .47% |
| Stephen Hyndman<br>175 Lundys Lane<br>San Francisco, CA 94110 | $46,782.18 | .31% |
| Jose Maria Insener & Lucia Martinez<br>CTRA Canillas A&, ptY, 5-C<br>28043 Madrid<br>SPAIN | $37,425.74 | .25% |
| Henri Jarrat<br>1958 Grey Eagle Street<br>Henderson, NV 89014 | $124,752.48 | .82% |
| Madhav and Shaila Misr<br>233 Eldridge Avenue<br>Mill Valley, CA 94941 | $62,376.24 | .41% |
| Daniel V. Borel<br>CH-1143 APPLES<br>SWITZERLAND | $124,752.48 | .82% |

EXHIBIT A-1

## INSTRUMENT OF ADMISSION OR INCREASE IN COMMITMENT FOR A PREFERRED LIMITED PARTNER

1.     Partnership Name: DOTCOM VENTURES II, L.P.

2.     Date of Agreement of Limited Partnership: _____

3.     Amount of Preferred Limited Partner's Capital

       Contribution: _____

4.     Effective Date of Admission or Increase: _____

5.     Rate of Prioritized Return: _____

The undersigned hereby agrees to become a Preferred Limited Partner in the partnership set forth above pursuant to terms of the above reference Agreement of Limited Partnership and to be bound by and comply with the terms of such Agreement.

The capital contribution to be made by the undersigned as a Preferred Limited Partner shall be the amount set forth on item 3 above. Such capital contribution shall be made, and the undersigned shall be admitted as a Preferred Limited Partner, on the date set forth in item 4 above. The Prioritized Payment payable with respect to such capital contribution shall be at the rate set forth in item 5 above.

This Instrument shall have the same force and effect as if the undersigned parties had executed a counterpart of such Agreement of Limited Partnership. Capitalized terms used in this instrument shall have the respective meanings set forth in the above referenced Agreement of Limited Partnership.

IN WITNESS WHEREOF the undersigned have hereunto executed this instrument as of

_____.


PARTNERSHIP:                          PREFERRED LIMITED PARTNER:

DOTCOM Ventures, L.P.

                                      _____
By: AV Management, LLC,
its General Partner
                                      By:_____
By:_____
       Signature of Manager           Title:_____

## Exhibit B

## PARTNER CAPITAL NOTE

$_____

Date: _____

For value received, the undersigned hereby promises to pay to DOTCOM Ventures, L.P., a California Limited Partnership, at its principal office in Santa Clara, California, without interest, the sum of _____ Dollars ($_____), according to the following terms and conditions:

1.    This Note shall become due and payable in full upon the termination of the DOTCOM Ventures, L.P. pursuant to paragraph 11.1 of its Limited Partnership Agreement. This Note may be prepaid at any time by the undersigned without penalty.

2.    This Note will be binding upon the undersigned, its representatives, successors, assigns and any subsequent holders of this Note.

3.    This Note shall be governed by the laws of the State of California in all respects, including matters of construction, validity and performance.

4.    If an action is commenced for collection of this Note, the undersigned agrees to pay collection of this Note, and court costs and reasonable attorney's fees incurred by the holder hereof.

AV MANAGEMENT, LLC

By:    _____
       Manager

40524 v3/SH
v9_031.DOC

Exhibit C

$_____

_____, 19__

## PROMISSORY NOTE

For value received, the undersigned hereby promises to pay to _____ (the "Payee"), at the principal office of the Payee, the principal sum of _____ Dollars ($_____), in such coin or currency of the United States of America at the time of payment as is legal tender for the payment of public and private debts, according to the following terms and conditions:

1.    This Note shall bear no interest.

2.    This Note is secured by the pledge of that portion of the undersigned's limited partnership interest in DOTCOM Ventures, L.P., a California limited partnership ("DOTCOM") acquired by the undersigned from Payee (not including that portion of such interest for which the undersigned has made capital contributions).

3.    This Note and that portion of the DOTCOM limited partnership interest pledged to secure it are subject to all of the terms and conditions of a collateral agreement of the same date between Payee and the undersigned, a copy of which agreement is attached hereto.

4.    This Note shall become due and payable on the Date of Dissolution of DOTCOM (as defined in the DOTCOM Limited Partnership Agreement).

5.    Payee by acceptance hereof agrees for itself, its representatives, successors and assigns (1) that neither the undersigned, its partners, nor their executors, successors or assigns shall be personally liable on this Note, it being intended that the undersigned's obligation to pay the principal amount of this Note is included for the sole purpose of establishing the existence of the indebtedness represented hereby; and (2) that in the event of default, the Payee and any successor or assign shall look for payment solely to the portion of the undersigned's DOTCOM limited partnership interest purchased from the Payee (not including that portion of such interest for which the undersigned has made capital contributions), and will not make any claim or institute any action or proceeding against the undersigned, its partners or their heirs, executors, administrators, successors or assigns for the payment of this Note or for any deficiency remaining after application of the partnership interest securing this note, or otherwise; *provided, however*, that nothing herein contained shall be construed (i) to release or impair the right of the Payee to enforce its rights with respect to the limited partnership interest securing this Note or (ii) to preclude the application of such limited partnership interest to the payment of this Note in accordance with its terms.

_____
(Maker)

Accepted:

_____
(Payee)

**Exhibit D**

**SECURITY AGREEMENT**

This Agreement made and entered into this _____ day of _____, 19__, by and between _____ ("Pledgor") and _____ ("Pledgee"), sets forth the terms and conditions governing the non-recourse secured note (the "Note") executed this date by Pledgor as payor and Pledgee as payee.

1.    As security for the indebtedness evidenced by the Note, the Pledgor has pledged to the Pledgee that portion of the Pledgor's limited partnership interest in DOTCOM Ventures, L.P., a California limited partnership ("DOTCOM") purchased by Pledgor from Pledgee (not including that portion of such interest for which Pledgor has made capital contributions), which portion is hereinafter referred to as the Collateral. Terms used in this Agreement have the meaning given them in the DOTCOM Limited Partnership Agreement unless the context requires otherwise.

2.    The Pledgor shall retain and have at all times the following rights and obligations with respect to the Collateral:

(a)    **General.** The Pledgor shall retain and have full legal and beneficial ownership of the Collateral and shall have the benefit of any increases and bear the risk of any decreases in the value of the Collateral. The Pledgor shall have the sole right to vote with respect to the Collateral and to receive distributions of Income Items and dividends payable on the Collateral. Any other payments or distributions on, or in respect of, the Collateral, including any distributions of Securities by DOTCOM, and any Securities issued as a result of any stock dividend on any shares pledged hereunder or as a result of any reclassification, stock split or other change in the capital stock of any corporation whose shares are pledged hereunder or as a result of any consolidation or merger of any such corporation with or into another or as a result of any exchange or conversion of any Security which is pledged hereunder, shall be delivered to the Pledgee and otherwise held as part of the Collateral or, in the case of such cash distributions applied as provided in paragraph 2(b). The Pledgor shall pay all taxes or other charges assessable against it upon or with respect to the Collateral or any income or distributions therefrom.

(b)    **Certain Application of Cash.** Any cash received by the Pledgee in respect of a withdrawal of Securities pursuant to paragraph 2(c)(ii) or any cash payment on the Collateral to be paid over to the Pledgee pursuant to paragraph 2(a) shall be forthwith applied in payment of the principal of the Note.

(c)    **Withdrawal of the Collateral:**

(i)    The Pledgor shall have the right at any time to pay in cash to the Pledgee the entire indebtedness evidenced by the Note and to terminate the Pledgee's security interest in the Collateral.

**(ii)**    The Pledgor shall have the right to withdraw any of the Securities included in the Collateral; *provided, however*, that no such partial withdrawal may be made if it would reduce the value of the remaining Collateral below one hundred and thirty-five percent (135%) of the balance of the Note remaining unpaid after any payment made by the Pledgor. The value of the Collateral shall be calculated pursuant to Article 12 of the DOTCOM Limited Partnership Agreement.

3.    Upon payment of the Note in full, the Pledgee shall endorse the Note as discharged and satisfied in full, and shall execute all such documents as may be necessary to terminate the Pledgee's security interest in the Collateral.

4.    As holder of the Note and Pledgee of the Collateral, the Pledgee shall have the right, if the Note is not paid or satisfied on the date for payment set forth in the Note, to liquidate the Collateral and to apply the proceeds of such liquidation in payment, in whole or in part, of the indebtedness evidenced by the Note.

**(a)**    Any such liquidation may be effected in any reasonable manner, including a sale or sales for cash or an exchange for other Securities of any type of kind, or in any other manner, at a public or private sale, with or without notice of advertisement, as Pledgee may in its sole discretion determine.

**(b)**    Any purchaser (other than the Pledgee) of the Collateral at any such sale shall take the same free of any right of redemption and any other right or claim on the part of the undersigned, all of which rights and claims are hereby waived and released.

**(c)**    The Pledgee may be the purchaser at such sale but only at the fair market value of the Collateral.

5.    **(a)**    The Collateral shall be held by DOTCOM and, to the extent otherwise distributable to the Pledgor, by the Pledgee, in accord with the terms hereof, to assure performance by the Pledgor of its obligations under the Note. Title to all Collateral shall remain in the Pledgor until such Collateral is liquidated by the Pledgee in accord with the terms hereof. All of the right and interest of Pledgee in the Collateral shall terminate upon payment in full of all indebtedness evidenced by the Note.

**(b)**    **Notices:**    All notices shall be given in accord with the terms of the DOTCOM Limited Partnership Agreement.

**(c)**    **Governing Laws:**    This Agreement and the Note shall be governed by the laws of the State of California as applied to agreements made and to be performed in California between California residents.

**(d)**    **Arbitration:**    Any controversy arising out of or relating to this Agreement or the Note shall be resolved by arbitration in accord with the terms of the DOTCOM Limited Partnership Agreement.

(e)     **Pledgee's Rights:**  Pledgee shall not be entitled hereunder to become at any time a substituted Limited Partner of DOTCOM.

_____, 19___.

Pledgor

By _____

Accepted:

Pledgee

By _____

EXHIBIT E

## PARTNER COST BASIS NOTE

$_____                                                    Date: _____

For value received, the undersigned hereby promises to pay to DOTCOM Ventures, L.P., a limited partnership, at its principal office in Santa Clara, California, without interest, the sum of _____ Dollars ($_____), according to the following terms and conditions:

1.    This Note is secured by a pledge of securities described in Schedule A which is attached hereto.

2.    This Note and the securities pledged to secure it are subject to all of the terms and conditions of a security agreement of the same date between DOTCOM Ventures, L.P. and the undersigned, a copy of which agreement is attached hereto.

3.    **Date of Payment:**  This Note shall become due and payable as follows:

(a)    **In full:**  (i) upon termination of the DOTCOM Ventures, L.P. limited partnership pursuant to paragraph 11.1 of that Partnership Agreement or pursuant to Internal Revenue Code Section 708(b)(1)(B); (ii) ten (10) days after the sale by the undersigned of all of the securities listed on Schedule A; or (iii) ninety (90) days after the retirement of the undersigned as a general partner of the General Partner, whichever occurs first.

(b)    **In part:**  Pursuant to the provisions of Section 2(b)(2) of the Security Agreement.

4.    **Remedies.**  DOTCOM Ventures, L.P., by acceptance hereof, agrees for itself, its representatives, successors and assigns (a) that neither the undersigned, his heirs, executors, administrators nor assigns shall be personally liable on this Note; it being intended that the undersigned's obligations to pay the principal amount of this Note is included for the sole purpose of establishing the existence of the indebtedness represented hereby, and (b) that in the event of default, DOTCOM Ventures, L.P. and any successor or assign shall look for payment solely to the securities listed on Schedule A and will not make a claim or institute any action or proceeding against the undersigned, his heirs, executors, administrators or assigns for the payment of this Note or for any deficiency remaining after application of the securities listed on Schedule A, or otherwise; provided, however, that nothing herein contained shall be construed (i)

to release or impair the indebtedness evidenced by this Note, or the right of DOTCOM Ventures, L.P. to enforce its rights with respect to the securities listed on Schedule A, or (ii) to preclude the application of said securities to the payment of this Note in accord with its terms.

_____
Maker

ACCEPTED:

**DOTCOM Ventures, L.P.**

By:    AV Management, LLC,
       its general partner

By:_____
       Manager

EXHIBIT E-1

## SECURITY AGREEMENT

This Agreement made and entered into this _____ day of _____, 19___, by and between _____ ("Pledgor") and DOTCOM Ventures, L.P. ("Pledgee") sets forth the terms and conditions governing the nonrecourse secured note (the "Note") attached hereto executed this date by the parties to this Agreement.

I.     As security for the indebtedness evidenced by the Note, the Pledgor has pledged to the Pledgee the securities listed in Schedule A which is attached to said Note, which securities are hereinafter referred to as the "collateral".

II.     The Pledgor shall retain and have at all times the following rights and obligations with respect to the collateral:

A.     **General**: The Pledgor shall retain and have full legal beneficial ownership of the collateral and shall have the benefit of any increases and bear the risk of any decreases in the value of the collateral. The Pledgor shall have the sole right to vote with respect to the collateral and to any income therefrom or distribution thereon by payment of interest or dividends or otherwise, subject to the right of the Pledgee to hold, as Pledgee, as dividends payable in securities and all partial and complete liquidating dividends; and shall pay all taxes or other charges assessable against him upon or with respect to such collateral or any income or distributions therefrom.

B.     **Sales of Collateral**: The Pledgor shall have the right at any time to direct the sale of any or all of the collateral, provided that:

1.     If all of the collateral is sold, the net proceeds of such sale shall first be used to pay the indebtedness evidenced by the Note, and the balance, if any, shall be paid promptly by the Pledgee to the Pledgor.

2.     If only part of the collateral is sold, the Pledgee shall retain in part or full payment of the indebtedness the higher of (i) the amount of the Note which is attributable to the cost of the investment or investments sold, or (ii) that percentage of the net proceeds from such sale which the balance due on the Note before such sale bears to the total value of the securities held as collateral before such sale, valued in accord with paragraph 5.5 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P., as amended from time to time.

C.     **Substitution of Collateral**: The Pledgor shall have the right at any time to withdraw all or any part of the collateral provided that he substitutes at the same time other securities as collateral which have a fair market value (determined in accord with paragraph 5 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P.) at least equal to the fair market value of the collateral being withdrawn.

**D.    Withdrawal of the Collateral:**

1.    The Pledgor shall have the right at any time to pay in cash to the Pledgee the entire indebtedness evidenced by the Note and to withdraw all of the collateral concurrently with such payment.

2.    The Pledgor shall have the right to withdraw any part of the collateral by paying to the Pledgee an amount equal to the amount of the Note attributable to the securities being withdrawn; provided, however, that no such partial withdrawal may be made if it would reduce the value of the remaining collateral (valued in accord with paragraph 5 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P.) below one hundred fifty percent (150%) of the balance of the Note remaining unpaid after the payment called for by this Section 2(d)(2).

**E.    Termination:**  The Note shall be payable in full upon termination pursuant to Internal Revenue Code Section 708(b)(1)(B).

**III.**    Upon payment of the indebtedness in full, the Pledgee shall endorse the Note as discharged and satisfied in full, and shall return to the Pledgor the remaining collateral, if any.

**IV.**    As holder of the Note and Pledgee of the collateral, DOTCOM Ventures, L.P., shall have the right, if the Note is not paid or satisfied on the date for payment set forth in the Note to liquidate the collateral and to apply the proceeds of such liquidation in payment, in whole or in part, of the indebtedness evidenced by the Note.

**A.**    Any such liquidation may be effected in any manner, including a sale or sales for cash or an exchange for other securities of any type of kind, or in any other manner, at a public or private sale, with or without notice or advertisement, as Pledgee may in its sole discretion determine.

**B.**    The purchaser of any securities at any such sale shall take such securities free of any right of redemption and any other right or claim on the part of the undersigned, all of which rights and claims are hereby waived and released.

**C.**    Pledgee may be the purchaser at such sale but only at the fair market value thereof determined in accordance with paragraph 5 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P.

**V.**    If at any time while the Note is outstanding the value of the collateral falls below one hundred fifty percent (150%) of the balance of the Note, Pledgee, upon the election of a Majority in Interest of the Partners of DOTCOM Ventures, L.P., may require Pledgor to pledge additional collateral sufficient to bring the aggregate value of the collateral above one hundred fifty percent (150%) of the balance of the Note.  If Pledgor fails to pledge such additional collateral within thirty (30) days of a request by Pledgee, Pledgee may liquidate the collateral as provided in Section 5.

## VI.  Miscellaneous Provisions.

**A.**  **DOTCOM Ventures, L.P., as Pledgee of the Collateral**: The collateral shall be held by DOTCOM Ventures, L.P., as Pledgee, in accord with the terms hereof, to assure performance by the undersigned of his obligations under the Note.  Title to all collateral shall remain in the undersigned until such collateral is liquidated by Pledgee in accord with the terms hereof.  All of the rights and interest of Pledgee in collateral shall terminate upon payment in full of all indebtedness evidenced by the Note.

**B.**  **Notices**: All notices shall be given accord with paragraph 18 of the Agreement of Limited Partnership for DOTCOM Ventures, L.P.

**C.**  **Governing Laws**: This Agreement and the Note shall be governed by the laws of the State of California in all respects, including matters of construction, validity and performance.

Kindly indicate your acceptance of the foregoing by signing the two (2) copies hereof in the space indicated and returning one (1) to the undersigned, thereby constituting the foregoing an Agreement among ourselves.

Dated: _____

ACCEPTED this ____ day of                    Address:_____

_____, 19___                                 _____

DOTCOM VENTURES, L.P.

AV Management, LLC,
its general partner

By:_____
       Manager

### EXHIBIT F

## AMENDED AND RESTATED MANAGEMENT SERVICES AGREEMENT

This AMENDED AND RESTATED MANAGEMENT SERVICES AGREEMENT ("Agreement") dated as of April 1, 1999 is made by and between DOTCOM VENTURES, L.P. (formerly ASCII VENTURES, L.P.), a California limited partnership ("the Partnership"), and ASCII INVESTMENT MANAGEMENT, INC., a California corporation (the "Management Company"). The prior Management Services Agreement between the parties is hereby terminated and is of no further force or effect. The parties hereto agree as follows:

1.      DEFINITIONS. All capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Partnership's Limited Partnership Agreement.

2.      MANAGEMENT COMPANY DUTIES

2.1      BUSINESS ACTIVITIES. The Management Company shall administer and manage the business activities of the Partnership, seek to achieve the objectives and purposes of the Partnership as specified in the Partnership Agreement, and perform such duties assigned to it by the general partner of the Partnership, AV Management, LLC., a California limited liability company (the "General Partner"). The General Partner shall delegate sufficient authority and rights to the Management Company so that it may perform its management duties. The Management Company's duties include, but are not limited to, the following:

      (1)      Identifying and investigating investment prospects;

      (2)      Making investment recommendations;

      (3)      Managing and monitoring investments;

      (4)      Recommending dispositions of investments; and

      (5)      Maintaining books and records of the Partnership and the General Partner.

The Management Company agrees to carry out such duties to the best of its abilities, in accordance with the General Partner's instructions, and subject to the provisions and restrictions of the Partnership Agreement.

2.2      LIMITATION ON AUTHORITY. Notwithstanding anything to the contrary in this Agreement, the Management Company and its employees and agents are not authorized to act in the name of or bind the Partnership or the General Partner. The management and operations of the Partnership and the General Partner, including the selection of investments for the Partnership, shall be the ultimate responsibility of the General Partner as provided in the Partnership Agreement.

56343 v5/SH
17H3051.DOC

3.    MANAGEMENT COMPANY STAFF

3.1    THE STAFF.   The Management Company will maintain a staff, whether of employees or independent contractors, including analysts and consultants trained and experienced in identifying and evaluating the performance of, and providing assistance to technology companies engaged in the research, development, marketing and sales of information technology, software and related markets, including Internet-related technologies. The Management Company's staff shall be adequate for the performance of the Management Company's duties specified in this Agreement.

3.2    KEY OFFICERS.   For purposes of providing services to the Partnership, the key officers of the Management Company will be Sada Chidambaram, President, Chief Executive Officer and Chairman, Stephen Hyndman, Chief Financial Officer, Vice President and Secretary and Pauline Duffy, Treasurer (collectively, "Key Officers"). Each of the Key Officers will devote sufficient business time through the end of the term of the Partnership as is necessary to enable the Partnership to carry out the purpose for which it was formed.

3.3    THIRD-PARTY ASSISTANCE.   The Management Company shall arrange for and coordinate the services of other professionals and consultants.

4.    MANAGEMENT FEE

4.1    COMPUTATION OF MANAGEMENT FEE.

(a)    The Management Company shall be compensated on a quarterly basis in advance for services rendered prior to the Termination Date of the Partnership by the payment by the Partnership in cash of a management fee. The management fee shall be payable on the first day of each calendar quarter (each a "Fee Date").

(b)    (i)    The management fee payable on each Fee Date which occurs prior to the fifth anniversary of the commencement of the Partnership shall be equal to the sum of (A) the Partnership's Regulatory Capital (as defined in the SBIC Act) as of such Fee Date plus (B) an amount equal to two times Regulatory Capital as of such Fee Date, multiplied by 0.625%,

(ii)    The management fee payable on each Fee Date which occurs after the fifth anniversary of the commencement of the Partnership shall be an amount equal to the sum of (A) the Partnership's Regulatory Capital as of such Fee Date and (B) the amount of Outstanding Leverage, multiplied by 0.625.

(iii)    Notwithstanding the foregoing, (A) the management fee for each of the Partnership's first and last quarters shall be proportionately reduced based upon the ratio the number of days in each such period bears to ninety (90) and (B) an additional management fee shall be payable upon the date of admission of any additional Partner to the Partnership to reflect the increased Regulatory Capital calculated as if such Partner were admitted upon the initial formation date of the Partnership.

(c)    The management fee calculated pursuant to subparagraph (b) above shall be reduced by all transaction fees, advisory fees, director's fees, break-up fees and the like received during the immediately preceding quarter by (i) the General Partner (including any employee of the General Partner), (ii) the partners of the General Partner or (iii) the Management Company or its employees, with respect to any entity in which the Partnership has an interest (or proposes to acquire an interest) or with respect to which the General Partner or the Management Company is acting on the Partnership's behalf. Notwithstanding any portion of the foregoing to the contrary, no reduction shall be made pursuant to the immediately preceding sentence as a result of the payment of legal fees and expenses by any entity to the law firm of Fenwick & West. In the event such reduction exceeds the management fee payable for any given period, subsequent period management fees shall be reduced by such excess amount until there has been a full reduction of management fees with respect to amounts described in the foregoing sentence; provided that any balance of fees not offset by the reduction of management fees prior to the dissolution of the Partnership shall be paid over to the Partnership by the Management Company.

4.2    CONSULTING, ANNUAL, AND DIRECTORS' FEES.  The Management Company, its employees, or Affiliates may receive from Portfolio Companies consulting fees for initiating and arranging transactions, including arranging financing therefor, and annual or directors' fees, including, but not limited to, securities, property or any other form of compensation, for general management advice, reviewing operations and board participation. The Management Company, its employees, or Affiliates shall retain the full amount of any such fees net of expenses. The Partnership will not share in any such amount of compensation or profits, and such amounts shall not offset any portion of the Management Fee.

5.    EXCULPATION AND INDEMNIFICATION

5.1    EXCULPATION.  Subject to any restriction provided for in SBA Annex OP, which is hereby incorporated by reference, neither the Management Company nor its members, employee or affiliates shall be liable to the Partnership or to a Partner for honest mistakes of judgment or for action or inaction taken reasonably and in good faith for a purpose that was reasonably believed to be in the best interests of the Partnership or for losses arising out of the negligence, dishonesty or bad faith of any employee or agent of the Management Company, provided that such employee or agent was selected and supervised with reasonable care.

5.2    INDEMNIFICATION.  Subject to any restriction provided for in SBA Annex OP, which is hereby incorporated by reference, the Partnership will indemnify, out of the assets of the Partnership only, the Management Company, the employees, officers or directors of the Management Company, and their agents to the fullest extent permitted by law and to save and hold them harmless from and in respect of all reasonable fees, costs, and expenses paid in connection with or resulting from any claim, action or demand that arises out of or in any way relates to the Partnership, its properties, business, or affairs, including amounts paid in settlement from such claims, actions or demands; provided, however, that this indemnity shall not extend to conduct not undertaken in good faith to promote the best interests of the Partnership, and to any action that involves fraud, willful misfeasance, gross negligence, recklessness or intentional

wrongdoing.  The expenses incurred by the indemnified party will be advanced by the Partnership if the party undertakes to pay the Partnership back in the event it is ultimately determined that the party shall not be indemnified.

6.    **REPORTS AND PRESENTATIONS**

6.1    **MONTHLY REPORTS.** The Management Company shall furnish the Partnership on a monthly basis reports containing such current information as the General Partner may request.

6.2    **ASSISTANCE IN PREPARING QUARTERLY AND ANNUAL REPORTS.** The Management Company shall prepare and deliver to the Partnership reports required to be delivered to the limited partners of the Partnership pursuant to its limited partnership agreement, including quarterly financial and operation reports, and the annual report.

7.    **TERM OF AGREEMENT.** The Management Company shall provide services under this Agreement until the earlier of (i) termination of the Partnership, or (ii) termination by a party to this Agreement with or without cause upon 180 days' prior written notice.

8.    **AMENDMENTS.** This Agreement can be modified or amended only by a writing signed by the parties hereto.

9.    **GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the State of California.

THE UNDERSIGNED have executed this Amended and Restated Agreement as of the date first above written.

DOTCOM Ventures, L.P.

By: AV Management, LLC, its general partner

By: _____

Managing Member

ASCII Investment Management, Inc.

By: _____

Sada Chidambaram, President

56343 v5/SH
17H305l.DOC

SBA Annex PS, Version 1.3 March 15, 1997

# SBA ANNEX PS
## VERSION 1.3

## PROVISIONS FOR
## PREFERRED LIMITED PARTNERSHIP INTERESTS

## SBA ANNEX OF PROVISIONS FOR
## PARTICIPATING SECURITIES IN THE FORM OF
## PREFERRED LIMITED PARTNERSHIP INTERESTS UNDER
## AN AGREEMENT OF LIMITED PARTNERSHIP
## FOR A SECTION 301(C) LICENSEE

This document has been drafted by the law firm of O'Sullivan Graev & Karabell, in collaboration with the law firms of Pepper, Hamilton & Scheetz and Foley, Hoag & Eliot, the National Association of Small Business Investment Companies, and the Office of the General Counsel of the United States Small Business Administration.

The Small Business Administration does not endorse or approve law firms. The above legend is not an endorsement or approval by the Small Business Administration of any law firm identified therein, and no representation to the contrary by any party is authorized.

SBA ANNEX PS

TABLE OF CONTENTS

Page

ARTICLE I    General Provisions ................................................... 1
1.1.    Definitions ...................................................... 1
1.2.    Conflict With the SBIC Act ........................................ 1
1.3.    Conflict With Other Provisions of the Agreement .................... 4
1.4.    Effective Date of Incorporated SBIC Act Provisions ................. 4
1.5.    Incorporation of this Annex into the Agreement .................... 5
                                                                            5

ARTICLE II    Purpose and Powers ................................................ 5

ARTICLE III    Management ....................................................... 6
3.1.    Authority of General Partner ...................................... 6
3.2.    Valuation of Assets .............................................. 6

ARTICLE IV    Small Business Investment Company Matters ......................... 7
4.1.    Provisions Required by the SBIC Act for Issuers of Participating Securities ..... 7
4.2.    Provisions Required by the SBIC Act for Issuers of Debentures ........... 7
4.3.    Admission of Preferred Limited Partners and Increased Commitments ......... 7
4.4.    Redemption and Withdrawal of Preferred Limited Partners .............. 8
4.5.    Assignment of Right to Distributions .............................. 9
4.6.    Priority of Preferred Limited Partnership Interests on Liquidation .......... 9
4.7.    SBA as Third Party Beneficiary ................................... 9
4.8.    Representations of Private Limited Partners. ......................... 9
4.9.    Notices With Respect to Representations by Private Limited Partners ........ 10

ARTICLE V    Capital Accounts .................................................. 11
5.1.    Establishment of Capital Accounts ................................. 11
5.2.    Times of Allocation to Capital Accounts ............................ 11
5.3.    Allocations to Capital Accounts ................................... 11

ARTICLE VI    Distributions ..................................................... 13
6.1.    Distributions to Partners ......................................... 13
6.2.    Distributions of Portfolio Securities ............................... 14
6.3.    Apportionment of Distributions Among the General Partner and Private
        Limited Partners ................................................. 14

ARTICLE VII    Partners' Commitments ............................................ 15
7.1.    Conditions to the Commitments of the General Partner and the Private
        Limited Partners ................................................ 15
7.2.    Failure to Make Required Capital Contributions ..................... 15
7.3.    Termination of the Obligation to Contribute Capital ................. 16

-i-

Page

7.4.   Withdrawal by ERISA Regulated Pension Plans . . . . . . . . . . . . . . . . . . . . . . .   16
7.5.   Withdrawal by Government Plans Complying with State and Local Law . . . . . .   16
7.6.   Withdrawal by Government Plans Complying with ERISA . . . . . . . . . . . . . .   17
7.7.   Withdrawal by Tax Exempt Private Limited Partners . . . . . . . . . . . . . . . . .   17
7.8.   Withdrawal by Registered Investment Companies . . . . . . . . . . . . . . . . . .   17
7.9.   Notice and Opinion of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

ARTICLE VIII       Dissolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

ARTICLE IX   Audit and Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

ARTICLE X   Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19
10.1.   Assignability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19
10.2.   Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

EXHIBIT A-1   Instrument of Admission or Increase in
                     Commitment for a Preferred Limited Partner

S:\1700\193\11014J WP

SBA Annex PS, Version 1.3 March 15, 1997

SBA ANNEX PS

ARTICLE I

General Provisions

1.1.  Definitions.  For the purposes of this Annex, the following terms shall have the following meanings:

"Act" shall mean the state statute under which the Partnership is organized.

"Accumulated Prioritized Payments" shall have the meaning set forth in the SBIC Act.

"Adjustments" shall have the meaning set forth in the SBIC Act.

"Agreement" shall mean the agreement of limited partnership of the Partnership to which this Annex is attached and incorporated as a provision thereof.  References to the Agreement shall be deemed to include all provisions incorporated in the Agreement by reference.

"Assets" shall mean and include common and preferred stock (including warrants, rights and other options relating thereto or any combination thereof), notes, bonds, debentures, trust receipts and other obligations, instruments or evidences of indebtedness, and other properties or interests commonly regarded as securities, and in addition, interests in real property, whether improved or unimproved, and interests in personal property of all kinds, tangible or intangible, choses in action, and cash, bank deposits and so-called "money market instruments".

"Capital Account" shall mean the account of each Partner that reflects its interest in the Partnership determined in accordance with Article V.

"Closing Capital Account" shall mean, with respect to any fiscal period, the Opening Capital Account of each Partner for such fiscal period after allocations have been made to such Capital Account in accordance with Section 5.3.

"Code" shall mean the Internal Revenue Code of 1986, and the regulations and interpretations thereof promulgated by the Internal Revenue Service, as amended and supplemented from time to time.

"Commitments" shall mean the capital contributions to the Partnership which the Preferred Limited Partners have made and the other Partners have made or are obligated to make to the Partnership.  The terms of the Commitments of the Preferred Limited Partners shall be as set forth in this Annex; provided, that any Commitment by a Preferred Limited Partner shall include only the amount such Preferred Limited Partner has actually contributed to the Partnership, and shall not include any amount under any agreement by such Preferred Limited Partner or SBA to provide Leverage to the Partnership which has not been contributed to the Partnership.  The amounts and terms of the Commitments of the General Partner and the Private Limited Partners shall be as defined in the Agreement.

-1-

"Debentures" shall have the meaning set forth in the SBIC Act.

"Earmarked Assets" shall have the meaning set forth in the SBIC Act.

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, and the regulations and interpretations thereof promulgated by the Department of Labor.

"General Partner" shall mean the general partner or general partners of the Partnership.

"Institutional Investor" shall have the meaning set forth in the SBIC Act.

"Investment Company Act" shall mean the Investment Company Act of 1940, as amended, and the regulations and interpretations thereof promulgated by the Securities and Exchange Commission.

"Leverage" shall have the meaning set forth in the SBIC Act.

"Maximum Tax Liability" shall have the meaning set forth in the SBIC Act.

"Net Losses" shall mean, with respect to any fiscal period, the excess, if any, of:

     (i)  all expenses and losses incurred during such fiscal period by the Partnership over

     (ii)  the aggregate revenue, income and gains during such fiscal period by the Partnership from all sources.

For purposes of determining Net Losses:

     (A)  items shall be taken into account only to the extent that they are includable as items of income, credit, loss or deduction for Federal income tax purposes or, in the case of items of income, constitute income that is exempt from Federal income tax; and

     (B)  in the event that any Asset is distributed in kind, it shall be deemed sold at the value established at the most recent valuation of such Asset under the Agreement (or such other valuation date as is required under the SBIC Act) and any unrealized appreciation or depreciation with respect to such Asset shall be deemed realized and included in the determination of Net Losses.

"Net Profits" shall mean, with respect to any fiscal period, the excess, if any, of:

     (i)  the aggregate revenue, income and gains during such fiscal period by the Partnership from all sources over

     (ii)  all expenses and losses incurred during such fiscal period by the Partnership.

-2-

For purposes of determining Net Profits:

(A) items shall be taken into account only to the extent that they are includable as items of income, credit, loss or deduction for Federal income tax purposes or, in the case of items of income, constitute income that is exempt from Federal income tax; and

(B) in the event that any Asset is distributed in kind, it shall be deemed sold at the value established at the most recent valuation of such Asset under the Agreement (or such other valuation date as is required under the SBIC Act) and any unrealized appreciation or depreciation with respect to such Asset shall be deemed realized and included in the determination of Net Profits.

"Opening Capital Account", with respect to any fiscal period, shall mean:

(i) with respect to any Partner admitted during such fiscal period, such Partner's initial capital contribution; and

(ii) with respect to any Partner admitted during any prior fiscal period, other than a Partner who has withdrawn as of the last day of the preceding fiscal period, such Partner's Closing Capital Account for the preceding fiscal period.

"Outstanding Leverage" shall mean the total amount of outstanding securities (including, but not limited to, Debentures and Participating Securities) issued by the Partnership which qualify as Leverage and have not been redeemed or repaid for purposes of and as provided in the SBIC Act.

"Participating Security" shall have the meaning set forth in the SBIC Act.

"Partners" shall mean the General Partner, the Private Limited Partners and the Preferred Limited Partners, if any.

"Partnership" shall mean the limited partnership established by the Agreement.

"Portfolio Securities" shall mean Assets which do not constitute (i) securities in which a licensee is permitted under 13 C.F.R. §107.530, as in effect from time to time, to invest funds not invested in Small Concerns (as defined in the SBIC Act) or (ii) cash or bank deposits.

"Preferred Limited Partner" shall mean the SBA, in its capacity as a Preferred Limited Partner, or any other person holding one or more Preferred Limited Partnership Interests in the Partnership.

"Preferred Limited Partnership Interest" shall mean a preferred limited partnership interest in the Partnership which qualifies as a Participating Security.

"Prioritized Payment" shall have the meaning set forth in the SBIC Act.

-3-

"Private Capital" shall have the meaning set forth in the SBIC Act.

"Private Limited Partners" shall mean any limited partners of the Partnership, other than any Preferred Limited Partner.

"Profit Participation" shall have the meaning set forth in the SBIC Act.

"Publicly Traded Security" shall mean a Portfolio Security which is Publicly Traded and Marketable as such term is used in the SBIC Act.

"Qualified Nonprivate Funds" shall have the meaning set forth in the SBIC Act.

"Regulatory Capital" shall have the meaning set forth in the SBIC Act.

"Retained Earnings Available for Distribution" shall have the meaning set forth in the SBIC Act.

"SBA" shall mean the United States Small Business Administration.

"SBIC Act" shall mean the Small Business Investment Act of 1958, as amended, and the rules and regulations promulgated thereunder by the SBA, as in effect from time to time.

**1.2.   Conflict With the SBIC Act.** The provisions of this Annex and the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the SBIC Act. In the event of any conflict between any provision of the Agreement or this Annex and the provisions of the SBIC Act (including, without limitation, any conflict with respect to the rights of the SBA or the respective Partners hereunder), the provisions of the SBIC Act shall control.

**1.3.   Conflict With Other Provisions of the Agreement.** The provisions of the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the provisions of this Annex. In the event of any conflict between any provision of this Annex and any other provision of the Agreement, the provisions of this Annex shall control.

**1.4.   Effective Date of Incorporated SBIC Act Provisions.** (a) Subject to Section 1.4(c), any section of this Annex which relates to Participating Securities or Debentures issued by the Partnership and incorporates or refers to a provision of the SBIC Act (including, without limitation, 13 C.F.R. §107.1830 - 107.1850 shall, with respect to the rights of the SBA (or any other holder of any such Participating Security or Debenture) under any such section, as to each Participating Security or Debenture, be deemed to refer to such SBIC Act provision as in effect on the date on which the capital contribution with respect to such Participating Security was made to the Partnership pursuant to Section 4.3 or such Debenture was purchased from the Partnership, as the case may be.

(b) Notwithstanding Section 1.4(a), the provisions of 13 C.F.R. § 107.1820 incorporated by reference in Section 4.1 shall be deemed to be such provisions as in effect on the date of the first capital contribution to the Partnership with respect to a Participating Security; and the provisions of 13 C.F.R. § 107.1810(i) incorporated by reference in Section 4.2 shall be deemed to be such provisions as in effect on the date the first Debenture is purchased from the Partnership after April 25, 1994. If either

-4-

of 13 C.F.R. § 107.1810(i) or 13 C.F.R. § 107.1820 is amended subsequent to the date such Section is incorporated in the Agreement pursuant to this Section 1.4(b), then unless the SBA shall otherwise give its written consent, before the Partnership may issue additional Leverage, this Section 1.4(b) must be amended to incorporate the version of either 13 C.F.R. § 107.1810(i) or 13 C.F.R. § 107.1820 as then in effect, which relates to the Leverage to be issued.

(c)  This Section 1.4 applies to the rights of the SBA in its capacity as a holder or guarantor of Preferred Limited Partnership Interests or Debentures. This Section 1.4 shall not be construed to apply to the provisions of the SBIC Act which relate to the regulatory authority of SBA under the SBIC Act over the Partnership as a licensed small business investment company. References to the provisions of the SBIC Act relating to the SBA's regulatory authority shall mean such provisions as in effect from time to time.

1.5.  **Incorporation of this Annex into the Agreement.**  The Agreement shall contain the following provision evidencing the incorporation of this Annex:

"The provisions of SBA Annex PS attached to this Agreement are incorporated in this Agreement with the same force and effect as if fully set forth herein."

## ARTICLE II

### Purpose and Powers

The Partnership is being organized solely for the purpose of operating as a small business investment company under the SBIC Act and conducting the activities described under Title III of the SBIC Act, and shall have the powers, responsibilities, and be subject to the limitations, provided in the SBIC Act.

## ARTICLE III

### Management

3.1.  **Authority of General Partner.**  (a)  The management and operation of the Partnership and the formulation of investment policy shall be vested exclusively in the General Partner.

(b)  The General Partner shall, so long as it remains the General Partner of the Partnership, comply with the requirements of the SBIC Act, including, without limitation, 13 C.F.R. § 107.160(a) and (b), as in effect from time to time.

---

These regulations describe the number of individuals required and the organizational requirements for the General Partner.

SBA Annex PS, Version 1.3 March 15, 1997

(c)  The Preferred Limited Partners shall take no part in the control or management of the business or affairs of the Partnership nor shall the Preferred Limited Partners have any authority to act for or on behalf of the Partnership except as is specifically permitted by the Agreement.

(d)  The Partners acknowledge that, in addition to the rights of the SBA under this Annex and the Agreement in the SBA's capacity as a Preferred Limited Partner, the SBA also has regulatory authority over the Partnership as a licensed small business investment company under the provisions of the SBIC Act. The Partners further acknowledge that the SBA exercises its regulatory authority over the Partnership under the SBIC Act independent of and separate from its rights and actions in its capacity as a Preferred Limited Partner.  Actions taken by SBA pursuant to such regulatory authority shall not be deemed to be actions taken in the SBA's capacity as a Preferred Limited Partner of the Partnership.

**3.2.  Valuation of Assets.**  (a)  The Partnership shall adopt written guidelines for determining the value of its Assets. Assets held by the Partnership shall be valued by the General Partner in a manner consistent with such written guidelines and the SBIC Act.

(b)  To the extent that the SBIC Act requires any Asset held by the Partnership to be valued other than as provided in the Agreement, the General Partner shall value such Asset in such manner as it determines to be consistent with the SBIC Act.

(c)  Assets held by the Partnership shall be valued not less often than annually (or more often, as the SBA may require), and shall be valued not less often than semi-annually (or more often, as the SBA may require) at any time that the Partnership has Outstanding Leverage.*

# ARTICLE IV

## Small Business Investment Company Matters

**4.1.  Provisions Required by the SBIC Act for Issuers of Participating Securities.**  **
(a)  The provisions of 13 C.F.R. § 107.1820 are hereby incorporated by reference in this Annex as if fully set forth herein.

(b)  The Partnership and the Partners hereby consent to the exercise by the SBA of all of the rights of the SBA under 13 C.F.R. § 107.1820 and agree to take all actions which the SBA may require in accordance with 13 C.F.R. § 107.1820.

(c)  This Section 4.1 shall be in effect at any time that the Partnership has outstanding Participating Securities or owns Earmarked Assets, and shall not be in effect at any time that the Partnership neither has outstanding Participating Securities nor owns Earmarked Assets.

---

*    See 13 C.F.R. § 107.503(d), which requires valuation of assets on a semi-annual basis if there is outstanding Leverage.

**   This Section incorporates regulations relating to the special rights of the SBA when the Partnership has outstanding Participating Securities.

SBA Annex PS, Version 1 3 March 15, 1997

Instrument of Admission or Increase in
Commitment for a Preferred Limited Partner

1. Partnership Name: _____
2. Date of Agreement of Limited Partnership: _____
3. Amount of Preferred Limited Partner's Capital
   Contribution: _____
4. Effective Date of Admission or Increase: _____
5. Rate of Prioritized Return: _____
6. Payment Dates: February 1, May 1, August 1, November 1 _____
7. Maturity Date: _____

The undersigned hereby agrees to become a Preferred Limited Partner in the partnership set forth above pursuant to terms of the above referenced Agreement of Limited Partnership and to be bound by and comply with the terms of such Agreement.

The capital contribution to be made by the undersigned as a Preferred Limited Partner shall be the amount set forth on item 3 above. Such capital contribution shall be made, and the undersigned shall be admitted as a Preferred Limited Partner, on the date set forth in item 4 above. The Prioritized Payment payable with respect to such capital contribution shall be at the rate set forth in item 5 above.

An additional charge of 1% per annum shall be payable to the Preferred Limited Partner under the same terms and conditions as are applicable to the payment of Prioritized Payments.

This Instrument shall have the same force and effect as if the undersigned parties had executed a counterpart of such Agreement of Limited Partnership. Capitalized terms used in this instrument shall have the respective meanings set forth in the above referenced Agreement of Limited Partnership.

IN WITNESS WHEREOF the undersigned have hereunto executed this instrument as of
_____, _____.

Partnership:

_____
(Partnership Name)

By: _____
    (Name of General Partner)
By: _____
    (Signature of Officer or General Partner)

Name: _____
Title: _____

Preferred Limited Partner:

U. S. Small Business Administration
(Name of Preferred Limited Partner)

By: _____
    (Signature of Authorized Person)

Name: _____
Title: Associate Administrator for Investment

Address: U.S. Small Business Administration
         Investment Division, 409 Third Street, S.W.
         Washington, DC 20416

SBA Annex PS, Version 1.1 March 15, 1997

(d) Nothing in this Section 4.1 shall be construed to limit the ability or authority of the SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

4.2. **Provisions Required by the SBIC Act for Issuers of Debentures.** (a) The provisions of 13 C.F.R. § 107.1810(i) are hereby incorporated by reference in this Annex as if fully set forth herein.

(b) The Partnership and the Partners hereby consent to the exercise by the SBA of all of the rights of the SBA under 13 C.F.R. § 107.1810(i) and agree to take all actions which the SBA may require in accordance with 13 C.F.R. § 107.1810 (i).

(c) This Section 4.2 shall be in effect at any time that the Partnership has outstanding Debentures, and shall not be in effect at any time that the Partnership does not have outstanding Debentures.

(d) Nothing in this Section 4.2 shall be construed to limit the ability or authority of the SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

4.3. **Admission of Preferred Limited Partners and Increased Commitments.** The Partnership may, from time to time after the date hereof, admit one or more Preferred Limited Partners under the following terms and conditions:

(a) Each Preferred Limited Partner shall execute and deliver to the Partnership an instrument in the form attached hereto as Exhibit A-1, or other form satisfactory to the Partnership and the Preferred Limited Partner, evidencing such Preferred Limited Partner's agreement to be bound by and comply with the terms and provisions of the Agreement as if such Preferred Limited Partner were an original signatory to the Agreement, and setting forth such Preferred Limited Partner's name, address and Commitment.

(b) Each Preferred Limited Partner shall be admitted to the Partnership as of the date that such instrument is executed by such Preferred Limited Partner and the General Partner. Each Preferred Limited Partner shall pay on the date of its admission to the Partnership, a capital contribution equal to 100% of the amount of its Commitment.

(c) At the time that any Preferred Limited Partner makes an additional capital contribution to the Partnership it shall execute an instrument as provided in Section 4.3(a) setting forth the amount of such additional capital contribution, and its Commitment shall be increased by the amount of such capital contribution.

4.4. **Redemption and Withdrawal of Preferred Limited Partners.** (a) The redemption of the Preferred Limited Partnership Interest of a Preferred Limited Partner for purposes of

---

This Section incorporates regulations relating to the special rights of the SBA when the Partnership has outstanding Debentures.

-7-

the SBIC Act shall not cause the withdrawal of such Preferred Limited Partner from the Partnership, and any Preferred Limited Partner whose Preferred Limited Partnership Interest is redeemed for purposes of the SBIC Act shall remain a Preferred Limited Partner of the Partnership notwithstanding such redemption, until such time as such Preferred Limited Partner is deemed to have withdrawn pursuant to Section 4.4(d).

(b)  In the event that any Preferred Limited Partner has not received on a cumulative basis an amount equal to 100% of the original issue price of such Preferred Limited Partner's Preferred Limited Partnership Interest in the Partnership, plus the amount of any Prioritized Payments and Adjustments that are due under the SBIC Act but unpaid with respect to such Preferred Limited Partner's Preferred Limited Partnership Interest, prior to the redemption date of such Preferred Limited Partner's Preferred Limited Partnership Interest for purposes of the SBIC Act, then on such redemption date the Partnership shall distribute such amount to such Preferred Limited Partner as shall be required so that as of such date such Preferred Limited Partner shall have received on a cumulative basis an amount equal to the original issue price plus all Prioritized Payments and Adjustments which are due under the SBIC Act but unpaid with respect to its Preferred Limited Partnership Interest.

(c)  If, at the time any Preferred Limited Partner's Preferred Limited Partnership Interest has been redeemed for purposes of the SBIC Act, the Partnership (i) has not paid all Prioritized Payments and Adjustments in full and (ii) has not sold or otherwise disposed of all assets which are Earmarked Assets, then the Partnership's obligation to pay Prioritized Payments and Adjustments shall continue and payment shall be made as provided in the SBIC Act.  The Partnership's obligation to pay Profit Participation with respect to Earmarked Assets shall continue until such time as all Earmarked Assets are disposed of.  If on disposition of all Earmarked Assets there remain any Accumulated Prioritized Payments, the obligation to make such payments shall be extinguished.

(d)  A Preferred Limited Partner shall be deemed to have withdrawn from the Partnership at such time as the Preferred Limited Partnership Interest of such Preferred Limited Partner has been redeemed, the Partnership no longer owns any assets which are Earmarked Assets, and all amounts due from the Partnership to such Preferred Limited Partner with respect to its Preferred Limited Partnership Interest (including, without limitation, all allocated Profit Participation) have been paid to such Preferred Limited Partner or the obligation to pay such amounts has been extinguished as provided in Section 4.4(c).

4.5.  **Assignment of Right to Distributions.**  A Preferred Limited Partner (including the SBA in its capacity as a Preferred Limited Partner) may assign to a designee (including any trust, or trustee for a trust, established pursuant to the SBIC Act) all or part of its right to receive any distribution or payment from the Partnership with respect to its Preferred Limited Partnership Interest.  Upon receipt of written notice from the Preferred Limited Partner, the Partnership shall pay any such assigned distribution or payment directly to such designee.  Any assignment made solely pursuant to this Section 4.5 shall not be deemed an assignment of a partnership interest or the substitution of such designee as a Partner, and shall not be deemed to give such designee any rights or interest in the Partnership as a Partner in the Partnership.

4.6.  **Priority of Preferred Limited Partnership Interests on Liquidation.**  In the event of the liquidation of the Partnership pursuant to the SBIC Act, the Preferred Limited Partnership Interests shall be senior in priority for all purposes to all other partnership interests (or other equity interests) in

-8-

the Partnership to the extent of the amount determined, with respect to each Preferred Limited Partnership Interest, as provided in the SBIC Act.[*]

4.7.  **SBA as Third Party Beneficiary.**  In the event that the SBA is not a party to the Agreement, the SBA shall be deemed an express third party beneficiary of the provisions of the Agreement (including, without limitation, this Annex) to the extent of the rights of the Preferred Limited Partners and the SBA thereunder and under the Act, and the SBA shall be entitled to enforce such provisions (including, without limitation, the obligations of each Partner to make capital contributions to the Partnership) for the benefit of the Preferred Limited Partners and for its benefit, as if the SBA were a party thereto.

4.8.  **Representations of Private Limited Partners.**  (a) Each Private Limited Partner represents to the Partnership, each Preferred Limited Partner and the SBA that it is an Institutional Investor with respect to the Partnership; provided, however, that in lieu of making this representation, any Private Limited Partner may provide the Partnership with a separate written representation describing its status under the definition of an Institutional Investor.[**]

(b) Each Private Limited Partner represents to the Partnership, each Preferred Limited Partner and the SBA that its Commitment qualifies as Private Capital, and none of its Commitment constitutes Qualified Nonprivate Funds whose source is Federal funds; provided, however, that in lieu of making this representation any Private Limited Partner may provide the Partnership with a separate written representation stating the amount of its Commitment which qualifies as Private Capital and the amount of its Commitment which constitutes Qualified Nonprivate Funds whose source is Federal funds.[***]

(c) Each Private Limited Partner represents to the Partnership, each Preferred Limited Partner and the SBA that (i) its net worth or (in the case of any employee benefit plan, pension plan or government plan as defined under ERISA) net assets available for benefits equals or exceeds $10 million (exclusive, in the case of any individual, of the value of any equity in such individual's most valuable residence), (ii) its Commitment to the Partnership represents less than ten percent (10%) of such Private Limited Partner's net worth or (in the case of any employee benefit plan, pension plan or government plan as defined under ERISA) net assets available for benefits, and (iii) if such Private Limited Partner is a natural person, such person is a permanent resident of the United States; provided, however, that in lieu of making this representation any Private Limited Partner may provide the Partnership with a separate written representation stating the amount of its net worth (exclusive, in the case of any individual, of the value of any equity in such individual's most valuable residence) or net assets available for benefits (in the case of any such employee benefit plan, pension plan or government plan), the percentage of such net worth or net assets available for benefits represented by such Private Limited

---

[*]    13 C.F.R. § 107.1500(f) specifies the amount of the priority of a Preferred Limited Partnership Interest on liquidation.

[**]    See the definition of "Institutional Investor" at 13 C.F.R. § 107.50.

[***]    See the definitions of "Regulatory Capital", "Qualified Nonprivate Funds" and "Leverageable Capital" at 13 C.F.R. § 107.50.

Partner's Commitment to the Partnership, and the country (if other than the United States) in which such Private Limited Partner is a permanent resident.*

(d) Each Private Limited Partner which directly or indirectly owns or controls a limited partner's interest which constitutes ten percent (10%) or more of the partnership capital (as such term is used in the SBIC Act), represents to the Partnership and each Preferred Limited Partner and the SBA that its Commitment to the Partnership does not (i) constitute thirty-three percent (33%) or more of the partnership capital or (ii) exceed five percent (5%) of such Private Limited Partner's net worth or net assets available for benefits (in the case of any employee benefit, pension plan or government plan); provided, however, that in lieu of making this representation any Private Limited Partner may provide the Partnership with a separate written representation stating the percentage of the partnership capital which the limited partner's interest directly or indirectly owned or controlled by it constitutes, and the percentage of its net worth represented by such limited partner's interest."

(e) Each Private Limited Partner represents to the Partnership, each Partner and the SBA that such Private Limited Partner has full power and authority to execute and deliver the Agreement and to act as a Private Limited Partner; the Agreement has been authorized by all necessary actions by it; the Agreement has been duly executed and delivered by it; and the Agreement is a legal, valid and binding obligation of it, enforceable against it according to its terms.

4.9. **Notices With Respect to Representations by Private Limited Partners.** (a) In the event that the representation made by a Private Limited Partner in Section 4.8(a), (b), (c) or (d) shall cease to be true (including any separate written representation previously provided by such Private Limited Partner to the Partnership as provided in such Sections), then such Private Limited Partner shall promptly provide the Partnership with a correct separate written representation as provided in each such Section.

(b) The Partnership shall give each Preferred Limited Partner and the SBA prompt written notice of any notice received from any Private Limited Partner pursuant to Section 4.9(a) with respect to the representations of such Private Limited Partner.

## ARTICLE V

### Capital Accounts

5.1. **Establishment of Capital Accounts.** There shall be established on the books of the Partnership an Opening Capital Account for each Partner in accordance with the definitions and methods of allocation prescribed herein.

5.2. **Times of Allocation to Capital Accounts.** Allocations shall be made to Opening Capital Accounts at (i) the close of each fiscal year of the Partnership, (ii) upon the day prior to the date of the admission of an Additional Private Limited Partner, increase in any Private Limited Partner's

---

\*      See the definitions of "Private Capital" and "Regulatory Capital" at 13 C.F.R. § 107.50.

\*\*     See the definition of "Associate" at 13 C.F.R. § 107.50.

-10-

Commitment, admission of any Preferred Limited Partner or increase in the Commitment of any Preferred Limited Partner, (iii) upon the day prior to the dissolution of the Partnership, (iv) upon the date of a distribution and (v) on such other dates as the Agreement may provide. As of the dates set forth in clauses (i) through (v) of the preceding sentence, the allocations shall be made to the Opening Capital Account of each Partner in accordance with Section 5.3.

5.3. Allocations to Capital Accounts. (a) As of the times set forth in Section 5.2, allocations shall be made to the Opening Capital Accounts of the Partners to arrive at each Partner's Closing Capital Account for such period in the following order and amounts:

(i) The amount of any capital contributions paid by each Partner during such period shall be credited to such Partner's Opening Capital Account (other than capital contributions referred to in clause (i) of the definition of "Opening Capital Account" in Article I); provided, however, that any such capital contribution shall be credited to such Partner's Opening Capital Account on the later of the date such capital contribution was due or the date on which such capital contribution was actually received by the Partnership;

(ii) The amount of any distributions made to each Partner during such period shall be debited against such Partner's Opening Capital Account;

(iii) Net Profits shall be credited and Net Losses shall be debited to the Opening Capital Accounts of the Preferred Limited Partners in such amount and in such manner as is required to allocate to the Preferred Limited Partners the amount of the Prioritized Payments and Adjustments to which the Preferred Limited Partners are then entitled (determined as provided in the SBIC Act), to be apportioned among them as required under the SBIC Act;

(iv) The balance of any Net Profits shall be credited and any Net Losses shall be debited to the Opening Capital Accounts of the Partners as follows:

(A) to the Preferred Limited Partners in such amount as is required to allocate to the Preferred Limited Partners the amount of the Profit Participation to which the Preferred Limited Partners (or the SBA) are then entitled (determined as provided in the SBIC Act), to be apportioned among them as required under the SBIC Act; and

(B) the balance to the General Partner and the Private Limited Partners to be apportioned among the General Partner and the Private Limited Partners as provided in the Agreement, or if no such provision is made in the Agreement, then as provided in the Act.

(b) Notwithstanding the provisions of Section 5.3(a)(iv):

(i) at such time as the Capital Account of the General Partner shall be reduced to an amount equal to the aggregate capital contributions of the General Partner (less all distributions to the General Partner), the balance of all Net Losses shall be allocated:

-11-

(A) <u>first</u>, to the remaining Capital Accounts of all of the Private Limited Partners which have not been reduced to zero (to be apportioned among them in accordance with their respective Partner's Percentages);

(B) <u>second</u>, after the Capital Accounts of all Private Limited Partners have been reduced to zero, then to the remaining Capital Accounts of the Preferred Limited Partners which have not been reduced to zero (to be apportioned among them according to their respective Capital Accounts); and

(C) <u>third</u>, after the Capital Accounts of all Private Limited Partners and Preferred Limited Partners have been reduced to zero, then the balance to the General Partner.

(ii) In the event that Net Losses are allocated in accordance with the foregoing clause (i), any Net Profits that are required to be allocated after such special allocation of Net Losses as provided in the foregoing clause shall be allocated:

(A) <u>first</u>, to the General Partner until the effect of the special allocation of Net Losses under clause (i)(C) is reversed and eliminated;

(B) <u>second</u>, to all of the Preferred Limited Partners to whom the allocation of such Net Losses has been made pursuant to clause (i)(B) until the effect of such special allocation of Net Losses has been reversed and eliminated; and

(C) <u>third</u>, to the Private Limited Partners to whom the allocation of such Net Losses has been made pursuant to clause (i)(A) until the effect of such special allocation of Net Losses has been reversed and eliminated.

(c) To the extent not otherwise accomplished by the provisions of Sections 5.3(a) and (b), allocations shall be made to the Opening Capital Accounts of the Partners to effect any allocation of any item of income, gain, loss, deduction or credit to a Partner required by the Code.

## ARTICLE VI

### <u>Distributions</u>

**6.1.    <u>Distributions to Partners</u>.** Distributions of cash and/or property (including Portfolio Securities), if any, shall be made at such times as the provisions of the SBIC Act require and at such other times permitted by the SBIC Act as are determined under the Agreement, in the following order and amounts:

---

13 C.F.R. § 107.1520(g) and §§107.1540 through 107.1580 relate specifically to distributions.

SBA Annex PS, Version 1 3 March 15, 1997

entitled to receive if such distribution were made in cash) with respect to such distribution of each such Portfolio Security.*

(b)  Distributions of Portfolio Securities in kind prior to the redemption of all Preferred Limited Partnership Interests shall only be made if such Portfolio Securities are Publicly Traded Securities. Distributions in kind of Portfolio Securities which are Earmarked Assets after the redemption of all Preferred Limited Partnership Interests shall be made only (i) if such Portfolio Securities are Publicly Traded Securities or (ii) if such Portfolio Securities are not Publicly Traded Securities, then with the prior written approval of the SBA (which shall include the approval of the valuation of such Portfolio Securities).

(c)  At any time that any amount due to a Preferred Limited Partner whose Preferred Limited Partnership Interest has been redeemed for purposes of the SBIC Act has not been paid in full, the Partnership shall not make any distribution of Portfolio Securities in kind unless the Partnership distributes to such Preferred Limited Partner such amount, up to the amount of the unrealized appreciation on the Portfolio Securities to be distributed, as may be necessary to pay in full the amounts due to such Preferred Limited Partner pursuant to Section 4.4(c).

6.3.    <u>Apportionment of Distributions Among the General Partner and Private Limited Partners</u>.  All amounts to be distributed to the General Partner and the Private Limited Partners shall be apportioned among the General Partner and the Private Limited Partners as provided in the Agreement, or if no such provision is made in the Agreement, then as provided in the Act.

## ARTICLE VII

### Partners' Commitments

7.1.  <u>Conditions to the Commitments of the General Partner and the Private Limited Partners</u>.  (a) Notwithstanding any provision in the Agreement to the contrary, the General Partner and the Private Limited Partners shall be obligated to contribute any amount of their respective Commitments, not previously contributed to the Partnership, upon the earlier of (i) the completion of the liquidation of the Partnership or (ii) one year from the commencement of such liquidation if and to the extent that the other Assets of the Partnership have not been sufficient to permit as such time the redemption of all Outstanding Leverage, the payment of all amounts due with respect to the Outstanding Leverage as provided in the SBIC Act, and the payment of all other amounts owed by the Partnership to the SBA.

(b)  Notwithstanding any provision in the Agreement to the contrary (except as expressly provided in this Section 7.1(b)), in the event that the Partnership is subject to restricted operations (as such term is used in the SBIC Act) and prior to the liquidation of the Partnership the SBA requires the

---

* Distributions of securities are required to be <u>pro</u> <u>rata</u> only between the Preferred Limited Partners and all other Partners as a group (13 C.F.R. § 107.1580(a)(2); the Agreement may permit non-<u>pro</u> <u>rata</u> distributions of securities among the General and Private Limited Partners.

SBA Annex PS, Version 1.3 March 15, 1997

(i) to the Preferred Limited Partners in an amount up to any unpaid Prioritized Payments and Adjustments to which any Preferred Limited Partners are entitled (as determined under the SBIC Act), to be apportioned among them as required by the SBIC Act;

(ii) if all amounts required to be distributed under clause (i) have been distributed, then at the election of the General Partner, to the Partners (whether or not any Partner is a taxpayer or is a tax exempt entity) in an amount up to the Maximum Tax Liability of the Partners, to be apportioned between the Preferred Limited Partners on the one hand and the General Partner and the Private Limited Partners on the other hand as required by the SBIC Act;

(iii) if all amounts required to be distributed under clause (i) and clause (ii) (if the General Partner has elected to make a distribution under clause (ii)) have been distributed, then to the Partners in an amount up to the amount of the Retained Earnings Available for Distribution of the Partnership, to be apportioned among them in the following ratios:

(A) if as of the date of the distribution there is Outstanding Leverage, then in the ratios set forth in the SBIC Act;* and

(B) if as of the date of the distribution there is no Outstanding Leverage, then any amount to be distributed under this clause (iii) shall be apportioned to the Preferred Limited Partners up to the amount of any Profit Participation payable to the Preferred Limited Partners following the redemption of their Preferred Limited Partnership Interests for purposes of the SBIC Act, and the balance shall be apportioned to the General Partner and the Private Limited Partners;

(iv) if all amounts required to be distributed under clauses (i), (ii) (if the General Partner has elected to make a distribution under clause (ii)), and (iii) have been distributed, then any additional amount shall be distributed and apportioned among the Partners in the following ratios:

(A) if as of the date of the distribution there is Outstanding Leverage then in the ratios set forth in the SBIC Act; and

(B) if as of the date of the distribution there is no Outstanding Leverage, then any amount to be distributed under this clause (iv) shall be distributed one hundred percent (100%) to the General Partner and the Private Limited Partners.

**6.2.  Distributions of Portfolio Securities.**  (a) Subject to the provisions of the SBIC Act (including, without limitation, 13 C.F.R. § 107.1580) and the provisions of this Section 6.2, the Partnership may, as provided in the Agreement, at any time distribute Portfolio Securities in kind, pro rata between the Preferred Limited Partners on the one hand and the General Partner and Private Limited Partners on the other hand (based upon the respective amounts which each of the two groups would be

---

13 C.F.R. § 107.1560 sets forth the ratios, which vary depending on the amount of Outstanding Leverage.

-13-

General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement other than limitations on the amount of capital which a Partner is obligated to contribute (i) within any specified time period or (ii) prior to any specified date.

(c) The provisions of this Section 7.1 shall not apply to the Commitment of any Private Limited Partner whose obligation to make capital contributions has been terminated or who has withdrawn from the Partnership pursuant to a provision of this Article VII or any agreement, release, settlement or action under any provision of the Agreement which has been taken with the consent of the SBA as provided in Section 7.2. No Private Limited Partner or General Partner shall have any right to delay, reduce or offset any capital contribution obligation to the Partnership called under this Section 7.1 by reason of any counterclaim or right to offset by such Partner or the Partnership against SBA or any Preferred Limited Partner.

7.2. <u>Failure to Make Required Capital Contributions</u>. (a) The Partnership shall be entitled to enforce the obligations of each Partner to make the contributions to capital specified in the Agreement, and the Partnership shall have all rights and remedies available at law or equity in the event any such contribution is not so made.

(b) The Partnership shall give the SBA prompt written notice of any default by a Private Limited Partner in making any capital contribution to the Partnership required under the Agreement which continues beyond any applicable grace period specified in the Agreement.

(c) The Partnership shall not enter into any agreement (whether oral or written), release or settlement with any Partner or take any action under any provision of the Agreement, which defers, reduces, or terminates the obligations of any such Partner to make contributions to the capital of the Partnership, or commence any legal proceeding or arbitration, which seeks any such deferral, reduction or termination of such obligation, and no such agreement, release, settlement or action taken under any provision of the Agreement shall be effective with respect to the Partnership or any such Partner, without the prior written (except as provided in Section 7.2(d)) consent of the SBA.

(d) If the Partnership has given the SBA thirty (30) days prior written notice of any proposed legal proceeding, arbitration or other action under the provisions of the Agreement with respect to any default by a Private Limited Partner in making any capital contribution to the Partnership required under the Agreement and for which SBA consent is required as provided in Section 7.2(c), and the Partnership shall not have received written notice from the SBA that it objects to such proposed action within such thirty (30) day period, then SBA shall be deemed to have consented to such proposed Partnership action.

(e) Section 7.2(c) shall be in effect at any time that the Partnership has Outstanding Leverage or owns Earmarked Assets, and shall not be in effect at any time the Partnership neither has Outstanding Leverage nor owns Earmarked Assets.

---

See also the rights of the SBA as a third party beneficiary under Section 4.7.

-15-

7.3. <u>Termination of the Obligation to Contribute Capital</u>. Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner may elect to terminate its obligation in whole or in part to make a capital contribution required pursuant to the Agreement or upon demand by the General Partner shall no longer be entitled to make such capital contribution, in the event that such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that making such contribution would require such Private Limited Partner to withdraw from the Partnership pursuant to Sections 7.4 through 7.8. Upon receipt by the General Partner of an opinion and notice as required under Section 7.9, unless cured within the period provided under Section 7.10, the Commitment of the Private Limited Partner delivering such opinion shall be deemed to be reduced by the amount of such capital contribution and the Agreement shall be deemed amended to reflect a corresponding reduction of aggregate Commitments to the Partnership.

7.4. <u>Withdrawal by ERISA Regulated Pension Plans</u>. Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA, may elect to withdraw from the Partnership in whole or in part, or upon demand by the General Partner shall withdraw from the Partnership in whole or in part, if either such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that, as a result of ERISA, (i) the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such Private Limited Partner to avoid a violation of, or breach of the fiduciary duties of any person under (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership), ERISA or any provision of the Code related to ERISA or (ii) all or any portion of the assets of the Partnership (as opposed to such Private Limited Partner's partnership interest) constitute assets of such Private Limited Partner for purposes of ERISA and are subject to the provisions of ERISA to substantially the same extent as if owned directly by such Private Limited Partner.

7.5. <u>Withdrawal by Government Plans Complying with State and Local Law</u>. Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is a "government plan" within the meaning of ERISA may elect to withdraw from the Partnership in whole or in part, or upon demand by the General Partner shall withdraw from the Partnership in whole or in part, if either such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that as a result of state statutes, regulations, case law, administrative interpretations or similar authority applicable to such "government plan", the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such Private Limited Partner or the Partnership to avoid a violation (other than a violation based upon the investment performance of the Partnership) of such applicable state law.

7.6. <u>Withdrawal by Government Plans Complying with ERISA</u>. Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is a "government plan" within the meaning of ERISA may elect to withdraw from the Partnership in whole or in part, if such "government plan" shall obtain an opinion of counsel to the effect that, as a result ERISA, (i) the withdrawal of such "government plan" from the Partnership to such extent would be required if it were an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA, to enable such "government plan" to avoid a violation of, or breach of the fiduciary duties of any person under (other than a breach of the fiduciary duties of any such person based upon the investment strategy or performance of the Partnership), ERISA or any provision of the Code

-16-

related to ERISA in the manner which would be required were it an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA, or (ii) all or any portion of the assets of the Partnership would constitute assets of such "government plan" for the purposes of ERISA, if such "government plan" were an "employee benefit plan" within the meaning of, and subject to the provisions of, ERISA and would be subject to the provisions of ERISA to substantially the same extent as if owned directly by such "government plan."

7.7. **Withdrawal by Tax Exempt Private Limited Partners.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is exempt from taxation under Section 501(a) or 501(c)(3) of the Code may elect to withdraw from the Partnership in whole or in part, if such Private Limited Partner shall obtain an opinion of counsel to the effect that as a result of applicable statutes, regulations, case law, administrative interpretations or similar authority, the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such tax exempt Private Limited Partner to avoid loss of its tax exempt status under Section 501(a) or 501(c)(3) of the Code.

7.8. **Withdrawal by Registered Investment Companies.** Notwithstanding any other provision of the Agreement (including, without limitation, the provisions of this Annex), any Private Limited Partner that is an "investment company" subject to registration under the Investment Company Act, may elect to withdraw from the Partnership in whole or in part, or upon demand by the General Partner shall withdraw from the Partnership in whole or in part, if either such Private Limited Partner or the General Partner shall obtain an opinion of counsel to the effect that, as a result of the Investment Company Act, the withdrawal of such Private Limited Partner from the Partnership to such extent is required to enable such Private Limited Partner or the Partnership to avoid a violation of applicable provisions of the Investment Company Act or the requirement that the Partnership register as an investment company under the Investment Company Act.

7.9. **Notice and Opinion of Counsel.** In the event of the issuance of an opinion of counsel described in Sections 7.3 through 7.8, a copy of such opinion shall be sent by the General Partner to the SBA, together with the written notice of the election of the Private Limited Partner to which such opinion relates to terminate its obligation to make further capital contributions with respect to its Commitment or withdraw from the Partnership in whole or in part, or the written demand of the General Partner for such termination or withdrawal, as the case may be. Any counsel rendering an opinion pursuant to Sections 7.3 through 7.8 shall be subject to the approval of the General Partner and the SBA, and any such opinion shall be satisfactory in form and substance to the General Partner and the SBA.

7.10. **Cure, Termination of Capital Contributions and Withdrawal.** Unless within ninety (90) days after the giving of written notice and satisfactory opinion of counsel, as provided in Section 7.9, the Private Limited Partner or the Partnership eliminates the necessity for termination of the obligation of such Private Limited Partner to make further capital contributions or for the withdrawal of such Private Limited Partner from the Partnership in whole or in part to the reasonable satisfaction of such Private Limited Partner and the General Partner, such Private Limited Partner shall withdraw from the Partnership in whole or in part to the extent required, effective as of the end of such ninety (90) day period. Subject to the provisions of Section 7.2, in its discretion the General Partner may waive all or any part of the ninety (90) day cure period and cause such termination of capital contributions or withdrawal to be effective at an earlier date as set forth in such waiver.

-17-

7.11. <u>Distributions on Withdrawal</u>. Upon withdrawal pursuant to any provision of the Agreement, a Private Limited Partner shall have the rights to distributions set forth in the Act with respect to distributions to be made to limited partners upon withdrawal from a limited partnership; <u>provided, however</u>, that any distribution by the Partnership to a Private Limited Partner pursuant to its withdrawal pursuant to any provision of the Agreement shall be subject to the provisions of the SBIC Act and the prior written consent of the SBA.

## ARTICLE VIII

### Dissolution

The Partnership shall be dissolved on the later to occur of (i) the date of dissolution set forth in the Agreement or (ii) two years after all Preferred Limited Partners have withdrawn from the Partnership and all Outstanding Leverage shall have matured. The Agreement may provide that the General Partner and the Private Limited Partners may elect to dissolve the Partnership at any time after ten (10) years; <u>provided</u>, that (i) all Outstanding Leverage has been repaid or redeemed and (ii) all amounts due the Preferred Limited Partners, SBA, its agent or trustee have been paid.*

## ARTICLE IX

### Audit and Report

The Partnership shall maintain books and records in accordance with Treasury Regulation § 1.704 - 1(b), the provisions of the SBIC Act regarding financial accounts and reporting and generally accepted accounting principles (except as otherwise provided herein), and the financial statements of the Partnership shall be audited and certified as of the end of each fiscal year by a firm of independent certified public accountants selected by the Partnership.

## ARTICLE X

### Miscellaneous

10.1. <u>Assignability</u>. (a) The General Partner may not assign, pledge or otherwise grant a security interest in its interest in the Partnership or in this Agreement, except with the prior written consent of the SBA.

---

\* See 13 C.F.R. § 107.160(c)(1) which specifies the minimum duration for an SBIC in limited partnership form.

-18-

(b)  No transfer of any interest in the Partnership shall be allowed if the actions to be taken in connection with such transfer would (i) result in any violation of the SBIC Act,* or (ii) result in a violation of any law, rule or regulation by the Partnership.

10.2.  **Amendments.**  This Annex shall not be amended except by an instrument in writing executed by all Preferred Limited Partners.  Any amendment of the Agreement which would (i) affect this Annex, (ii) affect the rights, obligations or liabilities of any Preferred Limited Partner or the SBA or (iii) reduce the Commitment of any Partner (other than as a result of (A) the operation of any provision of this Annex, (B) an agreement, settlement, release or other action under a provision of the Agreement taken as provided in Section 7.2 or (C) the assignment of such Partner's interest in the Partnership as permitted under this Annex and the Agreement) shall require the prior written consent of the SBA.

---

*   See 13 C.F.R. § 107.400 which requires SBA approval for any transfer which would result in any person owning more than a specified percentage of any class of partnership capital.

SBA Annex PS. Version 1.3 March 15, 1997

SBA Annex OP, Version 1.1 March 1, 1996

# SBA ANNEX OP
# VERSION 1.1

## ANNEX OF OPTIONAL PROVISIONS

## SBA ANNEX OF OPTIONAL PROVISIONS FOR
## AN AGREEMENT OF LIMITED PARTNERSHIP
## FOR A SECTION 301(C) LICENSEE

This document has been drafted by the law firm of O'Sullivan Graev & Karabell, in collaboration with the law firms of Pepper, Hamilton & Scheetz and Foley, Hoag & Eliot, the National Association of Small Business Investment Companies, and the Office of the General Counsel Office of the United States Small Business Administration.

The Small Business Administration does not endorse or approve law firms. The above legend is not an endorsement or approval by the Small Business Administration of any law firm identified therein, and no representation to the contrary by any party is authorized.

# SBA ANNEX OP

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | General Provisions | 1 |
| 1.1. | Definitions | 1 |
| 1.2. | Conflict with SBIC Act | 3 |
| 1.3. | Conflict With Other Provisions of the Agreement | 3 |
| 1.4. | Deletion of Certain Provisions | 3 |
| 1.5. | Incorporation of this Annex into the Agreement | 3 |
| ARTICLE II | Remedies for Failure of a Private Limited Partner to Make a Contribution to Capital | 4 |
| 2.1. | Interest on Overdue Contributions | 4 |
| 2.2. | Termination of Right to Make Further Capital Contributions | 4 |
| 2.3. | Forfeiture of Interest in the Partnership | 4 |
| 2.4. | Withholding and Application of Distributions | 5 |
| 2.5. | Required Sale of Interest in the Partnership | 5 |
| ARTICLE III | Small Business Investment Company Matters | 7 |
| ARTICLE IV | Indemnification | 7 |
| 4.1. | Standard of Care | 7 |
| 4.2. | Indemnification | 8 |
| ARTICLE V | Amendments | 9 |

S:\1700\1193\11503N.WP

-i-

SBA ANNEX OP

## ARTICLE I

### General Provisions

**1.1. Definitions.**    For the purposes of this Annex, the following terms shall have the following meanings:

"Affiliate" shall have the meaning set forth in the SBIC Act.

"Agreement" shall mean the agreement of limited partnership of the Partnership to which this Annex is attached and incorporated as a provision thereof.  References to the Agreement shall be deemed to include all provisions incorporated in the Agreement by reference.

"Assets shall mean and include common and preferred stock (including warrants, rights and other options relating thereto or any combination thereof), notes, bonds, debentures, trust receipts and other obligations, instruments or evidences of indebtedness, and other properties or interests commonly regarded as securities, and in addition, interests in real property, whether improved or unimproved, and interests in personal property of all kinds, tangible or intangible, choses in action, and cash, bank deposits and so-called "money market instruments".

"Assets Under Management" shall mean, as of any specified date, the value of all Assets owned by the Partnership (such value to be determined as provided in the Agreement), including contributions requested and due from Partners and uncalled amounts of Commitments less the amount of any liabilities of the Partnership determined in accordance with generally accepted accounting principles.

"Associate" shall have the meaning set forth in the SBIC Act.

"Capital Account" shall mean the account of each Partner that reflects its interest in the Partnership determined in accordance with Article V of SBA Annex PS (if such Annex is incorporated as part of the Agreement) or as otherwise set forth in the Agreement.

"Commitments" shall mean the capital contributions to the Partnership which the Preferred Limited Partners have made and the other Partners have made or are obligated to make to the Partnership.  The terms of the Commitments of the Preferred Limited Partners shall be as set forth in SBA Annex PS (if SBA Annex PS is incorporated in the Agreement, or if not then as otherwise set forth in the Agreement); provided, that any Commitment by a Preferred Limited Partner shall include only the amount such Preferred Limited Partner has actually contributed to the Partnership, and shall not include any amount under any agreement by any such Partner or SBA to provide Leverage to the Partnership which has not been contributed to the Partnership. The amounts and terms of the Commitments of the General Partner and the Private Limited Partners shall be as defined in the Agreement.

"Control Person" shall have the meaning set forth in the SBIC Act.

-1-

"General Partner" shall mean the general partner or general partners of the Partnership.

"Investment Advisor/Manager" shall have the meaning set forth in the SBIC Act.

"Leverage" shall have the meaning set forth in the SBIC Act.

"Optionor" shall have the meaning set forth in Section 2.5.

"Optionees" shall have the meaning set forth in Section 2.5.

"Optioned Partnership Interest" shall have the meaning set forth in Section 2.5.

"Option Price" shall have the meaning set forth in Section 2.5.

"Participating Security" shall have the meaning set forth in the SBIC Act.

"Partnership" shall mean the limited partnership established by the Agreement.

"Partners" shall mean the General Partner, the Private Limited Partners and the Preferred Limited Partners, if any, of the Partnership.

"Preferred Limited Partner" shall mean the SBA, in its capacity as a Preferred Limited Partner, or any other person holding one or more Preferred Limited Partnership Interests in the Partnership.

"Preferred Limited Partnership Interest" shall mean a preferred limited partnership interest in the Partnership which qualifies as a Participating Security.

"Private Limited Partners" shall mean any limited partners of the Partnership, other than any Preferred Limited Partner.

"Remaining Portion" shall have the meaning set forth in Section 2.5.

"SBA" shall mean the United States Small Business Administration.

"SBA Annex GDP" shall mean the version of such Annex, if any, which is attached to and incorporated as a part of the Agreement.

"SBA Annex PS" shall mean the version of such Annex, if any, which is attached to and incorporated as a part of the Agreement.

"SBA Annex OP" shall mean the version of this Annex which is attached to and incorporated as a part of the Agreement.

"SBIC Act" shall mean the Small Business Investment Act of 1958, as amended, and the rules and regulations promulgated thereunder by the SBA, as in effect from time to time.

-2-

**1.2.  Conflict with SBIC Act.**  The provisions of this Annex and the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the SBIC Act.  In the event of any conflict between any provision of the Agreement or this Annex and the provisions of the SBIC Act (including, without limitation, any conflict with respect to the rights of the SBA or the respective Partners hereunder), the provisions of the SBIC Act shall control.

**1.3.  Conflict With Other Provisions of the Agreement.**  The provisions of the Agreement shall be interpreted to the fullest extent possible in a manner consistent with the provisions of this Annex.  In the event of any conflict between any provision of this Annex and any other provision of the Agreement (other than the provisions of SBA Annex PS and SBA Annex GDP, if either of such Annexes is incorporated as part of the Agreement), the provisions of this Annex shall control.  In the event of any conflict between any provision of this Annex and any provision of SBA Annex PS or SBA Annex GDP, the provisions of SBA Annex PS or SBA Annex GDP (if such Annex is incorporated as part of the Agreement) shall control.

**1.4.  Deletion of Certain Provisions.**  (a)  The specific sections of this Annex identified in clauses (c) and (d) of this Section may be deleted at the option of the Partnership from the form of the Annex that is attached to and incorporated in the Agreement.  Blank spaces for periods, interest rates or percentages appearing in any section of this Annex may be filled in by the Partnership or left blank.  In the case of any such blank space in a section which is not filled in by the Partnership, the space must be lined through and the period, interest rate or percentage which appears in bold face type immediately before such blank space will apply.  References in this Annex to the provisions or sections of this Annex shall refer only to those provisions which have not been so deleted, giving effect to any periods, interest rates or percentages filled in by the Partnership in such sections.  The footnote numbers which appear in certain sections and the notes which appear in certain sections and the notes which appear at the end of this Annex are for convenience only and shall neither be considered part of this Annex nor be given any legal effect.

(b)  The deletion of any section of this Annex shall be indicated by striking through that Section (note that subsections of an included section may not be deleted).

(c)  In Article II, the Partnership may elect to delete any of the Sections.

(d)  In Article IV, the Partnership may elect to delete either all sections or Section 4.2; if Section 4.2 is included, Section 4.1 may not be deleted.

**1.5.  Incorporation of this Annex into the Agreement.**  The Agreement shall contain the following provision evidencing the incorporation of this Annex:

"The provisions of SBA Annex OP attached to this Agreement are incorporated in this Agreement with the same force and effect as if fully set forth herein."

-3-

## ARTICLE II

### Remedies for Failure of a Private Limited Partner to Make a Contribution to Capital

**2.1.  Interest on Overdue Contributions.**  In the event that any Private Limited Partner fails to make a contribution required under the Agreement within thirty (30) days (unless another period is specified here: _____ (__) days) [1] after the date such contribution is due, then the General Partner may, in its sole discretion, elect to charge such Private Limited Partner interest at an annual rate equal to ten percent (10%) (unless another rate is specified here: _____) [2] on the amount due from the date such amount became due until the earlier of (i) the date on which such payment is received by the Partnership or (ii) the date of any notice given to such Private Limited Partner by the General Partner pursuant to Sections 2.3, 2.4 or 2.5.  Any distributions to which such Private Limited Partner is entitled shall be reduced by the amount of such interest, and such interest shall be deemed to be income to the Partnership.  The amount of interest charged as provided in this Section 2.1 shall not exceed the amount of such Private Limited Partner's Capital Account.  [3]

**2.2.  Termination of Right to Make Further Capital Contributions.**  In the event that any Private Limited Partner fails to make a contribution required under the Agreement within thirty (30) (unless another period is specified here: _____ (__)) days after the date such contribution is due, the General Partner may, in its sole discretion (and with the consent of SBA given as provided in Section 7.2 of SBA Annex PS or Section 5.2 of SBA Annex GDP, if SBA Annex PS or SBA Annex GDP is incorporated in the Agreement), elect to declare, by notice to such Private Limited Partner, that:

(a)  Such Private Limited Partner's Commitment shall be deemed to be reduced to the amount of any contributions of capital timely made pursuant to the Agreement; and

(b)  Upon such notice (i) such Private Limited Partner shall have no right to make any capital contribution thereafter (including the contribution as to which the default occurred and any contribution otherwise required to be made thereafter pursuant to the terms of the Agreement) and (ii) to this Agreement shall be deemed amended to reflect such reduced Commitment.

**2.3.  Forfeiture of Interest in the Partnership.**  In the event that any Private Limited Partner fails to make a contribution required under the Agreement, within **thirty (30)** (unless another period is specified here: _____ (__)) days after notice by the General Partner to such Private Limited Partner that it has failed to make its contribution on the date such contribution was due, the General Partner may in its sole discretion (and with the consent of SBA given as provided in Section 7.2 of SBA Annex PS or Section 5.2 of SBA Annex GDP, if SBA Annex PS or SBA Annex GDP is incorporated in the Agreement) declare, by notice of forfeiture to such Private Limited Partner, that one hundred percent (100%) (unless another percentage is specified here: _____ percent (__ %)) of the interest of such Private Limited Partner in the Partnership (including amounts in its Capital Account as well as any interest in future profits, losses or distributions of the Partnership) is forfeited, effective as of the date of such Private Limited Partner's failure to make such required contribution, in which event, as of the date of such notice of forfeiture (i) the Private Limited Partner shall cease to be a Partner with respect to such forfeited interest; provided, however, that such forfeited Private Limited Partner shall cease to have any liability for the payment of the forfeited percentage of any capital contributions due at such time or in the future and (ii) the forfeited percentage of such Private Limited Partner's Capital Account shall be held by the Partnership and reallocated among the Capital Accounts of the Partners one

-4-

percent (1%) (unless another percentage is specified here: _____ percent (__%)) to the General Partner and **ninety-nine percent (99%)** (unless another percentage is specified here: _____ percent (__%)) to the Private Limited Partners (other than such forfeited Private Limited Partner) to be apportioned among such Private Limited Partners in accordance with their respective aggregate capital contributions. **[4]**

      **2.4.** <u>Withholding and Application of Distributions.</u> No part of any distribution shall be paid to any Private Limited Partner from which there is then due and owing to the Partnership, at the time of such distribution, any amount required to be paid to the Partnership. At the election of the General Partner, which it may make in its sole discretion, the Partnership may either (i) apply all or part of any such withheld distribution in satisfaction of the amount then due to the Partnership from such Private Limited Partner or (ii) withhold such distribution until all amounts then due are paid to the Partnership by such Private Limited Partner. Upon payment of all amounts due to the Partnership (by application of withheld distributions or otherwise), the General Partner shall distribute any unapplied balance of any such withheld distribution to such Private Limited Partner. No interest shall be payable on the amount of any distribution withheld by the Partnership pursuant to this Section.

      **2.5.** <u>Required Sale of Interest in the Partnership.</u> In the event that any Private Limited Partner fails to make a contribution required under the Agreement within thirty (30) (unless another period is specified here: _____ (__)) days after notice by the General Partner to such Private Limited Partner that it has failed to make its contribution on the date such contribution is due, unless the General Partner has acted pursuant to Sections 2.2 or 2.3 (if either of such Sections are included in the version of this Annex incorporated in the Agreement) the General Partner may, in its sole discretion, (and with the consent of SBA given as provided in Section 7.2 of SBA Annex PS or Section 5.2 of SBA Annex GDP, if SBA Annex PS or SBA Annex GDP is incorporated in the Agreement) elect to declare such Private Limited Partner in default. If the General Partner so elects to declare such Private Limited Partner in default (such Private Limited Partner being hereinafter referred to as the "Optionor"), then the other Private Limited Partners of the Partnership which are not in default (the "Optionees") and the General Partner shall have the right and option to acquire **one hundred percent (100%)** (unless another percentage is specified here: _____ percent (__%)) of the Partnership interest, which shall include **one hundred percent (100%)** (unless another percentage is specified here: _____ percent (__%)) of the Capital Account (the "Optioned Partnership Interest") **[5]** of the Optionor on the following terms:

      (i) The General Partner shall give the Partners notice promptly after declaration of any such default. Such notice shall advise each Optionee of the portion of the Optioned Partnership Interest available to it and the price therefor. The portion available to each Optionee shall be that portion of the Optioned Partnership Interest that bears the same ratio to the Optioned Partnership Interest as each Optionee's capital contributions to the Partnership bears to the aggregate capital contributions to the Partnership, exclusive of the capital contributions to the Partnership of the Optionor. The aggregate price for the Optioned Partnership Interest shall be the assumption of the unpaid Commitment obligation (both that portion then due and amounts due in the future) of the Optionor (the "Option Price"). **[5]** The Option Price for each Optionee shall be prorated according to the portion of the Optioned Partnership Interest purchased by each such Optionee so that the percentage of the unpaid Commitment assumed by each Optionee is the same as the percentage of the Optioned Partnership Interest purchased by such Optionee. The option granted hereunder shall be exercisable by each Optionee in whole only at any time within thirty (30) days of the date of the notice from the General Partner by the delivery to the General

-5-

Partner of (A) a notice of exercise of option, and (B) the capital contribution due in accordance with clause 2.5(v)(A). The General Partner shall forward the above notices of exercise of option received to the Optionor.

(ii)    Should any Optionee not exercise its option within the period provided in clause (i), the General Partner, within ten **(10)** (unless another period is specified here: _____ (_)) days of the end of such period, shall notify the other Optionees who have previously exercised their options in full, which Optionees shall have the right and option ratably among them to acquire the portion of the Optioned Partnership Interest not so acquired (the "Remaining Portion") within ten **(10)** (unless another period is specified here: _____ (_)) days of the date of the notice specified in this Section 2.5(ii) on the same terms as provided in clause (i).

(iii)    The amount of the Remaining Portion not acquired by the Optionees pursuant to clause (ii) may be acquired by the General Partner within ten **(10)** (unless another period is specified here: _____ (_)) days of the expiration of the period specified in clause (ii) on the same terms as set forth in clause (i).

(iv)    The amount of the Remaining Portion not acquired by the Optionees and the General Partner pursuant to clause (iii) may, if the General Partner deems it in the best interest of the Partnership, be sold to any other corporations, partnerships, individuals or other entities on terms not more favorable to such purchaser than the Optionees' option (and the General Partner may admit any such third party purchaser as a Private Limited Partner, subject to the approval of SBA, if required under the SBIC Act). Any consideration received by the Partnership for such amount of the Optionor's interest in the Partnership in excess of the Option Price therefor shall be retained by the Partnership and allocated among the Partners' Capital Accounts in proportion to the respective Partners' capital contributions.

(v)    Upon exercise of any option hereunder, such Optionee (or the General Partner, if it has exercised its rights pursuant to clause (iii)) shall be deemed to have assumed that portion of the Optionor's unpaid Commitment representing the Option Price of the purchased portion of the Optioned Partnership Interest and shall be obligated (A) to contribute to the Partnership the portion of the capital contribution then due from the Optionor equal to the percentage of the Optioned Partnership Interest purchased by such Optionee and (B) to pay the same percentage of any further contributions which would have otherwise been due from such Optionor.

(vi)    Upon the purchase by the General Partner of any portion of the Optioned Partnership Interest in the Partnership pursuant to clause (iii), the General Partner shall also become a Private Limited Partner to the extent of such interest.

(vii)    Upon the purchase of any portion of any Optioned Partnership Interest by an Optionee, the General Partner or other person pursuant to this Section 2.5, the Optionor shall have no further rights or obligations under this Agreement with respect to such portion.

(viii)    Upon the purchase of any portion of the Optioned Partnership Interest, for purposes of computing such purchaser's aggregate capital contributions, such purchaser shall be deemed to have aggregate capital contributions (or the aggregate capital contributions of any

-6-

Optionee, shall be increased by an amount) equal to the percentage of the defaulting Private Limited Partner's aggregate capital contribution which the purchased portion of the Optioned Partnership Interest represents of the defaulting Private Limited Partner's entire Partnership interest, and the aggregate capital contributions of such defaulting Private Limited Partner shall be reduced by a corresponding amount.

## ARTICLE III

### Small Business Investment Company Matters

The SBA shall be deemed an express third party beneficiary of the provisions of the Agreement (including, without limitation, this Annex) to the extent of the rights of the SBA thereunder and under the Act, and the SBA shall be entitled to enforce such provisions for its benefit, as if the SBA were a party thereto.

## ARTICLE IV

### Indemnification

4.1.    Standard of Care.    (a) Neither the General Partner, any Investment Advisor/Manager nor any partner, shareholder, director, officer or employee nor any Affiliate of any thereof shall be liable to the Partnership or any Partner for any action taken or omitted to be taken by it or any other Partner or other person in good faith and in a manner they reasonably believed to be in or not opposed to the best interests of the Partnership, and, with respect to any criminal action or proceeding, had no reasonable cause to believe their conduct was unlawful.

(b) Neither any Private Limited Partner, nor any member of any Partnership committee or board who is not an Affiliate of the General Partner, shall be liable to the Partnership or any Partner as the result of any decision made in good faith by such Private Limited Partner or member, in his capacity as such.

(c) The General Partner and any Investment Advisor/ Manager, the stockholders, directors, officers, employees and partners of either thereof, any Private Limited Partner and any member of a Partnership committee or board, may consult with reputable legal counsel selected by them and shall be fully protected, and shall incur no liability to the Partnership or any Partner, in acting or refraining to act in good faith in reliance upon the opinion of advice of such counsel.

(d) This Section 4.1 shall not constitute a modification, limitation or waiver of Section 314(b) of the SBIC Act, or a waiver by the SBA of any of its rights pursuant to such Section 314(b).*

(e) In addition to the standards of care set forth in this Section 4.1, the Agreement may also provide for additional standards of care which must also be met.

---

* This provision relates to the fiduciary duty of SBIC managers.

4.2. **Indemnification**. (b) The Partnership shall indemnify and hold harmless, but only to the extent of Assets Under Management, the General Partner, the general and limited partners of the General Partner, any Investment Advisor/Manager and any partner, shareholder, director, officer, employee or any Affiliate of any thereof from any and all costs, expenses, damages, claims, liabilities, fines and judgments (including the reasonable cost of the defense of any claim or action and any sums which may be paid with the consent of the Partnership in settlement thereof) which may be incurred by or asserted against such person or entity, by reason of any action taken or omitted to be taken on behalf of the Partnership and in furtherance of its interests.

(b) The Partnership shall indemnify and hold harmless, but only to the extent of Assets Under Management, the Private Limited Partners, and members of any Partnership committee or board who are not Affiliates of the General Partner or any Investment Advisor/Manager from any and all costs, expenses, damages, claims, liabilities, fines and judgements (including the reasonable cost of the defense of any claim or action and any sums which may be paid with the consent of the Partnership in settlement thereof) which may be incurred by or asserted against such person or entity, by any third party on account of any matter or transaction of the Partnership, which matter or transaction occurred during the time that such person has been a Private Limited Partner or such member.

(c) The Partnership shall have power, in the discretion of the General Partner, to agree to indemnify on the same terms as set forth in Section 4.2(b) any person who is or was serving, pursuant to a prior written request from the Partnership, as a consultant to, agent for or representative of the Partnership as a director, officer, employee, agent of or consultant to another corporation, partnership, joint venture, trust or other enterprise, against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such.

(d) No person shall be entitled to claim any indemnity or reimbursement under Section 4.2(a), (b) or (c) in respect of any cost, expense, damage, liability, claim, fine, judgment (including any cost of the defense of any claim, action, suit, proceeding or investigation, by or before any court or administrative or legislative body or authority) that may be incurred by such person which results from the failure of such person to act in accordance with the provisions of this Agreement and the applicable standard of care set forth in Section 4.1. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of <u>nolo contendere</u> or its equivalent, shall not, of itself, preclude a determination that such person acted in accordance with the applicable standard of care set forth in Section 4.1.

(e) To the extent that a person claiming indemnification under Section 4.2(a), (b) or (c) has been successful **on the merits** in defense of any action, suit or proceeding referred to in Section 4.2(a), (b) or (c) or in defense of any claim, issue or matter therein, such person shall be indemnified with respect to such matter as provided in such Section. Except as provided in the foregoing sentence and as provided in Section 4.2(h) with respect to advance payments, any indemnification under this Section 4.2 shall be paid only upon determination that the person to be indemnified has met the applicable standard of conduct set forth in Section 4.1(a) or (b).

(f) A determination that a person to be indemnified under this Section 4.2 has met the applicable standard set forth in Section 4.1(a) or (b) shall be made by (i) the General Partner, with respect to the indemnification of any person other than a person claiming indemnification under Section 4.2(a), (ii) a committee of the Partnership whose members are not affiliated with the General Partner or any Investment Advisor/Manager with respect to indemnification of any person indemnified under Section

-8-

4.2(a) or (iii) at the election of the General Partner, independent legal counsel selected by the General Partner, with respect to the indemnification of any person indemnified under Section 4.2, in a written opinion.

(g) In making any such determination with respect to indemnification under Section 4.2(f), the General Partner, a committee of the Partnership whose members are not affiliated with the General Partner or any Investment Advisor/Manager or independent legal counsel, as the case may be, shall be authorized to make such determination on the basis of its evaluation of the records of the General Partner, the Partnership or any Investment Advisor/Manager to the Partnership and of the statements of the party seeking indemnification with respect to the matter in question and shall not be required to perform any independent investigation in connection with any such determination. Any party making any such determination is authorized, however, in its sole discretion, to take such other actions (including engaging counsel) as it deems advisable in making such determination.

(h) Expenses incurred by any person in respect of any such costs, expenses, damages, claims, liabilities, fines, and judgments (including any cost of the defense of any claim, action, suit, proceeding or investigation, by or before any court or administrative or legislative body or authority) may be paid by the Partnership in advance of the final disposition of any such claim or action upon receipt of an undertaking by or on behalf of such person to repay such amount unless it shall ultimately be determined as provided in Section 4.2(e) or (f) that such person is entitled to be indemnified by the Partnership as authorized in this Section.

(i) The rights provided by this Section 4.2 shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of each person eligible for indemnification hereunder.

(j) The rights to indemnification provided in this Section 4.2 shall be the exclusive rights of all Partners to indemnification by the Partnership. No Partner shall enter into, or make any claim under, any other agreement with the Partnership (whether direct or indirect) providing for indemnification. The General Partner shall not enter into any agreement with any person which is an employee, officer, director, partner or shareholder, or an Affiliate, Associate or Control Person of any of the foregoing, providing for indemnification of any such person unless such agreement provides for a determination with respect to such indemnification as provided under Section 4.2(f)(ii) or (iii). The provisions of this Section 4.2 shall not apply to indemnification of any person which is not at the expense (whether in whole or in part) of the Partnership.

(k) The Partnership may purchase and maintain insurance on its own behalf, or on behalf of any person or entity, with respect to liabilities of the types described in this Section 4.2. The Partnership may purchase such insurance regardless of whether such person is acting in a capacity described in this Section 4.2 or whether the Partnership would have the power to indemnify such person against such liability under the provisions of this Section 4.2.

## ARTICLE V

### Amendments

Any amendment of the Agreement which would affect (i) this Annex, (ii) the rights, obligations or liabilities of the SBA shall require the prior written consent of the SBA.

## NOTES

1.    All notice periods are variable.

2.    Any interest rate may be selected.

3.    The limitation on the amount of interest is optional.

4.    Forfeitures may be in whole or in part. The sum of the reallocation percentages to the General Partner and the Private Limited Partner must equal 100%. The elimination of liability after forfeiture is optional; a forfeited limited partner may remain liable for capital contributions. Reallocation of a forfeited interest can be freely determined.

5.    Any percentage of a defaulted limited partner's interest can be sold. A variety of pricing mechanisms can be used: fixed, formula or appraisal.

SBA Annex OP Version 1.1 March 1, 1996

# EXHIBIT B

# DOTCOM VENTURES, L.P.
## (FORMERLY ASCII VENTURES, L.P.)
## AMENDED & RESTATED
## AGREEMENT OF LIMITED PARTNERSHIP

This Amended and Restated Limited Partnership Agreement of DOTCOM VENTURES, L.P. (formerly ASCII VENTURES, L.P.) (the "Partnership"), is entered into as of the 1st day of April, 1999, by AV MANAGEMENT, LLC, a California limited liability company (the "General Partner") and each of the parties designated as limited partners on the signature page attached hereto (the "Limited Partners"). The primary purpose of this Amended and Restated Limited Partnership Agreement is to reflect certain changes required in connection with the admission of new Limited Partners and withdrawals of certain former Limited Partners as set forth in that certain Assignment, Assumption and Amendment Agreement of even date herewith by and between the Partnership, the General Partner, ASCII of America, Inc., CSK Venture Capital Co. Ltd. and various other parties (the "AAA Agreement"). Accordingly, the Partnership's Agreement of Limited Partnership originally executed on or about September 3, 1997, as amended from time to time thereafter, is hereby amended and restated in its entirely as follows:

1.      DEFINITIONS.

Unless the context requires otherwise, the following terms have the meanings specified in this paragraph:

1.1      **Accounting Period.** An Accounting Period shall be (i) a calendar year if there are no changes in the Partners' respective interests in the profits or losses of the Partnership during such calendar year except on the first day thereof, or (ii) any other period beginning on the first day of a calendar year, or any other day during a calendar year upon which occurs a change in such respective interests, and ending on the last day of a calendar year, or on the day preceding an earlier day upon which any change in such respective interest shall occur.

1.2      **The Act.** The California Revised Limited Partnership Act, as amended from time to time.

1.3      **Affiliate.** An affiliate of, or a party affiliated with, a specified party, including a party that directly, or indirectly through one or more intermediaries, controls, or is controlled by or is under common control with, the party specified.

1.4      **Book Value.** The Book Value with respect to any asset shall be the asset's adjusted basis for federal income tax purposes, except as provided below:

(a)      The initial Book Value of any asset contributed by a Partner to the Partnership shall be the fair market value of such asset at the time of contribution, as determined by the General Partner.

EXHIBIT B

IN WITNESS WHEREOF, the parties hereto have executed this AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP for DOTCOM Ventures, L.P., a California limited partnership, in several counterparts, each of which shall be deemed an original, as of the day and year first above written.

GENERAL PARTNER:

AV MANAGEMENT, LLC

By: _____
        Sada Chidambaram, Manager

By: _____
        Stephen Hyndman, Manager

LIMITED PARTNERS:

HENRI JARRAT
                  Print Name

By: _____

Title: _____

DOTCOM VENTURES, L.P.
AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP
SIGNATURE PAGE

70002 v5/SH
1SD#4011 DOC

# EXHIBIT C



U.S. SMALL BUSINESS ADMINISTRATION
Receiver for PROSPERO VENTURES, L.P.
WASHINGTON, D.C. 20416
666 Eleventh Street, N.W.  -  Suite 200
Washington, D.C. 20001-4542
Telephone (202) 272-3617  FAX (202) 504-2247; 272-7701

November 10, 2004

Mr. Henri Jarrat
JARRAT ENTERPRISES
1958 Grey Eagle Street
Henderson, NV 89074

      RE:    *USA v. PROSPERO VENTURES, L.P.*, Case No. C 04 - 4351,
             US D.C, Northern District of California, San Francisco Division

Dear Mr. Henri Jarrat:

      The purpose of this letter is to notify you as a limited partner of PROSPERO VENTURES, L.P. ("Prospero") (f/k/a Dotcom Ventures, L.P., f/k/a ASCII Ventures, L.P.) that the U.S. SMALL BUSINESS ADMINISTRATION ("SBA") has been appointed as the RECEIVER ("Receiver") of Prospero. A copy of the **Order Granting Receivership and Permanent Injunctive Relief** entered October 20, 2004 in Case No. C 04 - 4351 (the "Receivership Order") by the United States District Court for the Northern District of California, San Francisco Division (the "Receivership Court"), is enclosed for your review and should be retained in your files. The SBA was appointed Receiver of Prospero based on Prospero's consent (Paragraph 12, Receivership Order). This letter notice is in compliance with Paragraph 4 of the Receivership Order. The second enclosure is a copy of the letter by the SBA appointing the undersigned as the Principal Agent for the SBA as the Court-appointed Receiver of Prospero.

      In accordance with the Receivership Order, the Receiver has taken over the control of the assets and operations of Prospero. The Receiver is mandated to administer, marshal, and liquidate Prospero's assets, and to pursue and preserve all of its claims, to satisfy its creditors therefrom in the order of priority as determined by the Receivership Court (Paragraphs 1 and 2, Receivership Order). The Receiver is empowered by the Court with all of the powers and authorities previously possessed by the general partner, officers, directors, managers, investment advisors, and agents of Prospero, all of whom have been dismissed by the terms of paragraph 2 of the Receivership Order. The Receiver is proceeding to marshal and liquidate the portfolio assets of Prospero in an orderly manner to realize the maximum recovery.

      The Receiver will file with the Receivership Court periodic Reports on the status of the liquidation of the Prospero Receivership portfolio assets. The Receivership Court will enter its Order establishing a Claims Bar Date pursuant to which all those persons and/or

LP Notice
November 10, 2004
page 2

entities having claims against Prospero, the Prospero Receivership Estate, or the assets of Prospero in the possession of the Receiver, must file their claims with the Receiver. The Receiver will report the claims to the Court and will file its recommendations for the disposition of the claims. An actual Notice of the Claims Bar Date will be served on you.

Paragraph 3 of the Receivership Order directs that any person, including the general partner, limited partners, management company, and former officers and directors, having control, custody or possession of any assets or property of Prospero immediately turn such property over to the Receiver. This letter also serves as the Receiver's demand that you remit to the Receiver any property of Prospero which you have in your possession or control.

The mailing address of the Receiver for the return of any property of Prospero, and for any other correspondence to the Receiver, is the following:

> **Brian S. Stern, Principal Agent**
> **SBA, Receiver for Prospero Ventures, L.P.**
> **666 Eleventh St., N.W. - Suite 200**
> **Washington, DC  2001-4542**

Should you have any questions or wish to discuss any of these matters, please write to the foregoing address or feel free to call me at (202) 272-3604.

Sincerely,
U.S. SMALL BUSINESS ADMINISTRATION
Receiver for PROSPERO VENTURES, L.P.

By:  _____
     Brian S. Stern
     Principal Agent for the Receiver
     Direct Tel: (202) 272-3604


Enclosure
cc:    A. A. Speight, SBA O/L
       A. P. Messinger, Esq., SBA OGC


lpltr  d1

# EXHIBIT D

**U.S. SMALL BUSINESS ADMINISTRATION**
Receiver for PROSPERO VENTURES, L.P.
666 Eleventh Street, N.W. - Suite 200
Washington, D.C. 20001-4542
Telephone (202) 272-3617  FAX (202) 504-2247; 272-7701

*CERTIFIED MAIL NO. 7001 2510 0003 2422 3882*
*RETURN RECEIPT REQUESTED*

February 9, 2005

Mr. Henri Jarrat
JARRAT ENTERPRISES
1958 Grey Eagle Street
Henderson, NV 89074

> RE:    *USA v. PROSPERO VENTURES, L.P.*, Case No. C 04 - 4351,
>        US DC, Northern District of California, San Francisco Division

Dear Mr. Henri Jarrat:

The Receiver has previously notified you that PROSPERO VENTURES, L.P. ("Prospero") was ordered into Receivership by the Order of the U. S. District Court for the Northern District of California (the "Receivership Court") entered October 20, 2004 (the "Receivership Order") in the captioned case, and that the U. S. Small Business Administration ("SBA") was appointed as the Receiver ("Receiver"). Paragraph 2 of the Receivership Order grants to the Receiver ". . . all powers, authorities, rights, and privileges heretofore possessed by the general partner, officers, directors, managers . . . of Prospero under applicable state and federal law and by the Agreement of Limited Partnership . . ." Another copy of the Receivership Order is enclosed.

In accordance with the Prospero (f/k/a ASCII Ventures, L. P.) Agreement of Limited Partnership, you committed to invest a total of $124,752 in Prospero. Enclosed is a copy of the Investor Questionnaire Signature Page which you executed on March 31, 1999. The records maintained by the prior management of Prospero, which have been provided to the Receiver, indicate that your capital commitment is unfunded in the amount of $62,376.

The Receiver hereby makes demand on you for payment of the sum of $62,376 in satisfaction of your unfunded capital commitment. You are required to forward payment in the full amount to the Receiver not later than March 18, 2005. Payment must be in the form of a <u>bank cashier's check</u> payable to

> *SBA, Receiver for Prospero Ventures, L.P.*

SBA IS AN EQUAL OPPORTUNITY EMPLOYER AND PROVIDER

Federal Recycling Program    Printed on Recycled Paper

EXHIBIT D

February 9, 2005
LP Demand
Page 2

which should be mailed to the Receiver at the following address:

> Brian S. Stern, Principal Agent
> SBA, Receiver for Prospero Ventures, L.P.
> 666 Eleventh St., N.W. – Suite 200
> Washington, DC 20001-4542.

Your failure to make timely payment in full of your unfunded capital commitment will compel the Receiver to pursue all of its legal rights and remedies available.

Should you have any questions or wish to discuss this matter, feel free to write to the undersigned at the above address or call me directly at (202) 272-3604.

Sincerely,
U.S. SMALL BUSINESS ADMINISTRATION
Receiver for PROSPERO VENTURES, L.P.

By: _____

Brian S. Stern
Principal Agent for the Receiver
Direct Tel: (202) 272-3604

Enclosure
cc:    A. A. Speight, SBA O/L
       A. P. Messinger, Esq., SBA OGC

lpdemand.2

DOTCOM VENTURES, L.P. (FORMERLY ASCII VENTURES, L.P.)
INVESTOR QUESTIONNAIRE SIGNATURE PAGE

The representations and warranties set forth herein, including the information set forth on this signature page, are true and accurate as of the date hereof and shall be true and accurate as of the date of sale of the Interest and shall survive such date. If in any respect such representations and warranties shall not be true and accurate prior to sale of the Interest, the undersigned shall give immediate notice of such fact to the General Partner, specifying which representations and warranties are not true and accurate and the reasons therefor.

LEGAL NAME OF INVESTOR: _HENRI  JARRAT_____

Type of Investor. Please check the applicable box.

☑ Individual                    ☐ Trust _____
☐ Corporation                  ☐ Other _____
☐ Partnership

The undersigned is either (i) an "employee benefit plan" as defined in §3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (including any plan that is exempt from Title I of ERISA pursuant to §4(b) of ERISA), (ii) a plan described in IRC §4975(e)(1) (including an individual retirement account or annuity), or (iii) any entity the underlying assets of which are deemed to include "plan assets" under ERISA.

☐ Yes, the undersigned is one of the above
☑ No, the undersigned is not any of the above

Name and Address of
primary contact person    _HENRI  JARRAT_____
                          _1958 Grey Eagle St____
                          _Henderson  NV 89014___

Telephone Number:        _(702) 896 8917_____

Fax Number:              _(702) 896 8919_____

Other persons who should receive
Partnership correspondence:  _____      _____
                             _____      _____
                             _____      _____

Please specify your Tax I.D. Number or    ☐ Tax I.D. No.:    REDACTED
check the appropriate box                 ☐ Exempt under IRC §401(a)
                                          ☐ Exempt under IRS §501(c)(3)

Total Capital Commitment: $ _100,000___

                                    By: _Henri Jarrat_____
                                              Signature

                                    Title _____

                                    Date _3/31/99_____

70067 v1/SH
[illegible] DOC

6

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Henri Jarrat
JARRAT ENTERPRISES
1958 Grey Eagle Street
Henderson, NV 89074

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
2/14/05

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number        7001 2510 0003 2422 3882
   (Transfer from service label)

PS Form 3811, August 2001        Domestic Return Receipt        102595-01-M-0381

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

| Postage | $ | |
| Certified Fee | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Re____) | | |
| Total Postage | | |

Mr. Henri Jarrat
JARRAT ENTERPRISES
1958 Grey Eagle Street
Henderson, NV 89074

Sent To _____
Street, Apt. No.; or PO Box No.
City, State, ZIP+4

PS Form 3800, January 2001        See Reverse for Instructions

7001 2510 0003 2422 3882